# 25-3017-cv(L), 25-3243-cv(XAP)

## United States Court of Appeals

*for the*

## Second Circuit

MATTHEW CHANEY, NADINE MILLER and ARTHUR GUSTAFSON,
on behalf of themselves and all others similarly situated,

*Plaintiffs-Appellees,*

– v. –

LINDA JOY SULLIVAN, in her capacity as the Dissolution Receiver for Koffee
Kup Bakery, Inc., Vermont Bread Company, Inc. and Superior Bakery, Inc.,

*Intervenor-Defendant-Cross-Claimant-Appellee-Cross-Appellant,*

*(For Continuation of Caption See Inside Cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT (BURLINGTON)

## JOINT APPENDIX
### Volume 2 of 15 (Pages JA-201 to JA-400)

IAN P. CARLETON
KEVIN LUMPKIN
SHEEHEY FURLONG & BEHM P.C.
30 Main Street
P.O. Box 66
Burlington, Vermont 05402
(802) 864-9891

*Attorneys for Intervenor-Defendant-*
  *Cross-Claimant-Appellee-Cross-*
  *Appellant*

JAY M. LEVIN
FLASTER/GREENBERG
One Tower Bridge
100 Front Street, Suite 100
West Conshohocken,
  Pennsylvania 19428
(215) 576-1730

*Attorneys for Defendants-Cross-*
  *Defendants-Appellants-Cross-*
  *Appellees*

*(For Continuation of Appearances See Inside Cover)*

COUNSEL PRESS
A Proceed Service
The Appellate Experts®
(800) 4-APPEAL • (390902)

– v. –

KK BAKERY INVESTMENT COMPANY, LLC, AMERICAN INDUSTRIAL
ACQUISITION CORPORATION,

*Defendants-Cross-Defendants-Appellants-Cross-Appellees,*

KK BAKERY HOLDING ACQUISITION COMPANY,

*Defendant-Cross-Defendant,*

VERMONT BREAD COMPANY, SUPERIOR BAKER, INC., KOFFEE KUP
BAKERY, INC., KOFFEE KUP DISTRIBUTION LLC,

*Defendants.*

MARY E. OLSEN
SAM HELDMAN
THE GARDNER FIRM, P.C.
182 Saint Francis Street, Suite 103
Mobile, Alabama 36602
(251) 433-8100

THOMAS P. AICHER
GFELLER LAURIE LLP
110 Merchants Row, 3rd Floor
Rutland, Vermont 05701
(802) 775-8800

-and-

STUART J. MILLER
LANKENAU & MILLER, LLP
100 Church Street, 8th Floor
New York, New York 10007
(212) 581-5005

*Attorneys for Plaintiffs-Appellees*

i

# TABLE OF CONTENTS

**Page**

U.S. District Court Docket Entries ............................ JA-1

First Amended Class Action Complaint, dated
June 11, 2021 [10] ................................................. JA-41

Class Representatives' Motion for Sanctions, dated
December 19, 2022 [redacted] [158]
(Sealed. See Sealed Vol. at CA-1-CA-16)............. JA-54

Exhibit 1 to Motion -
Declaration of Mary E. Olsen, dated December
19, 2022 [redacted] [158-1]
(Sealed. See Sealed Vol. at CA-17-CA-22)........... JA-70

   Annexed to Olsen Declaration -
   Composite Email 1 [158-2]............................... JA-76

   Annexed to Olsen Declaration -
   Composite Email 2 [158-2]............................... JA-82

   Annexed to Olsen Declaration -
   Composite Email 3 and Attachment [158-2]
   (Attachment Sealed. See Sealed Vol. at
   CA-23-CA-24) ................................................. JA-91

   Annexed to Olsen Declaration -
   Composite Email 4............................................ JA-105

Attached to Motion -
Jeffrey Sands Errata Sheet November 11, 2022
Deposition [158-3]................................................. JA-115

**ii**

**Page**

Attached to Motion -
Excerpts of AIAC 20(b)(6) Deposition of Jeffrey
Sands, dated November 10, 2022 [redacted]
[158-4]
(Sealed. See Sealed Vol. at CA-25-CA-55)........... JA-120

Attached to Motion -
Excerpts of KKBIC's 30(b)(6) Deposition of
Jeffrey Sands, dated November 11, 2022
[158-5] .................................................................. JA-151

Dissolution Receiver Linda Joy Sullivan's Joinder
in Class Representatives' Motion for Sanctions,
dated January 9, 2023 [167].................................. JA-172

Plaintiffs' and Dissolution Receiver's Joint
Supplemental Submission in Support of Their
Sanctions Motion and Joinder against the AIAC
Defendants, dated January 21, 2023 [170] ............ JA-174

Evidentiary Hearing Transcript on Motion for
Sanctions Re 30(b)(6) Deposition of AIAC, dated
February 6, 2023 [179] ......................................... JA-178

Order on Motion for Protective Order, dated
February 27, 2023 [188] ....................................... JA-212

Telephone Conference Transcript, dated
February 17, 2023 [190] ....................................... JA-216

Hearing Transcript on Discovery Issue, dated
March 2, 2023 [191] ............................................. JA-229

Class Representatives and Dissolution Receiver's
Joint Supplemental Filing in Support of Motion
for Sanctions, dated March 15, 2023 [193]
(Omitted Herein):

**iii**

           **Page**

Attached to Joint Supplemental Filing -
Email, dated March 1, 2023, with Attachment
[179]........................................................................ JA-246

Attached to Joint Supplemental Filing -
Email, dated February 24, 2023 [193-2]................ JA-313

Attached to Joint Supplemental Filing -
Privilege Log, dated March 1, 2023 [193-3] ......... JA-318

Dissolution Receiver's Motion for, and
Memorandum in Support of Summary Judgment
Dismissing The First Amended Complaint or
Granting Alternative Relief, dated
March 31, 2023 [197] ............................................ JA-323

Dissolution Receiver's Statement of Undisputed
Material Facts, in Support of Motion, dated
March 31, 2023 [199] ............................................ JA-352

Defendants' KK Bakery Investment Company
LLC's & American Industrial Acquisition
Company LLC's Motion for Summary Judgment,
dated March 31, 2023 [202]................................... JA-366

Memorandum of Law in Support of Defendants'
KK Bakery Investment Company LLC's &
American Industrial Acquisition Company LLC's
Motion for Summary Judgment, dated
March 31, 2023 [202-1]......................................... JA-369

Defendants' KK Bakery Investment Company
LLC's & American Industrial Acquisition
Company LLC's Statement of Undisputed
Material Facts, dated March 31, 2023 [202-2] ...... JA-391

Certificate of Service [202-3] .................................... JA-400

iv

**Page**

Affidavit of Jeffrey Sands, dated
March 31, 2023 [202-4] ........................................ JA-403

Exhibit A to Sands Affidavit -
Securities Purchase Agreement, dated April 1,
2021, with Attachments [202-5] ............................ JA-416

Exhibit B to Sands Affidavit -
Spreadsheet of 2021 Budget [202-6] ...................... JA-552

Exhibit C to Sands Affidavit -
Email, dated March 19, 2021 [202-7].................... JA-556

Exhibit D to Sands Affidavit -
Email, dated March 30, 2021 [202-8].................... JA-558

Exhibit E to Sands Affidavit -
Email, dated March 31, 2021 [202-9].................... JA-561

Exhibit F to Sands Affidavit -
Memorandum Re KKB Viability Assessment and
Recommendations, dated April 20, 2021
[202-10] ................................................................. JA-563

Exhibit G to Sands Affidavit -
WARN Notice, April 26, 2021 [202-11] ............... JA-568

Exhibit H to Sands Affidavit -
VT DOL Determination Letter [202-12] ............... JA-573

Plaintiffs' Motion for Summary Judgment, dated
March 31, 2023 [203] ........................................... JA-575

Index to Plaintiff's Motion for Summary Judgment
[203-1] ................................................................. JA-577

Plaintiffs' Memorandum in Support of Motion for
Summary Judgment, dated March 31, 2023
[Redacted] [203-2]
(Sealed. See Sealed Vol. at CA-56-CA-81)........... JA-579

v

Page

Plaintiffs' Statement of Undisputed Facts dated
March 31, 2023 [Redacted] [203-3]
(Sealed. See Sealed Vol. at CA-82-CA-141)......... JA-605

Exhibit 1 to Plaintiffs' Motion -
Dissolution Receiver's RFA Responses for
Koffee Kup, Excerpt Nos. 24-26; Vermont
Bread, Nos. 24-26; Superior, Nos. 22-24
[203-4] .................................................................. JA-665

Exhibit 2 to Plaintiffs' Motion -
AIAC's RFA Responses Excerpts [203-5]............ JA-672

Exhibit 3 to Plaintiffs' Motion -
KKBIC's RFA Responses Excerpts [203-6] ......... JA-681

Exhibit 4 to Plaintiffs' Motion -
Stephanie Hanker Deposition Excerpts, dated
August 29, 2022 [203-7]....................................... JA-691

Exhibit 5 to Plaintiffs' Motion -
AIAC and KKBIC Supplemental Responses to
Plaintiffs' Requests For Documents, S-11 (April
2021 Emails) [203-8]............................................ JA-705

Exhibit 6 to Plaintiffs' Motion -
Dissolution Receiver's Objection to Claim and
Complaint in Vermont Superior Court,
Chittenden Unit, dated July 6, 2022 [203-9] ......... JA-711

Exhibit 7 to Plaintiffs' Motion -
Answer of AIAC, KKBIC, Levie and Sands to
Dissolution Receiver's Objection to Claim and
Complaint, dated August 10, 2022 [203-10] ......... JA-730

Exhibit 8 to Plaintiffs' Motion -
Jean-Francois Morin's Deposition Excerpts,
dated November 17, 2022 [203-11]....................... JA-744

vi

**Page**

Exhibit 9 to Plaintiffs' Motion -
Mark Coles' Deposition Excerpts, dated
August 29, 2022 [203-12]..................................... JA-772

Exhibit 10 to Plaintiffs' Motion -
Excerpts of AIAC 30(b)(6) Deposition of Jeffrey
Sands, dated November 10, 2022 [redacted]
[203-13]
(Sealed. See Sealed Vol. at CA-142-CA-179)....... JA-825

Exhibit 11 to Plaintiffs' Motion -
Mark Coles Deposition Select Exhibits
[203-14] ................................................................ JA-864

Exhibit 12 to Plaintiffs' Motion -
Stephanie Hanker Deposition Select Exhibits
[203-15] ................................................................ JA-921

Exhibit 13 to Plaintiffs' Motion -
Lauris Benjamin Richards' Deposition Excerpts,
dated November 17, 2022 [203-16]....................... JA-927

Exhibit 14 to Plaintiffs' Motion -
Susan Leonard's Deposition Excerpts, dated
September 29, 2022 [203-17] ............................... JA-946

Exhibit 15 to Plaintiffs' Motion -
Jeff Sands' Deposition Excerpts, dated May 10,
2022 [redacted] [203-18]
(Sealed. See Sealed Vol. at CA-180-CA-206)....... JA-953

Exhibit 16 to Plaintiffs' Motion -
Leonard Levie Deposition Excerpts, dated
June 9, 2022 [203-19]........................................... JA-980

Exhibit 17 to Plaintiffs' Motion -
Printout of AIAC Website: Jeff Sands Bio
[203-20] ................................................................ JA-997

**vii**

**Page**

Exhibit 18 to Plaintiffs' Motion -
AIAC 30(b)(6) Deposition (Sands) Select
Exhibits [redacted] [203-21]
(Sealed. See Sealed Vol. at CA-207-CA-237)....... JA-999

Exhibit 19 to Plaintiffs' Motion -
Excerpts of AIAC-KKBIC 30(b)(6) Deposition
of Leonard Levie, dated March 2, 2023
[203-22] ................................................................ JA-1027

Exhibit 20 to Plaintiffs' Motion -
AIAC PowerPoint Presentation [203-23] .............. JA-1043

Exhibit 21 to Plaintiffs' Motion -
Answering Statement in AAA Case 1-21-18-
1379 [redacted] [203-24]
(Sealed. See Sealed Vol. at CA-238-CA-258)....... JA-1060

Exhibit 22 to Plaintiffs' Motion -
KKBIC Formation Letter [203-25]........................ JA-1081

Exhibit 23 to Plaintiffs' Motion -
Excerpts of KKBIC 30(b)(6) Deposition of
Jeffrey Sands, dated November 11, 2022
[redacted] [203-26]
(Sealed. See Sealed Vol. at CA-259-CA-273)....... JA-1087

Exhibit 24 to Plaintiffs' Motion -
Sands Deposition Select Exhibits, 1 and 9
[redacted] [203-27]
(Sealed. See Sealed Vol. at CA-274-CA-381)....... JA-1104

Exhibit 25 to Plaintiffs' Motion -
Sands Email February 16, 2021 (Bates stamped
KKBIC 15) [203-28]............................................. JA-1319

viii

**Page**

Exhibit 27 to Plaintiffs' Motion -
AIAC's March 4, 2021 Indicative Offer or
Letter of Intent [203-30] ....................................... JA-1320

Exhibit 28 to Plaintiffs' Motion -
ATC Group Services LLC Proof of Claim and
Attachments [203-31] ........................................... JA-1343

Exhibit 29 to Plaintiffs' Motion -
Dissolution Receiver's Objection to ATC Group
Services LLC Proof of Claim and Attachments,
dated July 5, 2022 [203-32] .................................. JA-1361

Exhibit 30 to Plaintiffs' Motion -
Selinger Email of April 1, 2021 (Bates stamped
KKBIC 9816) [203-33]......................................... JA-1380

Exhibit 31 to Plaintiffs' Motion -
KKBIC Responses and Objections to Plaintiffs'
Interrogatories, dated April 28, 2022 [203-34]...... JA-1381

Exhibit 32 to Plaintiffs' Motion -
AIAC 30(b)(6) Deposition of Jeffrey Sands
Errata Sheet, dated November 10, 2022
[203-35] ............................................................... JA-1395

Exhibit 33 to Plaintiffs' Motion -
KKBIC 30(b)(6) Deposition of Jeffrey Sands
Errata Sheet, dated November 11, 2022
[203-36] ............................................................... JA-1398

Exhibit 34 to Plaintiffs' Motion -
Richards Deposition Select Exhibits [203-37] ...... JA-1403

Exhibit 35 to Plaintiffs' Motion -
Morin Deposition Select Exhibits [203-38]........... JA-1495

ix

**Page**

Exhibit 36 to Plaintiffs' Motion -
Jeff Sands' Bankruptcy Deposition Excerpts,
dated December 10, 2021 [203-39] ........................ JA-1587

Exhibit 37 to Plaintiffs' Motion -
Levie Responses Following June 9, 2022
Deposition [203-40].............................................. JA-1596

Exhibit 38 to Plaintiffs' Motion -
KKBIC 3901-3999 [203-41]................................. JA-1602

Exhibit 39 to Plaintiffs' Motion -
KKBIC Proof of Claim and Exhibits [203-42]..... JA-1701

Exhibit 41 to Plaintiffs' Motion -
KKBIC 30(b)(6) Deposition of Jeffrey Sands
Select Exhibits [203-44] ....................................... JA-1846

Exhibit 43 to Plaintiffs' Motion -
KeyBank 30(b)(6) Deposition Excerpts of Leslie
Jones, dated July 19, 2022 [203-46] ...................... JA-1848

Exhibit 44 to Plaintiffs' Motion -
Sands April 9, 2021 Email about Teplitsky
(KKBIC 9937-9942) [203-47]............................... JA-1858

Exhibit 45 to Plaintiffs' Motion -
Levie April 12, 2021 Email to K. Mann (Bates
stamped KKBIC 11003-11110) [203-48].............. JA-1864

Exhibit 47 to Plaintiffs' Motion -
AIAC Defendants' Privilege Log, March 1, 2023
[203-50] ................................................................ JA-1872

Exhibit 48 to Plaintiffs' Motion -
Declaration of Mary E. Olsen, in Support of
Plaintiffs' Motion for Summary Judgment, dated
March 31, 2023 [203-51]....................................... JA-1877

x

**Page**

Exhibit A to Declaration -
Census [redacted] [203-52]
(Sealed. See Sealed Vol. at CA-382-
CA-387) ............................................. JA-1882

Exhibit B to Declaration -
WARN Damage Calculation Spreadsheet
[203-53] ............................................. JA-1888

Exhibit C to Declaration -
DOL Employer Costs for Employee
Compensation - December 2021 [203-54]........ JA-1894

Dissolution Receiver's Memorandum in Opposition
to Summary Judgment Motions for the Plaintiffs'
and of Defendants KKBIA/AIAC and Cross-
Claim Defendants, dated May 1, 2023 [208]......... JA-1913

Supplemental Declaration of Peter D. Wolfson in
Opposition to Summary Judgment Motions of the
Plaintiffs and of Defendants KKBIC/AIAC and
Cross-Claims Defendants, dated May 1, 2023
[209]..................................................... JA-1936

Index of Exhibits to Supplemental Declaration of
Peter D. Wolfson [209-1] ..................................... JA-1941

Exhibit 1 to Supplemental Declaration -
VBC, KKB, and SBI KeyBank Checking
Account Statements, dated April 16, 2021
[209-2] .................................................. JA-1943

Exhibit 2 to Supplemental Declaration -
KKB, VBC and SBI Financial Statements for the
period of January 29, 2017 through
February 25, 2017 [209-3].................................... JA-1953

**xi**

**Page**

Exhibit 3 to Supplemental Declaration -
ADP Reports for KKB, VBC, and SBI for the
period ending April 24, 2021 [209-4]..................... JA-1960

Exhibit 4 to Supplemental Declaration -
Excerpts from KKB, SBI, and VBC Employee
Handbooks [209-5] ............................................... JA-1964

Exhibit 5 to Supplemental Declaration -
VBC, KKB, and SBI 941Tax Forms [209-6] ........ JA-1978

Exhibit 6 to Supplemental Declaration -
August 29, 2022 Mark Coles Deposition,
Excerpts [209-7] ................................................... JA-1988

Exhibit 7 to Supplemental Declaration -
August 29, 2022 Stephanie Hanker Deposition,
Excerpts [209-8] ................................................... JA-1996

Exhibit 8 to Supplemental Declaration -
KKB ADP Employee Payroll Excerpts [209-9] .... JA-2003

Exhibit 9 to Supplemental Declaration -
April 27, 2021 Email from J. Selinger to J.
Kennelly, *et al.*, "Re: Koffee Kup Bakery –
Proposed WARN Notice" [209-10]....................... JA-2013

Exhibit 10 to Supplemental Declaration -
April 27, 2021 KKB Quotes attributable to
Jeffrey Sands of Dorset Partners LLC [203-11] .... JA-2015

Exhibit 11 to Supplemental Declaration -
April 25, 2021 Email from L. Levie to C. Turner
"Re: Bakery, Fields" [209-12].............................. JA-2017

Exhibit 12 to Supplemental Declaration -
April 26, 2022 Email from L. Levie to L.
Sullivan "Re: Notes" [209-13].............................. JA-2022

xii

**Page**

Exhibit 13 to Supplemental Declaration -
April 26, 2022 Email from L. Sullivan to L.
Levie "Re: Sociapar SAS Promissory Note"
[209-14] ................................................ JA-2024

Exhibit 14 to Supplemental Declaration -
June 9, 2022 Leonard Levie Deposition, Excerpts
[209-15] ................................................ JA-2026

Exhibit 15 to Supplemental Declaration -
March 2, 2023 Leonard Levie Deposition
Excerpts [209-16] ................................................ JA-2030

Exhibit 16 to Supplemental Declaration -
April 2, 2021 Email from J. Sands to L. Jones
"Re: Koffee Kup Close/Update/Next Steps….."
[209-17] ................................................ JA-2035

Exhibit 17 to Supplemental Declaration -
Redacted Emails detailing AMTC Wires to
Primmer [209-18] ................................................ JA-2039

Exhibit 18 to Supplemental Declaration -
November 23, 2021 Mark Coles Deposition in
Bankruptcy proceeding Excerpts [209-19] ............ JA-2049

Exhibit 19 to Supplemental Declaration -
July 19, 2022 L. Jones Deposition Excerpts
[209-20] ................................................ JA-2055

Exhibit 20 to Supplemental Declaration -
Confidentiality, Non-Disclosure, and Non-
Solicitation Agreement between AIAC and
Koffee Kup Bakery, Inc., dated
November 23, 2020 [209-21] ................................................ JA-2058

**xiii**

**Page**

Exhibit 21 to Supplemental Declaration -
April 1, 2021 Email from L. Morris to J. Morin
and B. Richards "Re: P3 Financials and P&L
Analysis" [209-22]................................................ JA-2065

Exhibit 22 to Supplemental Declaration - April 9,
2021 Email from J. Sands to L. Levie and J.
Selinger "Re: "KKB Going Concern Value"
[209-23] .................................................. JA-2067

Exhibit 23 to Supplemental Declaration -
KKE Actual and Budgeted Consolidated Results
for the Period 8 (2020) through Period 3 (2021) –
Summary [209-24]................................................ JA-2070

Dissolution Receiver's Response to Plaintiffs'
Statement of Undisputed facts, dated
May 1, 2023 [210] ................................................ JA-2074

Dissolution Receiver's Response to KK Bakery
Investment Company LLC's & American
Industrial Acquisition Company's Statement of
Undisputed Material Facts, dated May 1, 2023
[211]......................................................... JA-2133

Plaintiffs' Brief in Opposition to the Motion for
Summary Judgment of Defendants AIAC and
KKBIA, dated May 1, 2023 [214] ......................... JA-2153

Plaintiffs' Responses to AIAC Defendants'
Statement of Undisputed Material Facts and
Plaintiffs' Statement of Additional Facts, dated
May 1, 2023 [214-1]............................................. JA-2172

Exhibit 1 to Plaintiffs' Responses -
Leonard Levie's Deposition Excerpts, dated
March 2, 2023 [214-2].......................................... JA-2199

xiv

**Page**

Exhibit 2 to Plaintiffs' Responses -
Printout from Kirwan Law [214-3]........................ JA-2205

Exhibit 3 to Plaintiffs' Responses -
Jeffrey Sands' Deposition Excerpts, dated
November 10, 2022 [214-4] .................................. JA-2209

Exhibit 4 to Plaintiffs' Responses -
Mark Coles' Deposition Excerpts, dated
August 29, 2022.................................................... JA-2211

Exhibit 5 to Plaintiffs' Responses -
Jeff Sands' Deposition Excerpts, dated
December 10, 2021 ............................................... JA-2223

Exhibit 6 to Plaintiffs' Responses -
Mark Coles' Deposition Excerpts, dated
June 1, 2022 [214-7] ............................................ JA 2226

Exhibit 7 to Plaintiffs' Responses -
Jeff Sands' Deposition Excerpts, dated
May 10, 2022 [214-8] ........................................... JA 2228

Exhibit 8 to Plaintiffs' Responses -
Affidavit of Jeff Sands, dated May 20, 2021
[214-9] ................................................................... JA-2232

Exhibit 9 to Plaintiffs' Responses -
Declaration of Jeff Sands, in Support of Alleged
Debtor Koffee Kup Bakery, Inc.'s Motion to
Dismiss Involuntary Petition and Request for
Damages, dated September 7, 2021 [214-10]........ JA-2235

Plaintiffs' Brief in Opposition to the Receiver's
Motion for Summary Judgment, dated
May 1, 2023 [215] ................................................ JA-2238

xv

**Page**

Plaintiff's Responses to the Receiver's Statement of
Undisputed Material Facts and Plaintiff's
Statement of Additional Facts, dated
May 1, 2023 [215-1] .............................................. JA-2284

Deposition Transcript Excerpts of Mark Coles,
dated August 29, 2022 [215-2] .............................. JA-2313

Plaintiffs' Motion to Strike Affidavit of Jeffrey

Sands, dated May 1, 2023 [216] ................................. JA-2321

Memorandum of Law in Opposition to the
Dissolution Receiver's Motion for Summary
Judgment, dated May 1, 2023 [217] ....................... JA-2336

Response to the Dissolution Receiver's Statement
of Undisputed facts, dated May 1, 2023 [217-2] ... JA-2361

Affidavit of Jeffrey Sands, dated May 1, 2023
[217-4] .................................................................. JA-2368

Exhibit A to Sands Affidavit -
Minutes of a Telephonic Board of Directors
Meeting of Kup Co., dated April 7, 2021
[217-5] .................................................................. JA-2377

Exhibit B to Sands Affidavit -
Minutes of a Reconvened Telephonic Meeting of
the Board of Directors Kup Co., dated
April 7, 2021 [217-6] ............................................. JA-2380

Exhibit C to Sands Affidavit -
Minutes of a Telephonic Board of Directors
Meeting of Kup Co. and Subsidiaries , dated
April 19, 2021 [217-7] ........................................... JA-2385

Affidavit of Leonard M. Levie, dated
May 1, 2023 [217-8] .............................................. JA-2400

xvi

**Page**

Exhibit A to Levie Affidavit -
Certificate of Formation of KK Bakery
Investment Company LLC [217-9] ....................... JA-2414

Memorandum of Law in Opposition to Plaintiffs'
Motion for Summary Judgment, dated
May 1, 2023 [219] ............................................... JA-2422

Response to Plaintiffs' Statement of Undisputed
Facts, dated May 1, 2023 [219-1].......................... JA-2450

Affidavit of Jeffrey Sands, dated
May 1, 2023 [219-2]............................................. JA-2477

Exhibit A to Sands Affidavit -
Minutes of a Telephonic Board of Directors
Meeting of Kup Co., dated April 7, 2021
[219-3] ................................................................ JA-2486

Exhibit B to Sands Affidavit -
Minutes of a Reconvened Telephonic Meeting of
the Board of Directors of Kup Co., dated
April 7, 2021 [219-4]............................................ JA-2489

Exhibit C to Sands Affidavit -
Minutes of a Telephonic Board of Directors
Meeting of Kup Co. and Subsidiaries, dated
April 19, 2021 [219-5].......................................... JA-2494

Affidavit of Leaonard M. Levie, dated May 1, 2023
[219-6] ................................................................ JA-2509

Exhibit A to Levie Affidavit -
Certification of Formation of KK Bakery
Investment LLC [219-7]........................................ JA-2523

Dissolution Receiver's Reply Memorandum of Law
in Support of Summary Judgement Motion, dated
May 15, 2023 [223] .............................................. JA-2531

xvii

**Page**

Attached to Reply Memorandum -
Appendix A. The WARN ACT Guidelines
[223-1] ..................................................... JA-2541

Certificate of Service, dated May 15, 2023
[223-2] ..................................................... JA-2578

Reply Memorandum of Law by KKBIc/AIAC, in
Further Support of Motion for Summary
Judgment, dated May 15, 2023 [224] .................... JA-2581

Plaintiffs' Reply Brief in Support of Their Motion,
dated May 15, 2023 [226].................................... JA-2589

Plaintiff's Motion to Strike Affidavits of Sands and
Levie and Attachments, dated May 15, 2023
[227]........................................................ JA-2600

Plaintiffs' Reply in Support of Their Motion to
Strike Affidavit of Jeffrey Sands, dated
May 30, 2023 [231] ............................................. JA-2608

Opinion and Order on Motion for Sanctions, dated
August 22, 2023 [236] ......................................... JA-2612

Opinion and Order on Motions to Strike and
Motions for Summary Judgment, dated
August 23, 2023 [237] ......................................... JA-2623

Amended Opinion and Order on Motions to Strike
and Motions for Summary Judgment, dated
August 24, 2023 [238] ......................................... JA-2672

Supplemental Filing in Support of Motion for
Sanctions in Accordance with Opinion and Order
ECF No. 236, dated September 19, 2023 [240]..... JA-2721

xviii

**Page**

Exhibit 1 to Supplemental Filing -
Declaration of Mary E. Olsen, dated
September 19, 2023 [240-1] .................................. JA-2724

    Exhibit A to Olsen Declaration -
    TGF Time Records [240-2] ............................. JA-2727

Exhibit 2 to Supplemental Filing -
Declaration of Stuart J. Miller, dated
September 19, 2023 [240-3] .................................. JA-2732

    Exhibit A to Miller Declaration -
    L&M Time Records [240-4] ............................. JA-2735

    Exhibit B to Miller Declaration -
    CS&A Redacted Time Records [240-5] ........... JA-2737

Class Representatives' Reply in Support of Fees
and Expenses As Sanctions in Accordance with
Opinion and Order ECF No. 236, dated
November 13, 2023 [253] ...................................... JA-2748

Dissolution Receiver's Motion, and Memorandum
in Support, for Summary Judgment, dated
December 20, 2023 [255] ...................................... JA-2755

Dissolution Receiver's Statement of Undisputed
Material Facts, in Support of Motion, dated
December 20, 2023 [256] ...................................... JA-2770

Declaration of Peter D. Wolfson, in Support of
Dissolution Receiver's Motion for Summary
Judgment, dated December 20, 2023 [257] ........... JA-2773

Exhibit 1 to Wolfson Declaration -
DR's WARN Act Calculations [257-1] ................. JA-2778

xix

Page

Defendants American Industrial Acquisition
   Corporation and KK Bakery Investment
   Company LLC's Response and Memorandum in
   Opposition to Dissolution Receiver's Motion for
   Partial Summary Judgment, dated
   January 19, 2024 [262] ......................................... JA-2791

Defendants American Industrial Acquisition
   Corporation and KK Bakery Investment
   Company LLC's Statement of Disputed Facts,
   dated January 19, 2024 [262-1] ............................. JA-2805

Certificate of Service, dated January 19, 2024
   [262-2] ................................................................. JA-2807

Plaintiffs' Response to the Dissolution Receiver's
   Motion for Partial Summary Judgment, dated
   January 19, 2024 [263] ......................................... JA-2810

   Exhibit A to Plaintiffs' Response -
   Spreadsheet of Calculations [263-1]...................... JA-2821

Declaration of Kristy Carpenter, dated
   January 19, 2024 [263-2]....................................... JA-2822

Declaration of Richard Smith, dated
   January 19, 2024 [263-2]....................................... JA-2824

Dissolution Receiver's Reply Memorandum in
   Support of Motion for Summary Judgment, dated
   February 1, 2024 [265-1]....................................... JA-2826

   Exhibit 1 to Dissolution Receiver's Reply
   Memorandum -
   VT DOL – Who is an Employee vs. Independent
   Contractor [265-1] ................................................ JA-2840

xx

**Page**

Exhibit 2 to Dissolution Receiver's Reply
Memorandum -
Mark Coles' Deposition Excerpts, dated
June 1, 2022 [265-2] ............................................. JA-2844

Exhibit 3 to Dissolution Receiver's Reply
Memorandum -
Declaration of Heber Maughan, in Support of
The Dissolution Receiver's Motion with
Attachment, dated January 29, 2024 [265-3]......... JA-2856

Certificate of Service, dated February 1, 2024
[265-4] .................................................................. JA-2875

Opinion and Order on Fees and Costs, dated
March 26, 2024 [269] ............................................ JA-2878

Revised Statement of Fees and Costs in accordance
with March 2024 Opinion and Order ECF No.
269, dated August 12, 2024 [271] .......................... JA-2893

Declaration of Mary E. Olsen in Support of Revised
Statement of Fees and Costs of The Gardner
Firm, P.C., dated April 12, 2024 [271-1]............... JA-2896

Exhibit A to Olsen Declaration -
Updated TGF Time Records [271-2]...................... JA-2899

Declaration of Stuart J. Miller in Support of
Revised Statement of Fees and Costs of
Lankenau & Miller, LLP, dated
April 12, 2024 [271-3].......................................... JA-2903

Exhibit A to Miller Declaration -
Updated L&M Time Records [271-4]................... JA-2906

**xxi**

**Page**

Joint Motion for Order Awarding Sanctions Against
American Industrial Acquisition Corporation and
KK Bakery Investment Company LLC, dated
May 3, 2024 [272] ................................................ JA-2908

[Proposed] Order Awarding Sanctions Against
American Industrial Acquisition Corporation and
KK Bakery Investment Company LLC [272-1] .... JA-2911

Certificate of Service, May 3, 2024 [272-2].............. JA-2913

Opinion and Order on Motions for Summary
Judgment, dated May 17, 2024 [273] .................... JA-2916

Defendants American Industrial Acquisition
Corporation and KK Bakery Investment
Company LLC's Response in Opposition to Joint
Motion for Order Awarding Sanctions, dated
May 17, 2024 [274] .............................................. JA-2937

Certificate of Service dated, May 17, 2024
[274-1] ................................................................. JA-2941

Joint Reply Memorandum in Support of Joint
Motion for Order Awarding Sanctions, dated
May 31, 2024 [275] .............................................. JA-2944

Certificate of Service, dated May 31, 2024 [275-1] .. JA-2952

Opinion and Order on Joint Motion for An Order on
Requiring the Payment on Sanctions, dated
August 5, 2024 [276] ............................................ JA-2954

Plaintiffs' Pre-Trial Brief Regarding the
Inapplicability of The Good Faith Defense in this
Matter, Both in Law and in Fact, dated
April 14, 2025 [296] ............................................. JA-2960

**xxii**

**Page**

Deposition Transcript of Mark Coles, dated
August 29, 2022 [296-1]........................................ JA-2966

Plaintiffs' Response to the Dissolution Receiver's
Pre-Trial Brief, dated April 25, 2025 [298]........... JA-2979

Plaintiffs' Post-Trial Brief, dated
Juned 11, 2025 [306] .......................................... JA-2987

Hearing Transcript on Dissolution Receiver's
Application of the "Good Faith" Mechanism to
Reduce Liability, dated May 12, 2025 [306-1]...... JA-3003

Opinion and Order on Dissolution Receiver's
Assertion of "'Good Faith' Defense", dated
October 24, 2025 [309]........................................ JA-3052

Defendants' Notice of Appeal, dated
November 26, 2025 [311].................................... JA-3062

Judgment, dated November 26, 2025 [312]............... JA-3064

Defendants' Amended Notice of Appeal, dated
December 17, 2025 [315] .................................... JA-3066

Dissolution Receiver's Notice of Appeal, dated
December 22, 2025 [318] .................................... JA-3068

24

also, a reasonable schedule?

And I think, you know, in the next month would be when Mr. Levie would be here.

MR. KIRWAN:  I think it's reasonable.

MS. OLSEN:  I'm certainly willing to try, your Honor.

THE COURT:  All right.  And I'm willing to sit right outside here and be ready to come in whenever you say.

MS. OLSEN:  Thank you.

MR. KIRWAN:  Thank you, your Honor.

THE COURT:  All right.  Thank you.

(A recess was taken from 2:02 p.m. to 2:48 p.m.)

THE COURT:  Okay.  Welcome back.

And so both counsel are at the podium. Any resolution?

MS. OLSEN:  Your Honor, I think we've made some progress.

One point I wanted to make is that Mr. Wolfson said that his microphone had been turned off or that he couldn't hear what was happening in the courtroom, so we wanted to be sure he could.

THE COURT:  Okay, Mr. Wolfson, can you

25

hear us now?

Can you hear us?  No?

THE CLERK:  It would have to be on his end.

MS. OLSEN:  It looks like your microphone is turned off.  Can you hear us now, Peter?  Still can't hear us?

Now you can?

THE COURT:  It was a thumbs-up there.

MR. WOLFSON:  I can hear you now.  Thank you.

THE COURT:  Okay.  All right.

MS. OLSEN:  Thank you, your Honor.

So the parties have reached agreement on a February 28th production date --

THE COURT:  Okay.

MS. OLSEN:  -- for the documents that were described in the counterdemand of yesterday.

MR. KIRWAN:  The non-privileged documents, yes.

MS. OLSEN:  E-mail exchange between the parties yesterday where, I think it was eight categories of documents were described with some particularity.

26

And do you agree, Mr. Kirwan, that you understand what it is that we're expecting to be produced?

MR. KIRWAN:  I have seen your list.

MS. OLSEN:  All right.

And then the parties are requesting a status conference with the Court on March the 6th as a placeholder in case we have some disagreement or belief that we haven't gotten a full production on the 28th, if that works for Your Honor's calendar.

THE COURT:  Yes.

MS. OLSEN:  And if we could do that via some remote method, the status conference, if that would be possible, that would be appreciated.

And then the parties are discussing the deposition or intending to set the deposition of Mr. Levie between March 9th and March 15th at the Court's convenience.  We'd like to do it here in the courtroom, and we'd ask for the Court to supervise.  Plaintiffs would ask for that.

THE COURT:  Well, I wouldn't be supervising.  In other words, I wouldn't be

27

sitting in the deposition itself, but I would be available in case there's any issues that come up.

You're not asking that I actually sit here for the course of the deposition, are you?

MS. OLSEN:  We would like that if Your Honor would, but if -- I understand if Your Honor is not available to do that.

THE COURT:  Yeah, I've never done that actually.  I mean, there's always a first, right?  But 28 years, haven't done it yet.

MS. OLSEN:  Okay.

THE COURT:  But I would be here so that in case there's a particular problem, just come in.

MS. OLSEN:  So that timeframe works for Your Honor between March 9th and March 15th?

THE COURT:  Yeah, I'm wondering whether a Thursday would be a good day for that.  What the is the Thursday?

MR. KIRWAN:  That's the 16th or the 9th.

THE COURT:  Okay.  And do you know when drug court is?

THE CLERK:  March 9th.

THE COURT:  March 9th.  Would March 9th

28

be possible?

MR. KIRWAN:  Judge, I think what -- and I don't mean to speak for her, but I think we're talking now, I've got to pin it down with my client that we're going to have the deposition between March 9th and March 15th depending on his availability.

The only thing that I just learned from him, just speaking to him on the phone about the dates, is he's requesting, as the other depositions have been conducted virtually, he's requested that this be done virtually because he's going to be either in Europe or Japan, he indicates, on business in the whole first half of March or maybe even the entirety of March.

So he makes a request to your Honor that it be done during that timeframe but done virtually.

THE COURT:  Okay.

And your response to that?

MS. OLSEN:  Plaintiffs make the request, Your Honor, to absolutely order Mr. Levie to appear in person here for his deposition.

THE COURT:  So tell me why he -- why he says that he would be gone for the entire month.

CAPITOL COURT REPORTERS, INC.   (802) 863-6067

29

I mean, this goes back into --

MR. KIRWAN:  No, I know, but Mr. Levie has made plans.  He's got 24 companies throughout the world, and he indicated to me just now that he's going to be in Japan for a portion of the time and different parts of Europe for other portions for the month of March.

THE COURT:  I really think he has got to be here.  And the reason, I think there's going to be coming up issues, it's very likely, and I think it's important that he's here and that I intervene and either order him to do something or not; you know, whatever, but I think it has to be worked out that he has to be here at some time.

And as I've indicated before, earlier, I think this is just an extraordinarily difficult situation, bad situation.  I mean, if, in fact, there's some falsehoods about court schedules, et cetera, that is really serious, and I just don't think we should leave him in some other place while we're addressing something which may have such impact, not only on this litigation but really, you know, it could very well have an

CAPITOL COURT REPORTERS, INC.     (802) 863-6067

30

impact, you know, on his career.

You don't want to be held -- just as an example, you don't want to be held in contempt by a Federal Court, right?  That --

MR. KIRWAN:  No, sir.

THE COURT:  The ramifications of that are enormous, and I would never want to do that, frankly, but this is the kind of situation that could, you know, just jump out of control here, and I think that it would be important that he be here.

I appreciate the fact that you might have to accommodate somewhat his schedule, but there's got to be some time when he can be here.

MS. OLSEN:  We agree, your Honor.  And, in fact, we had subpoenaed him for today and believed he should have been here today.

THE COURT:  You subpoenaed him for today?

MS. OLSEN:  We did, your Honor, and the process server did everything he could do.

In fact, taped the subpoena to the door of the residence, and it was gone the next time he came back to look for it.  And he spoke to Mr. Levie on the phone, and Mr. Levie said, Talk to my counsel.

31

We made every effort to get him here today, and so I'm very concerned that he's saying that he's not available.

THE COURT:  Okay, so let's get a date. So you're going to have to work this out.  I appreciate the fact that he may be in Europe or may be in Japan, but there's a time that he's going to be in Vermont and that's in a deposition.  It has to be in March sometime, and there's a little level of flexibility but we're really trying to move this along.

I appreciate Mr. Wolfson's argument that this really has to get resolved because some people are just waiting for this case to be resolved, so I really want to push this along.

MR. KIRWAN:  Thank you, your Honor.

MS. OLSEN:  We'd also proposed a March 31 dispositive motion deadline, your Honor.

THE COURT:  Okay.  That's fine.

MS. OLSEN:  Which also makes it necessary for Mr. Levie to be here and let us depose him.

THE COURT:  Yes.

MS. OLSEN:  And I suppose the last thing is that we will -- plaintiffs will agree to suspend the pending motion for sanctions with

32

hopefully -- you know, hopefully we won't have to bring it forward again, but we certainly don't want to have to refile.

We would just ask your Honor to perhaps put it on a placeholder date for us in the event that --

THE COURT:  Yeah, I would not -- I'll suspend it, but I also want to tell you that everything from this point forward is relevant to the issues of sanctions, right?

So if, in fact, discovery goes well, that's relevant to sanctions.  If discovery goes badly, that's relevant to sanctions, and ultimately it's a totality of circumstances approach.  Take a look at all of the circumstances, see how discovery has been complied with and make an assessment.

In other words, I think it's -- what do they call it, feet to the fire?

Is that what people call it; feet to the fire?

MS. OLSEN:  Understood.

THE COURT:  Or fire to the feet?

MR. KIRWAN:  Feet to the fire, yeah.

THE COURT:  Okay.  I really appreciate

33

your efforts.

Is that it?

MS. OLSEN:  Your Honor, maybe in light of this development with Mr. Levie's unavailability, if we could set a follow-up, just to make sure that we get this date nailed down with him.

MR. KIRWAN:  Within a week.

THE COURT:  Yes, within a week.  And if we have not got that resolved, then just have a phone conference.

MR. KIRWAN:  Fair enough.

MS. OLSEN:  Thank you, your Honor.

MR. KIRWAN:  Thank you, your Honor.

THE COURT:  Okay, great.  All right, thank you very much.

(End of proceedings at 2:58 p.m. and end of transcript.)

34

C E R T I F I C A T E

I, SARAH M. BENTLEY, Certified Court Reporter, Registered Professional Reporter and Notary Public, do hereby certify that the said proceedings were taken in machine shorthand by me at the time and place aforesaid and were thereafter reduced to typewritten form under my direction, Pages 1 - 34; that the foregoing is a true, complete, and correct transcript of said proceedings.

I further certify that I am not employed by, related to, nor counsel for any of the parties herein, nor otherwise interested in the outcome of this matter.

IN WITNESS WHEREOF, I have affixed my signature and seal this 9th day of February, 2023.

/s/ Sarah M. Bentley

SARAH M. BENTLEY, CCR-B-1745

CAPITOL COURT REPORTERS, INC.      (802) 863-6067

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| Matthew Chaney, Nadine Miller and Arthur Gustafson, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 2:21-cv-120 |
| Vermont Bread Company, Superior Bakery, Inc., Koffee Kup Bakery, Inc., Koffee Kup Distribution LLC, KK Bakery Investment Company LLC, KK Bakery Holding Acquisition Company, and American Industrial Acquisition Corporation, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| Linda Joy Sullivan, in her capacity as the Dissolution Receiver for Koffee Kup Bakery, Inc., Vermont Bread Company, Inc. and Superior Bakery, Inc., | ) ) ) ) ) ) ) | |
| Intervenor-Defendant-Crossclaimant, | ) ) ) | |
| v. | ) ) | |
| KK Bakery Investment Company, LLC, KK Bakery Holding Acquisition Company, and American Industrial Acquisition Corporation, | ) ) ) ) ) ) | |
| Crossclaim Defendants. | ) | |

## ORDER

The motion for protective order (ECF No. 182) filed by Defendants American Industrial Acquisition Corporation and KK Bakery Investment Company LLC ("AIAC Defendants") is **denied.** The Court hereby ORDERS production by the AIAC Defendants of all documents and answers to questions previously requested of them, including but not limited to:

1) all documents/communications relating to/reflecting AMTC's involvement and/or AMTC payments related in any way to Koffee Kup/KKBIC/AIAC/Kup Co. relative to the purchase of Koffee Kup, Kup Co., and/or related entities, including without limitation the securities purchase agreement involving KKBIC and KUP Co., Inc; the Dorset Partners invoice (KKBIC 14171-72); the unredacted wire transfer confirmation (AIAC 12) and any attorneys' fees/expenses through present;

2) all documents/communications relating to/reflecting any loan and/or other agreement between AMTC and any other entity concerning the funds AMTC paid relating in any way to Koffee Kup/AIAC/KKBIC/Kup Co. relative to the purchase of Koffee Kup, Kup Co., and/or related entities;

3) all documents/communications relating to/reflecting the Dorset Partners' invoice (KKBIC 14171-72), including the payment thereof (in unredacted form(s));

4) all documents/communications relating to/reflecting agreements/retainers/payments made with/to any of the following in relation to Koffee Kup/AIAC/KKBIC/Kup Co. related involvement (whether pre or post acquisition): Jeff Sands; Dorset Partners, LLC, Mark Gauthier, David Cryer, John Tomlinson, Rhonda Halladay, Brian Shiau, Lyle Deitch, Bill Reichert, Bob Auger, Dave Sands, Deborah Cannavino, Marc Mandelman, Epstein Becker Green, John Cannavino, Cummings & Lockwood LLC, Joseph Selinger, TCORS, Alex Edelman, Primmer Piper Eggleston & Cramer PC; Erin Miller Heins, Langrock Sperry & Wool, LLP, Dinse, Daniel L. Burchard, McCormick,

2

Fitzpatrick, Kasper & Burchard, P.C. and Terry Kirwan, Kirwan Law;

5) all documents relating to/reflecting communications about the WARN notices including, without limitation, communications with attorneys; Koffee Kup HR; mailing house(s); state/governmental agencies;

6) documents sufficient to show AIAC's and KKBIC's assets during 2021 to present;

7) all documents provided to/received from any employees/executives of any of the Koffee Kup entities (including without limitation JF Morin; Mark Coles; Stephanie Hanker; Susan Leonard and Ben Richards) from January 1, 2021 to present.

8) all documents/communications relating to/reflecting Mr. Levie's involvement, payment and/or direction/authorization of payment(s) related in any way to Koffee Kup/AIAC/KKBIC/Kup Co, including without limitation the securities purchase agreement involving KKBIC and KUP Co., Inc; the Dorset Partners invoice (KKBIC 14171-72) and any attorneys' fees/expenses, through the present.

With respect to any document for which the AIAC Defendants claim attorney-client privilege, they shall produce a privilege log that fully complies with the Federal Rules of Civil Procedure and controlling case law within the Second Circuit.  All production is subject to the parties' Stipulated Confidentiality and Protective Order.

Production shall be made by or before 9:00 a.m. on March 1, 2023.  Failure to comply with this Order in good faith will be considered in the context of the Court's ultimate ruling on the pending motion for sanctions (ECF No. 158).

3

DATED at Burlington, in the District of Vermont, this 27th day of February, 2023.


/s/ William K. Sessions III
William K. Sessions III
U.S. District Court Judge

```
                        UNITED STATES DISTRICT COURT
                        FOR THE DISTRICT OF VERMONT

MATTHEW CHANEY, NADINE MILLER and      )  CIVIL ACTION NO.
ARTHUR GUSTAFSON, on behalf of         )  2:21-cv-120
themselves and all others similarly    )
situated,                              )
                    Plaintiffs,        )
                                       )
            vs.                        )
                                       )
VERMONT BREAD COMPANY, et al.,         )
                    Defendants.        )



                        TELEPHONE CONFERENCE
                      Friday, February 17, 2023
                        Burlington, Vermont



BEFORE:

      THE HONORABLE WILLIAM K. SESSIONS III,
      District Judge


APPEARANCES (VIA VIDEOCONFERENCE):

MARY E. OLSEN, ESQ., The Gardner Firm, P.C., P. O. Drawer 3103,
      Mobile, AL 36652, Counsel for the Plaintiffs

JONATHAN MILLER, ESQ., Lankenau & Miller LLP, 100 Church
      Street, 8th Floor, New York, NY 10007, Counsel for the
      Plaintiffs

THOMAS P. AICHER, ESQ., Cleary, Shahi & Aicher, P.C., 110
      Merchants Row, P. O. Box 6740, Rutland, VT 05702-6740,
      Counsel for the Plaintiffs

                          (Continued)



                    Johanna Massé, RMR, CRR
                    Official Court Reporter
                       P. O. Box 5852
                    Burlington, VT 05402
            802-951-8102 | 802transcripts@gmail.com
```

APPEARANCES VIA VIDEOCONFERENCE (CONTINUED):

TERRY J. KIRWAN, ESQ., Kirwan Law Firm, P.C., 2401 Burnet Avenue, Syracuse, NY 13206, Counsel for Defendants American Industrial Acquisition Corp., KK Bakery Holding Acquisition Co., and KK Bakery Investment Co. LLC

DANIEL L. BURCHARD, ESQ., McCormick, Fitzpatrick, Kasper & Burchard, P.C., 40 George Street, P. O. Box 638, Burlington, VT 05402-0638, Counsel for Defendants American Industrial Acquisition Corp., KK Bakery Holding Acquisition Co., and KK Bakery Investment Co. LLC

PETER D. WOLFSON, ESQ., and ARTHUR H. RUEGGER, ESQ., Dentons US LLP, 1221 Avenue of the Americas, New York, NY 10020-1089, Counsel for the Dissolution Receiver

Friday, February 17, 2023

(The following was held via videoconference at 9:45 AM.)

COURTROOM DEPUTY:  Your Honor, this is civil case number 21-CV-120, Matthew Chaney, *et al.* v. Vermont Bread Company, *et al.*  Present for the plaintiffs are Attorneys Jonathan Miller, Mary Olsen, and Thomas Aicher.  Present for defendants KK Distribution, American Industrial Acquisition Corporation, and KK Bakery Holding Acquisition Company are Attorneys Daniel Burchard and Terry Kirwan.  Present for dissolution receiver Linda Joy Sullivan are Attorneys Arthur Ruegger and Peter Wolfson.  All parties are present by video and/or telephone.  And we are here for a telephone conference.

THE COURT:  Right.  This is a telephone conference, and I appreciate everyone's patience with the technology.  I'm actually in a vehicle, so that may have caused some difficulty.

So my question is whether the deposition has been scheduled and, if not, what are the plans of the parties, and I guess my question is whether ultimately I should set a time for the deposition.

So plaintiffs' counsel, Ms. Olsen, what is the status of the scheduled deposition?

MS. OLSEN:  Your Honor, before just a moment ago, we had not heard anything about a date that Mr. Levie could be available, and of course the date range that we were anticipating to get the deposition set during was March 9th to

March 15th.  Mr. Kirwan just informed us while we were in the breakout room that Mr. Levie could be available on March 2.  So that's a week earlier than the range that we were looking at and only two days after the -- after the document production date that was agreed upon of February the 28th.

So I asked Mr. Kirwan if he could do the document production a week earlier, on February the 21, which would be Tuesday next week, and I didn't get a firm commitment from Mr. Kirwan on that.

And the other -- the other issue that we have is that we'd ask the Court to hold a date for us to have a follow-up conference after the documents were produced so that we could raise any issues about disputes over the documents with the Court and get some assistance in resolving that before the deposition.

So those are the moving pieces, your Honor, and, you know, it's possible that, you know, an earlier schedule could work, but these other things would need to fall into place as well.

THE COURT:  Okay.  So let me ask Mr. Kirwan.  The plaintiff is asking for moving up the document presentation by one week.  I guess she hasn't gotten a response.  What is your response here?  If in fact there's going to be a deposition on the 2nd of March, it would seem realistic that you move up the document production a week.  My question is whether you can do that.

MR. KIRWAN:  Judge, I think I could compromise if that's a possibility to the Friday of next week, a week from today, as opposed to Tuesday, but there are some issues, your Honor, as to whether the scope that they've requested needs to be narrowed by a protective order.  So I just wanted to throw that out there in the interest of full transparency, because there's attorney-client privileged information that's being sought that we, of course, will seek to protect.

THE COURT:  Okay.  So what you're suggesting is that you could actually move it up to Friday.  The deposition on the 2nd, that's the following Friday; is that correct?

MR. KIRWAN:  Thursday, your Honor.

THE COURT:  Thursday?  Okay.  All right.

Ms. Olsen, I guess my question is:  Is that acceptable?  I mean, obviously this is going to take a large document presentation.  Is it acceptable to move it to Friday if in fact on the following Monday the Court scheduled a conference to deal with any of the issues about attorney-client privilege or failures of the -- failures of the defendant to surrender documents?

MR. WOLFSON:  Your Honor, this is Peter Wolfson.  I'm just confused as to what Friday -- the dates that we're now talking about.

THE COURT:  Yeah.  So we'd be talking about February -- what is today?  17th.  -- 24th.  So the document

production would be February 24th.  The deposition would be scheduled for March 2nd, which is the following Thursday.  And in fact, the Court would then schedule a telephone conference on Monday, February 27th or 28th --

MR. KIRWAN:  6th.  6th.

THE COURT:  6th?  Okay.  -- to talk about any conflicts between the parties.

MR. BURCHARD:  That Monday's the 27th.

MR. KIRWAN:  February 26 is a Sunday.

MR. BURCHARD:  Right.  The 27th is a Monday.

THE COURT:  Okay.  So it's the 27th.  It would be the 27th.

I'm interested in seeing what Ms. Olsen's response to that is.

MS. OLSEN:  That's a pretty tight turnaround for us, your Honor, but we would certainly do our best.  At this point we don't even have a preview or projection as to how many documents Mr. Kirwan is holding or intending to produce, what he's identified that he is producing, what he thinks he doesn't have to produce.  We've never seen a privilege log in this case.  And, frankly, when we agreed to adjourn the sanctions hearing, we didn't leave there with the understanding that we were going to be retreading ground about what defendants were not going to produce within the scope of what we asked for. What we understood was we were going to get what we asked for.

THE COURT:  Right.

MS. OLSEN:  And made it quite clear that -- that we would not be arguing about privilege matters.

THE COURT:  Okay.  But you know -- you know whenever there's a disclosure of discovery in a case of this complexity as well as difficulty in communication that there's going to be some problems in the disclosure.  I happen to think that this schedule seems to be realistic.  Mr. Kirwan's going to have to get together a lot of documents, send those -- and I think by Friday that's reasonable.  What's important is that you get the deposition date as early as possible, and it seems to me that March 2nd is a great day for the deposition as long as the Court's available to deal with any questions about disclosure on Monday, and I would be available, and I also would be available at the time of the deposition.

So in light of the Court's active engagement in the discovery process, you know, this schedule seems to me realistic.  But I understand that you have to take it step by step by step.  So we order a date by which discovery is turned over; we have a hearing date to deal with any of the issues which may be still outstanding in advance of the deposition; then we have the deposition scheduled and the Court's availability is guaranteed.  It seems to me that that's a good schedule at this point.

So, Ms. Olsen, do you have any more objections?

MS. OLSEN:  No.  I think your Honor is right on there. And if I can get the documents produced to me by noon that Friday, then I would have some time to get assistance from my staff to, you know, make sure I'm able to look at the -- view the documents, make sure there's not going to be any technical issues, and use the weekend to look at those before the hearing on Monday.  So if that works for your Honor, then it will work for me.

THE COURT:  It works for me.

Mr. Kirwan, does it work for you?

MR. KIRWAN:  It's pushing it, but I'll do my best, your Honor.

THE COURT:  Okay.  Well, I guess we'll all be pushing it, and I'll be there.  We'll schedule a hearing on Monday to deal with any of the outstanding issues, and the deposition's scheduled for Thursday, and I'll be present -- I will not be in the room, obviously, but I'll be present for any issues that come up during the course of the deposition.

MR. WOLFSON:  Your Honor, this is Peter Wolfson.

THE COURT:  Yes.

MR. WOLFSON:  Before we terminate this, we joined in on this motion, and I just want to make sure that Mr. Kirwan, whatever he sends to Ms. Olsen, he also sends to me by way of the documents.  We have a critical role to play in this WARN Act litigation, as you're aware.

And I'd also like to just cut off one issue at the pass here.  First, I don't think that there are that many documents that were still being requested, and -- but among those documents are engagement letters.  Engagement letters, source of payment, and the like.  And the law in virtually all of the circuits and states is well settled that engagement letters are not subject to the privilege.  Historical, factual information is not subject to the attorney-client privilege.

So in the past there has been some suggestions and arguments when we've requested engagement letters of the defendants here that they've asserted the attorney-client privilege to it.  It doesn't exist, and I think that if -- this is actually, given the nature of this case, a significant issue of who did what, who's paying for what, and the like.

So I just would hope that we can today get Mr. Kirwan's agreement or the direction from the Court with respect to the obligation to produce engagement letters.

THE COURT:  Okay.

MR. WOLFSON:  If there was any legal opinion embedded in it, we understand that can be redacted, but typically there's not legal opinion in the engagement letter.  We need to know who hired who, who the client was, what the fee arrangements were, and what the source of payment of fees were.

THE COURT:  Okay.  All right.  Mr. Kirwan, first, are you willing at this point to represent that you're going to

turn over all of the engagement letters?  If not, if you're going to rely on attorney-client privilege, it seems to me that that's issue number one that will be handled in the hearing on Monday, the following Monday after the disclosure of the documents, and it would be really helpful if I had some briefing on that issue.

But, Mr. Kirwan, do you intend to assert attorney-client privilege to result in not disclosing the engagement letters?

MR. KIRWAN:  I am fully aware of what Mr. Wolfson indicated the state of the law is relative to the production of attorney-client fee agreements and the attorney-client privilege, and we will not be asserting it for that purpose because it would fly in the face of the law.  However, we do believe that there may be some relevance issues relative to those -- the production of those documents, and that's probably what we will be discussing.

THE COURT:  Okay.  All right.  Well, I will say that -- I will say that in light of the discovery that the plaintiff is seeking, that engagement letters are particularly relevant because they show the relationships financially among the various parties.  If it's just a question of relevance, you're going to be hard-pressed to persuade the Court that those engagement letters would not be relevant.

MR. KIRWAN:  I understand, your Honor.

THE COURT:  Yup.  Okay.

MR. KIRWAN:  I have an uphill battle.

THE COURT:  All right.  It's an uphill battle, right.

MR. KIRWAN:  Yup.

MR. WOLFSON:  I would hope, your Honor, that Mr. Kirwan collects those --

MR. KIRWAN:  It's "Ker-win."  "Ker-win."  "Ker-win."

MR. WOLFSON:  Kirwan.  -- collects those engagement letters so that if he does not turn them over on the 24th and your Honor rules on the 27th that he does need to turn it over, that they're immediately that day turned over, because otherwise we're just not going to be prepared again for a February -- for a March 2nd deposition.

THE COURT:  It's clear that you represented that you really need these engagement letters.  I think Mr. Kirwan has just suggested that maybe only a relevance issue may be outstanding, and I think he's gotten the winds of how the Court would rule on that issue.  As a result, he's really on notice that those engagement letters are highly relevant, and I would expect as an officer of the court that he understands that those need to be turned over well in advance of the deposition.  So I'm not going to order that he gather them all together, but I think he can understand as an officer of the court that that would be a responsibility of his to make sure that those engagement letters are surrendered well in advance of the deposition.

MR. WOLFSON:  Thank you, your Honor.

THE COURT:  Okay.  Are there any other issues at all?

MR. KIRWAN:  Yes, your Honor.

MS. OLSEN:  Your Honor, the other issue that Mr. Wolfson raised that's of critical importance is a source of payment for those professionals, and, of course, that's -- that's another thing that we expect to see in Mr. Kirwan's production.

THE COURT:  Okay.  All right.  Well, I understand that.  I don't know the law, frankly, on that issue, but Mr. Kirwan seems to suggest that he does know the law on that issue and is under the obligation to turn over that information.  But let's see.  Let's take it step by step.  As of Friday, the discovery -- well, let me just make an official order.

On Friday, all discovery in advance of the deposition is to be turned over by Mr. Kirwan by noon of that Friday.  On Monday we'll schedule a hearing and the parties will be notified as to when the hearing will be.  That will include a phone conference again dealing with any additional discovery issues.  The deposition is scheduled for Thursday, the 2nd of March, and I believe that begins at 9 o'clock, and the Court will be available on that date to make sure that it answers any questions that may arise during the deposition.

Okay.  I think -- are we all set?

MR. KIRWAN:  Thank you, your Honor.  Have a good day.

THE COURT:  Okay.  Thank you very much.  Bye.

MS. OLSEN:  Thank you, your Honor.

MR. BURCHARD:  Thank you, your Honor.

MR. WOLFSON:  Thank you, your Honor.

(Court was in recess at 10:01 AM.)


C E R T I F I C A T I O N

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


March 6, 2023                    Johanna Masse  Digitally signed by Johanna Masse
                                               Date: 2023.03.06 22:27:50 -05'00'
                                 _____
                                 Johanna Massé, RMR, CRR

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

MATTHEW CHANEY, NADINE MILLER and        )  CIVIL ACTION NO.
ARTHUR GUSTAFSON, on behalf of           )  2:21-cv-120
themselves and all others similarly      )
situated,                                )
                Plaintiffs,              )
                                         )
            vs.                          )
                                         )
VERMONT BREAD COMPANY, et al.,           )
                Defendants.              )


HEARING ON DISCOVERY ISSUE
Thursday, March 2, 2023
Burlington, Vermont


BEFORE:

     THE HONORABLE WILLIAM K. SESSIONS III,
     District Judge


APPEARANCES:

MARY E. OLSEN, ESQ., The Gardner Firm, P.C., P. O. Drawer 3103,
     Mobile, AL 36652, Counsel for the Plaintiffs

TERRY J. KIRWAN, ESQ., Kirwan Law Firm, P.C., 2401 Burnet
     Avenue, Syracuse, NY 13206, Counsel for Defendants
     American Industrial Acquisition Corp., KK Bakery Holding
     Acquisition Co., and KK Bakery Investment Co. LLC

(Continued)


Johanna Massé, RMR, CRR
Official Court Reporter
P. O. Box 5852
Burlington, VT 05402
802-951-8102 | 802transcripts@gmail.com

APPEARANCES (CONTINUED):

DANIEL L. BURCHARD, ESQ., McCormick, Fitzpatrick, Kasper &
      Burchard, P.C., 40 George Street, P. O. Box 638,
      Burlington, VT 05402-0638, Counsel for Defendants American
      Industrial Acquisition Corp., KK Bakery Holding
      Acquisition Co., and KK Bakery Investment Co. LLC

PETER D. WOLFSON, ESQ., Dentons US LLP, 1221 Avenue of the
      Americas, New York, NY 10020-1089, Counsel for the
      Dissolution Receiver

Thursday, March 2, 2023.

COURTROOM DEPUTY:  Your Honor, this is civil case number 21-120, Matthew Chaney, *et al.* v. Vermont Bread Company, *et al.*  Present for the plaintiffs is Attorney Mary Olsen.  Present for the AIAC defendants are Attorneys Daniel Burchard and Terry Kirwan.  Also present for Linda Joy Sullivan, the receiver, is Attorney Peter Wolfson.

The matter before the Court is a discovery issue.

THE COURT:  All right.  This is a unique situation.  The Court had actually scheduled a deposition to take place in the courthouse in Burlington, requiring all of the parties to come to Vermont to actually engage in the deposition, and the reason that I did that, frankly, was there was the whole issue as to whether or not Mr. Levie should be held in contempt.  That is still pending based upon the various answers that he has given to previous interrogatories, and I felt that in light of the tension and the refusal of Mr. Levie to answer these questions and the pending contempt, because I wanted to figure out whether Mr. Levie should be held in further contempt, that the deposition should be occurring under the Court's watch in Vermont.

So tell me, Ms. Olsen, what is happening in the deposition.

MS. OLSEN:  Your Honor, we started the deposition around 9 o'clock this morning and began with some background

questions for Mr. Levie and have already experienced difficulty getting answers from him, have already had questions from him to restate very basic, straightforward questions.

He was provided with a commission agreement between himself and Jeff Sands after being unable to answer a question about the amount of equity that Mr. Sands had in the KKBIC entity and how he received that equity, and upon receiving documents that were produced by AIAC, which Mr. Levie is here representing today, Mr. Levie insisted that he needed to look at all the pages that were produced by AIAC, not just the commission agreement at issue.  And then when we pointed out to him that it was just the commission agreement that I wanted him to focus on, he did that but took between five to ten minutes to review it, and still we seem not to be getting anywhere, and we wanted to bring it to the Court's attention early.

THE COURT:  Okay.  Well, let me ask Mr. Levie's counsel, what is the situation here?

MR. KIRWAN:  Judge, although I don't agree with everything that Ms. Olsen indicated, we are here and we seek your direction to the efficient completion of this deposition.

THE COURT:  Okay.  Do you have any objection to me actually talking to Mr. Levie?

MR. KIRWAN:  I would welcome it, your Honor.

THE COURT:  Okay.  Mr. Levie, what's -- what's your response to these allegations?

MR. LEVIE:  I'm trying --

THE COURT:  You actually have to stand.

MR. LEVIE:  Oh, pardon me.  My fault entirely.  Can you hear me?

THE COURT:  Yes.

MR. LEVIE:  I'm very confused by this process, your Honor.  In the previous weeks leading up to this, I have had the opportunity to speak, along with Jeff Sands, to dozens and dozens of attorneys across the country that are defending WARN Act claims that have been asserted by Ms. Olsen's firm, and these dozens and dozens of lawyers defending their clients against WARN Act claims have had a common narrative, and the narrative is that Mary Olsen and her firm on a contingency fee basis sue hundreds of companies and all of their affiliates and all of their subsidiaries on a meritless basis in order to win about 3 percent of those cases.  She routinely pierces the corporate veil, or attempts to, in a methodology by which she targets companies that are in distress and goes after all of their affiliates and shareholders.  She is rarely successful, but she harasses hundreds of companies a year, and that's what I learned by talking to dozens and dozens of attorneys across the country.

I have been portrayed in this case as a predator, as a ne'er-do-well, as a horrible, horrible investor, and I object to that.  But my experience is identical to that of hundreds

and hundreds of companies across the country that have been subjected to the sheer harassment of Mary Olsen.

Now, in Vermont I am a very good employer. I am the chairman of Champlain Cable Corporation of Colchester, Vermont, which I purchased 20 years ago, and I saved hundreds of jobs, and I reinvested all the profits for the last 20 years and took not a single salary, not a single penny in salary or any compensation of any kind, never took a dividend. I have contributed to dozens of charities in Vermont. I have funded a payroll in the tens of millions per year.

In addition to being chairman and majority shareholder of Champlain Cable, I am also chairman and majority shareholder of another Vermont company that I saved, and that is Vermont Aerospace Industries, and yet again that company would have been liquidated were it not for me and now has gainful employment, good jobs, good salaries, strong payroll serving the nation's defense industry.

I am offended by Ms. Olsen's narrative and tactics, and I join with dozens of other attorneys who have told me explicitly what she does to drill down into unrelated affiliates, unrelated entities, unrelated shareholders in order to pierce the corporate veil and prove a single-employer theory. It's wrong, and we must not allow this to happen in Vermont.

Mary comes from Alabama. Mr. Wolfson comes from Manhattan. I'm the only one here that actually is an employer

in Vermont, I'm the only one here that's a taxpayer in Vermont, I'm the only one here who has donated to dozens and dozens of charities in Vermont, and I'm the only one here that has saved businesses in Vermont.  But Ms. Olsen and Mr. Wolfson are portraying me as a predator, and that's the truth, and that needs to be said.

And the entities that she is suing right now have absolutely nothing to do with Koffee Kup Bakery.  Nothing.  And in fact, she is ignoring evidence before this court that ties the actual entity to the WARN Act issue, and that is an entity known as KUPCO, and she is not suing KUPCO.  She is suing the wrong entities.  Why?  Because it provides for greater harassment value.  And as was indicated to me in my conversation with dozens and dozens of lawyers, she doesn't care about who the actual entity is.  She wants to go after the deep-pocket entities, and she uses harassment to do that, and I'm offended by that fact.

Now, in the case of KUPCO, KUPCO signed the WARN Act letters.  KUPCO terminated the employees.  KUPCO had the board meetings.  KUPCO's directors hired the attorneys who dutifully researched the WARN Act issues.  KUPCO is the relevant entity. But Mary's not suing KUPCO.  I don't know why she's not suing KUPCO.  But she's suing unrelated parties.  AIAC has nothing to do with KUPCO and nothing to do with Koffee Kup Bakery and nothing to do with Superior Bakery and nothing to do with

Vermont Bakery.  Nothing.  No ownership at all.  But it's a convenient device, and --

THE COURT:  All right.  No, I hear -- I hear your argument, and I'd like to talk to you about the civil justice process, because you're right now on the verge of being in real trouble.

There's two different processes.  You start talking about what is the ultimate solution in your case, and that ordinarily is resolved by a court once all of the discovery has been completed.  The best way for a court to address the ultimate issues that you're talking about, whether one industry or another industry is responsible for the WARN Act alleged violations, comes at the very end after all sides have all of the information that they need to be able to address that particular question.  So when you start talking about, well, this is really KUPCO, I assume that at one particular point during this civil justice process you'll file a motion to dismiss or a motion to resolve the case in your favor based upon exactly what you are arguing.  That's fine.  But before you get to that process, you go through what is called discovery.

Now, discovery involves the open disclosure of all of the information from both sides, whether it's favorable or whether it's unfavorable, and the only way this process works is if people comply with the discovery process.  You have a

particular argument to make.  That's fine.  But they have the right to be able to question you about issues that they may want to pursue, and the only way this process works is if you, together with other witnesses, are open and honest and truthful and comply with the process, the judicial process, that is imposed in a civil justice proceeding.

Now, I -- I appreciate the fact that you really want to go right to the ultimate question.  That only happens after you go through discovery.  And if you don't go through discovery, you'll never get to that point because you'll be held in contempt.

Now, right now what we are dealing with is the discovery process, and if you choose not to participate in that process, you are then in contempt of the civil justice proceedings.  And if you are in contempt of the civil justice proceedings, then you're in real trouble.  And my -- my concern is that you are so angry about this process that you are not going to comply with the procedures that are established across this country in a civil proceeding.

So we are now not resolving the ultimate issue.  You may very well file motions in the future to do that.  All we are dealing with at this point is asking and answering questions which are central to the civil justice proceeding.

You are a 30(b)(6) witness.  You are testifying on behalf of your company.  They have a number of questions about the

company and related companies, and they have the absolute right to ask those questions, and you have the absolute obligation to answer those as truthfully as you can.  And my only concern is I hear you say, well, you don't want to answer these.  I mean, what are you hiding?

Go ahead.

MR. LEVIE:  Okay.  I appreciate what you've said, and I believe in this process, and it's because I believe in this process, I need to alert the Court about what this process has entailed.  I have been subjected, not today but in previous occasions, to hours and hours and hours of deposition questioning.  I have been asked the color of the furniture in one of our offices.  I have been asked for a ridiculous amount of time about the nature of the furniture.  I have been asked questions that are so irrelevant and so completely disingenuous that it got me wondering, maybe this is a methodology.  Maybe this is an abuse of not only my time but the Court.  Maybe this is an abuse of discovery.  And that's why I got on the line with dozens and dozens of law firms and lawyers specializing in WARN Act defense.

THE COURT:  All right.  Mr. Levie, I'm really concerned about how you're going to approach this deposition. I don't know what you've been asked in other circumstances.  I don't know what the lawyers have said.  I frankly don't know what kind of dispositive motions you're going to file arguing

exactly what you suggest you will argue.  All I know is this process only works if people answer questions in discovery.

MR. LEVIE:  I agree.

THE COURT:  You can object to those questions, but you answer them.  And the only way the civil justice process proceeds is if all sides are able to ask the questions that they want to ask, get the answers that they seek, and then can make a dispositive -- take a dispositive position in regard to what's going to happen in the litigation in the future.  And when you argue that this is totally unfair and that you are not going to -- or you suggest -- you don't say, but you suggest that you are not going to comply with these offensive questions in your responses, you are inviting a violation of this process, and that will not be tolerated.

So my -- my suggestion to you at this point -- you know, you've got a contempt motion pending.  My suggestion to you is stop evaluating what Ms. Olsen or any other lawyer is trying to do, you are being asked straightforward questions, that you just respond.  And unless you for some reason fear the response, just respond, and then we'll get through the deposition, and then you can file your dispositive motions if that's what you seek to do.  Okay?

You want to respond to that?

MR. LEVIE:  Yes, please.  The narrative that has been put forth is that I have been uncooperative, obviously.  I have

not.  I have been subjected to hours and hours of depositions --

THE COURT:  Okay.

MR. LEVIE:  -- already.  My counsel has supplied over a thousand pages of documents, wide-ranging discovery.  I missed a particular deposition, particular hearing or deposition, I forget which, because I had a prior situation.  I provided a colleague of mine --

THE COURT:  I appreciate that.  There's a clear dispute as to whether in fact you had a conflicting court hearing or not.

MR. LEVIE:  I did.

THE COURT:  I don't need -- I don't need to resolve that.  All -- all I want to know is whether when you're asked a question, will you respond appropriately and without any effort to subvert the process?

MR. LEVIE:  I shall.  But what is the situation in which Mary Olsen again asks me the color of the furniture in one of my offices or asks me other completely irrelevant questions that have nothing to do with Koffee Kup Bakery; Superior Baking -- Superior Bakery, Inc.; Vermont Baking Corporation; or KUPCO?  What happens then?

THE COURT:  You know, I would give you some advice at this particular point in light of the current situation of the contempt petition.  I'd answer it.  I would answer every

question.  I would just answer them.  If you -- if you suggest that they are irrelevant, then ultimately, of course, that means they are irrelevant to the ultimate resolution of the case, so what is the problem with answering a question which you feel to be irrelevant?  My -- my real concern is that you are sitting there evaluating a question as to whether it's relevant or not relevant or what she's trying to do and then you are using that as an excuse to disrupt the process.  That only hurts you.  At this point that hurts you, and, frankly, the best advice you could be given by anyone would be answer the questions.  Just answer the questions.  If they're irrelevant, then ultimately they will not -- the answers will not hurt you.  So just answer the questions and proceed along with the deposition.

I'm really concerned, really concerned, when I see a witness in a deposition try to evaluate questions that are being asked in particular from the perspective of "I'm not going to answer that because I don't believe what you're doing" or "I don't like what you're doing."  That is not appropriate.  You just answer the question, and then ultimately you will file a motion, I assume, to resolve this particular case favorable to you and argue your points of law.  That's where your assessments come in.  It's not in response to questions during the course of a deposition.

MR. LEVIE:  I understand that, and I'm sympathetic

with that.  There is a presumption embedded in many of these questions --

THE COURT:  Presumption's irrelevant.  Why somebody is asking you the question is irrelevant.  Irrelevant.  Right?  You -- you keep saying prejudice.  That's irrelevant at this particular point.  These are questions you have to answer.  Just answer them and stop evaluating what -- you know, what the lawyer is thinking or what other lawyers are thinking about their perspective.  And then ultimately you will have at the dispositive portion of this case the opportunity to say whatever you want to say.  But in this particular question -- or this particular series of questions, just answer them.  Their motivation, their reasoning, their logic, their whatever is totally irrelevant to a witness.

MR. LEVIE:  Are we not given license to harassment by giving that broad instruction?

THE COURT:  No.  We are not.  We are opening up the process for discovery so that the witness is not being invited to decide what questions to answer and what questions not to answer.  That is their choice.  Frankly, your lawyers have the same opportunity to question other witnesses in depositions, and those other witnesses cannot evaluate whether or not they decide to answer the question based upon their feelings about the questioner.

MR. LEVIE:  I also have concerns, your Honor, because

there is someone in this courtroom that is conflicted.

THE COURT:  There's someone in the courtroom who's conflicted?

MR. LEVIE:  Yes.

THE COURT:  Then file a motion.

MR. LEVIE:  Okay.  Mr. Wolfson is partner of a firm --

THE COURT:  You know, I don't want to -- I don't want to address the motions that you want to file in the future.  If you want to file a motion to try to recuse someone, you file a motion.  That has nothing to do with the deposition.  We now are here for a deposition, and, Mr. Levie, all I want to know is:  Are you going to answer the questions or not?

MR. LEVIE:  I am, your Honor.  But I'm concerned that a conflicted counsel is present during these depositions, a severely conflicted counsel.

THE COURT:  Okay.  That has not been addressed in the past.  I'm not going to address it now.  You had -- would have had an opportunity to try to recuse Mr. Wolfson way back.  You haven't done that.  He is counsel.  He gets to question you.

MR. LEVIE:  Pardon me, your Honor.  There is a motion pending in state court that seeks to disqualify Mr. Wolfson and his firm from the case related to Koffee Kup Bakery, and yet he shows up in this hearing.

THE COURT:  Mr. Levie -- Mr. Levie, you're in federal court.  That motion was never filed in federal court.  Mr.

JA-244

2:21-cv-00120-wks    Document 191    Filed 03/07/23    Page 16 of 17          16

Wolfson is counsel of record.  He gets to question you.  You didn't move to recuse him.  He gets to question you.  That's it.

So my question is:  Are you going to answer the questions that are provided in discovery?  Because if not, then we go to a contempt hearing, and then we talk about the remedies.  If you are found in contempt of a court order, then we talk about the remedies of contempt.  The remedies of contempt in federal court are just extraordinarily serious, so I'm just telling you and in fact I'm directing you:  Answer the questions.

MR. LEVIE:  I shall, your Honor.

THE COURT:  Okay.

MR. LEVIE:  I hope --

THE COURT:  Good.

MR. LEVIE:  -- that the questions will be commercially and legally reasonable.

THE COURT:  That's fine.  But it's not for you to decide.

MR. LEVIE:  I understand, your Honor.

THE COURT:  Okay.

MR. WOLFSON:  Your Honor, Mr. Wolfson.

I just want to make one point.

THE COURT:  Yes.

MR. WOLFSON:  Mr. Levie and his companies did make a motion to disqualify us before Judge Hoar, and Judge Hoar

resoundingly rejected that, denied the motion, said there was no disqualification, there was no conflict.

THE COURT:  Okay.  That's fine.

MR. LEVIE:  I'm not aware of that.

Was -- was there also a reduction in your fees?

THE COURT:  Excuse me, Mr. Levie.  That's it.  I think we've addressed the question about whether you're going to answer the questions, because if you're not, the remedies are just severe.

MR. LEVIE:  Understood.

THE COURT:  So just answer the questions.  Don't make any value judgments.  And I'll be available for the day.

MS. OLSEN:  Thank you, your Honor.

MR. LEVIE:  Thank you, your Honor.

(Court was in recess at 10:23 AM.)


C E R T I F I C A T I O N

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


March 6, 2023

Johanna Masse
Digitally signed by Johanna Masse
Date: 2023.03.06 23:27:13 -05'00'

Johanna Massé, RMR, CRR

**Mary Olsen**

| | |
|---|---|
| **From:** | Terry Kirwan <tkirwan@kirwanlawpc.com> |
| **Sent:** | Wednesday, March 1, 2023 9:43 AM |
| **To:** | dlb@mc-fitz.com; 'tpa@clearyshahi.com'; 'David Dunn'; icarleton_sheeheyvt.com; 'Johnathan Miller'; Mary Olsen; Wolfson, Peter D.; Vance McCrary; Ruegger, Arthur H. |
| **Subject:** | 2:21-cv-00120-wks Chaney v. Vermont Bread Company et al |
| **Attachments:** | S-1.pdf; S-10.pdf; S-2.pdf; S-3.pdf; S-4.pdf; S-5.pdf; S-6.pdf; S-7.pdf; S-8.pdf; S-9.pdf; Supplemental Reponses to Request for Documents-030123.pdf |

Good morning!

Although I am still working on responses, attached is the document entitled "Defendant's Supplemental Responses to Request for Documents," together with corresponding exhibits. I will supply the missing items as soon as possible.

Thank you!

Terry

Terry J. Kirwan, Jr.
**KIRWAN LAW**
2401 Burnet Avenue
Syracuse, New York 13206
Direct: 315.452.2443
Cell:   315.439.3898
Fax:   315.671.1550
Email: tkirwan@kirwanlawpc.com
Website: www.kirwanlawnewyork.com

WE HAVE MOVED OUR OFFICE!
SEE OUR NEW ADDRESS ABOVE!

This electronic mail transmission is intended only for the use of the individual or entity to whom it is addressed and may contain confidential information belonging to the sender which is protected by the attorney-client privilege or attorney work product. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this information is strictly prohibited. If you have received this transmission in error, please notify the sender immediately by e-mail and delete the original message with attachments, if any.

Case: 25-3017, 06/30/2026, DktEntry: 72.1, Page 70 of 224

JA-246

**From:** Terry Kirwan
**Sent:** Friday, February 24, 2023 11:55 AM
**To:** dlb@mc-fitz.com; 'tpa@clearyshahi.com' <tpa@clearyshahi.com>; 'David Dunn' <ddunn@pdsclaw.com>; icarleton_sheeheyvt.com <icarleton@sheeheyvt.com>; 'Johnathan Miller' <jon@lankmill.com>; Mary Olsen <molsen@thegardnerfirm.com>; Wolfson, Peter D. <peter.wolfson@dentons.com>; Vance McCrary <vmccrary@thegardnerfirm.com>; Ruegger, Arthur H. <arthur.ruegger@dentons.com>
**Subject:** 2:21-cv-00120-wks Chaney v. Vermont Bread Company et al

Good morning!

Attached are KKBIC's & AIAC's Responses, with exhibits, to the outstanding document demands, which are also attached.

Thank you!

Terry

Terry J. Kirwan, Jr.
**KIRWAN LAW**
2401 Burnet Avenue
Syracuse, New York 13206
Direct: 315.452.2443
Cell:   315.439.3898
Fax:   315.671.1550
Email: tkirwan@kirwanlawpc.com
Website: www.kirwanlawnewyork.com

WE HAVE MOVED OUR OFFICE!
SEE OUR NEW ADDRESS ABOVE!

This electronic mail transmission is intended only for the use of the individual or entity to whom it is addressed and may contain confidential information belonging to the sender which is protected by the attorney-client privilege or attorney work product.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this information is strictly prohibited.  If you have received this transmission in error, please notify the sender immediately by e-mail and delete the original message with attachments, if any.

Case: 25-3017, 06/30/2026, DktEntry: 72.1, Page 71 of 224

JA-247

JA-248

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

MATTHEW CHANEY, NADINE )
MILLER, AND ARTHUR GUSTAFSON, )
ON BEHALF OF THEMSELVES AND )
ALL OTHERS SIMILARLY SITUATED, )
          Plaintiffs, )
  )
          v. )
  )
VERMONT BREAD COMPANY, )
SUPERIOR BAKERY, INC., KOFFEE )
KUP BAKERY, INC., KOFFEE KUP )
DISTRIBUTION, LLC, KK BAKERY )
INVESTMENT COMPANY LLC, KK )
BAKERY HOLDING ACQUISITION )
COMPANY, AND AMERICAN )
INDUSTRIAL ACQUISITION )
CORPORATION, )
          Defendants. )
  )
_____ )   Docket No. 2:21-cv-120-wks
  )
LINDA JOY SULLIVAN, IN HER )
CAPACITY AS THE DISSOLUTION )
RECEIVER FOR KOFFEE KUP )
BAKERY, INC., VERMONT BREAD )
COMPANY, INC., AND SUPERIOR )
BAKERY, INC., )
          Intervenor- )
          Defendant- )
          Crossclaimant, )
  )
          v. )
  )
KK BAKERY INVESTMENT )
COMPANY, LLC, KK BAKERY )
HOLDING ACQUISITION COMPANY, )
AND AMERICAN INDUSTRIAL )
ACQUISITION CORPORATION, )
  )
          Crossclaim )
          Defendants. )

## DEFENDANTS, KK BAKERY INVESTMENT COMPANY LLC'S & AMERICAN INDUSTRIAL ACQUISITION CORPORATION'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REQUEST FOR DOCUMENTS

Defendants, KK Bakery Investment Company LLC ("KKBIC") & American Industrial Acquisition Corporation ("AIAC"), by and through counsel, pursuant to Rules 26 & 34 of the Federal Rules of Civil Procedure, submit the following *Supplemental Responses to Plaintiffs' Request for Production of Documents* ("Responses") in response to the Plaintiffs' outstanding demands as noted herein ("Demands").

### GENERAL OBJECTIONS

1.    KKBIC & AIAC object to any request to the extent that it seeks information and/or documents subject to the attorney-client privilege or work-product privilege, which were prepared in anticipation of litigation or for trial, or which are otherwise immune from discovery.

2.    KKBIC & AIAC object to any request on the ground that it is overly broad, vague in terms of the requested documents, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

3.    KKBIC & AIAC responses are based on the best information presently available, and each reserves the right to amend or to supplement this response if they obtain other or additional information.

4.    KKBIC & AIAC object to any request that would require the production of information and/or documents that are beyond the scope of discovery permissible under the applicable Court Rules.

2

5.    KKBIC & AIAC each reserves all objections to the relevancy and materiality of all requests.

6.    KKBIC & AIAC object to any request to the extent that it seeks information and/or documents that are not in their possession, custody or control.

7.    In all instances where KKBIC & AIAC is continuing to search for and review documents, each reserves the right to object on privilege or other grounds.

8.    KKBIC & AIAC object to the extent that any request is vague and misleading and otherwise does not identify with sufficient particularity or specificity the information and/or documents being requested.

9.    KKBIC & AIAC object to the extent that any request does not seek information and/or documents with reference to a specific time, and therefore is unduly burdensome and not likely to lead to the production of relevant evidence.

10.    KKBIC & AIAC object to the extent any request calls for the production of documents maintained a named party above to which KKBIC & AIAC has not been given access.

11.    KKBIC & AIAC object to the extent any request calls for the creation of documents, such as "lists", which do not presently exist.

12.    KKBIC & AIAC object to the extent any request calls for the production of confidential, proprietary, or other sensitive information and/or documents.

13.    KKBIC & AIAC object to the extent any request does not provide definitions for the terms contained therein, thereby rendering the requests vague and misleading.

14.    KKBIC & AIAC object to the extent any request calls for a legal

3

conclusion or opinion, which the answering party is not qualified to give.

15.     KKBIC & AIAC object to the extent any request, or the Definitions provided in the request by Plaintiffs contains inaccurate factual assertions and/or opinions.

## DEMANDS & RESPONSES

The outstanding Demands come from communications between the parties' attorneys following the most recent Rule 30(b)(6) deposition on November 11, 2022. The Demands are attached to Plaintiffs' Motion for Sanctions at Doc. No. 158-2 (page 32 of 39) and are provided herein together with KKBIC'S & AIAC'S Responses, as follows:

i.    All documents/communications relating to/reflecting AMTC's involvement and/or AMTC payments related in any way to Koffee Kup/AIAC/KKBIC/Kup Co, including without limitation the securities purchase agreement involving KKBIC and KUP Co., Inc.; the Dorset Partners invoice (KKBIC 14171-72) and any attorneys' fees/expenses;

**RESPONSE: THE DOCUMENTS PROVIDED IN RESPONSE TO THIS DEMAND ARE CONFIDENTIAL AND, AS SUCH, ARE SUBJECT TO THE TERMS AND CONDITIONS SET FORTH IN THE "STIPULATED CONFIDENTIALITY AND PROTECTIVE ORDER," EXECUTED BY HON. WILLIAM K. SESSIONS, III ON MAY 2, 2022, AS DOCUMENT 81.  FOR DEFENDANTS' RESPONSE, SEE ATTACHED EXHIBIT "S-1."**

4

ii.   All documents/communications relating to/reflecting any loan and/or other agreement between AMTC and any other entity concerning the funds AMTC paid relating in any way to Koffee Kup/AIAC/KKBIC/Kup Co;

**RESPONSE: THE DOCUMENTS PROVIDED IN RESPONSE TO THIS DEMAND ARE CONFIDENTIAL AND, AS SUCH, ARE SUBJECT TO THE TERMS AND CONDITIONS SET FORTH IN THE "STIPULATED CONFIDENTIALITY AND PROTECTIVE ORDER," EXECUTED BY HON. WILLIAM K. SESSIONS, III ON MAY 2, 2022, AS DOCUMENT 81.  FOR DEFENDANTS' RESPONSE, SEE ATTACHED EXHIBIT "S-1."**

iii.   All documents/communications relating to/reflecting the Dorset Partners' Invoice (KKBIC 14171-72), including the payment thereof (in unredacted form(s));

**RESPONSE: SEE ATTACHED EXHIBIT "S-2."**

All documents/communications relating to/reflecting agreements/retainers/payments made with/to any of the following in relation to Koffee Kup/AIAC/KKBIC/Kup Co related involvement (whether pre or post acquisition): **(NOTE: this Demand & Response was broken down by KKBIC & AIAC identifying each named person or entity individually with corresponding Response from "a-w").  In addition to the specific responses below and attached, see also, where appropriate, ATTACHED EXHIBIT "2."**

  a.  Jeff Sands; Dorset Partners, LLC:  **Previously provided as Exhibit "A."**

  b.  Mark Gauthier: **Previously provided as Exhibit "B."**

  c.  David Cryer: **Previously provided as Exhibit "C."**

5

d.  John Tomlinson: There was no agreement or payment.

e.  Rhonda Halladay: There was no agreement or payment.

f.  Brian Shiau: There was no agreement or payment.

g.  Lyle Deitch: There was no agreement or payment.

h.  Bill Reichert: There was no agreement or payment.

i.  Bob Auger: There was no agreement or payment.

j.  Dave Sands: There was no agreement or payment.

k.  Deborah Cannavino: **SEE ATTACHED EXHIBIT "S-3"**

l.  Marc Mandelman: **SEE ATTACHED EXHIBIT "S-3."**

m. Epstein Becker Green: **SEE ATTACHED EXHIBIT "S-3."**

n.  John Cannavino: **SEE ATTACHED EXHIBIT "S-4."**

o.  Cummings & Lockwood LLC: **SEE ATTACHED EXHIBIT S-4."**

p.  Joseph Selinger: **SEE ATTACHED EXHIBIT "S-5."**

q.  TCORS: **SEE ATTACHED EXHIBIT "S-5."**

r.  Alex Edelman: **SEE ATTACHED EXHIBIT "S-6."**

s.  Primmer Piper Eggleston & Cramer PC: **SEE ATTACHED EXHIBIT "S-6."**

t.  Erin Miller Heins; Langrock Sperry & Wool, LLP: **SEE ATTACHED EXHIBIT "S-7."**

u.  Dinse: **SEE ATTACHED EXHIBIT "S-8."**

v.  Daniel L. Burchard.  **SEE ATTACHED EXHIBIT "S-9."**

w.  Terry Kirwan.  **SEE ATTACHED EXHIBIT "S-10."**

6

iv.    All documents relating to/reflecting communications about the WARN notices including, without limitation communications with attorneys; Koffee Kup HR; mailing house; state/governmental agencies;

**RESPONSE: MANY OF THESE DEMANDED COMMUNICATIONS ARE SUBJECT TO ATTORNEY-CLIENT PRIVILEGE &/OR WORK PRODUCT AND ARE OR WILL BE LISTED ON THE PRIVILEGE LOG BEING CREATED BY DEFENDANTS.  IN ADDITION TO THE PREVIOUSLY PROVIDED EXHIBIT "D," SEE ATTACHED EXHIBIT "S-11."**

v.    Documents sufficient to show AIAC's assets during 2021 to present.

**RESPONSE:  THE DOCUMENTS PROVIDED IN RESPONSE TO THIS DEMAND ARE CONFIDENTIAL AND, AS SUCH, ARE SUBJECT TO THE TERMS AND CONDITIONS SET FORTH IN THE "STIPULATED CONFIDENTIALITY AND PROTECTIVE ORDER," EXECUTED BY HON. WILLIAM K. SESSIONS, III ON MAY 2, 2022, AS DOCUMENT 81.  FOR DEFENDANTS' RESPONSE, SEE ATTACHED EXHIBIT "S-12."  AT THE TIME OF THIS WRITING, EXHIBIT "S-12" IS BEING COMPILED AND WILL BE PROVIDED TO PLAINTIFFS UPON COMPLETION.**

vi.    All documents provided to/received from any employees/executives of any of the Koffee Kup entities (including without limitation JF Morin; Mark Coles; Stephanie Hanker; Susan Leonard and Ben Richards) from January 1, 2021 to present.

**RESPONSE: MANY OF THESE DEMANDED COMMUNICATIONS ARE SUBJECT TO ATTORNEY-CLIENT PRIVILEGE &/OR WORK PRODUCT AND ARE OR WILL BE LISTED ON THE PRIVILEGE LOG BEING CREATED BY DEFENDANTS.  SUCH PRIVILEGE LOG WILL BE PROVIDED TO PLAINTIFFS UPON COMPLETION.**

vii.    All documents/communications relating to/reflecting Levie's involvement, payment and/or direction/authorization of payment(s) related in any way to Koffee Kup/AIAC/KKBIC/Kup Co., including without limitation the securities purchase agreement involving KKBIC and Kup Co., Inc., the Dorset Partners invoice (KKBIC 14172-72) and any attorneys' fees/expenses, through present.

**RESPONSE: THE DOCUMENTS PROVIDED IN RESPONSE TO THIS DEMAND ARE CONFIDENTIAL AND, AS SUCH, ARE SUBJECT TO THE TERMS AND CONDITIONS SET FORTH IN THE "STIPULATED CONFIDENTIALITY AND PROTECTIVE ORDER," EXECUTED BY HON. WILLIAM K. SESSIONS, III ON MAY 2, 2022, AS DOCUMENT 81.  FOR DEFENDANTS' RESPONSE, SEE ATTACHED EXHIBIT "S-1" & "S-2."**

KKBIC & AIAC reserve the right to supplement, amend or modify these Responses up to the time of trial.

8

Dated: March 1, 2023                    **KIRWAN LAW**

*Counsel for American Industrial*
*Acquisition Corporation & KK Bakery*
*Investment Company LLC*


By: /s/ Terry J. Kirwan, Jr.
Terry J. Kirwan, Jr.
Bar Roll #501821
2401 Burnet Avenue
Syracuse, New York 13206
(315) 452-2443

tkirwan@kirwanlawpc.com


### *CERTIFICATE OF SERVICE*

The undersigned certifies that on March 1, 2023, I served the foregoing *Supplemental Responses to Plaintiffs' Request for Production of Documents* on Plaintiffs' Attorneys, by email.

/s/ Terry J. Kirwan, Jr.

9

JA-257

S-1

JA-260

JA-266

JA-268

S-2

S-3

EPSTEIN
BECKER
GREEN

Attorneys at Law

Deborah Cannavino
t 203.326.7437
f 203.326.7580
DCannavino@ebglaw.com

April 23, 2021

VIA ELECTRONIC MAIL

Kup Co.
59 Rathe Rd.
Colchester, VT 05446



Mr. Leonard Levie, *CHAIRMAN, American Industrial Acquisition Corp.*
1 Harbor Point Rd.
Suite 600
Stamford, CT 06902

Mr. Jeff Sands
397 Fern Hill, # 201
Dorset, VT 05251

Re: Engagement Agreement – Kup Co.

Dear Messrs.:

Epstein Becker & Green, P.C. (the "Firm" or "EBG") is very pleased to have the opportunity to serve as legal counsel for Kup Co., including its subsidiaries, Koffee Kup Bakery (same address as Kup Co.), VBC Inc., 80 Cotton Mill Hill, Brattleboro, VT 05301, and Superior Bakery Inc., 72 Main St., North Grovenordale, CT 06255 (collectively referred to herein as "Kup Co.") and jointly with both of you regarding your personal interests as members of the Kup Co.'s board of directors in connection with Kup Co.'s significant unforeseen financial issues. The purpose of this letter is to provide a clear understanding of the terms and conditions upon which the Firm will be providing legal services to all of you. It is important to our professional relationship that we all understand the scope of our representation and our agreement relating to the fees to be charged for professional services.

**Services to Be Provided.** You have asked the Firm to represent all of you in connection with providing labor and employment advice resulting from the significant financial issues facing Kup Co. Because this agreement involves multiple individuals, in addition to the terms described in this letter, you also agree to the various additional terms, conditions and disclosures regarding joint representation of all of you as set forth on Exhibit 1 hereto, which modify certain terms of this

1

JA-273

Mr. Leonard Levie
Mr. Jeff Sands
Kup Co.
April 23, 2021
Page 2

letter. While this letter is intended to deal with the specific legal services to be provided to all of you, these terms and conditions will also apply to any additional legal services that we may agree to provide to the you that are outside the initial scope of our representation.

It is agreed that we are being retained as counsel solely by Kup Co. and both of you individually. No other person or entity which now is, or may become, an employee, officer, director, affiliate, subsidiary, or parent of you, other than as set forth herein, will be considered to be represented by the Firm for any purpose unless this retainer agreement is expressly amended in writing, signed by the both of you and the Firm, to reflect the inclusion of any additional person or entity.

The Firm recognizes its professional obligation to refrain from disclosing confidential client information or using it to the disadvantage of all of you or for the benefit of any other present or prospective client (which may include any affiliate, subsidiary or parent of the any of you), unless you give informed consent. Provided the Firm observes this professional obligation, each of you agree that neither of you will for yourself or any other party assert that the Firm's possession of such information, even though such information may relate to a matter as to which the Firm is representing another client, is a basis for disqualifying the Firm from representing that other client of the Firm.

**Billing Practices, Manner of Payment and Other Matters.** With respect to our fees, billing statements are sent monthly. Our statements include a detailed description of work performed, the amount of time expended, and disbursements incurred on incurred on the Client's behalf. I will be primarily responsible for handling the Matter, and my hourly rate is $570, which I have agreed to reduce to $500 an hour. Marc Mandelman will be assisting in this representations and his current hourly rate is $725 an hour. Additionally, other attorneys who may assist in this matter are generally billed at hourly rates ranging from $200 to $800. The hourly billing rates may increase from time to time.

The Firm will also bill all of you for all disbursements made on its behalf at an amount that best approximates the Firm's total cost. Such disbursements may include long distance telephone charges, fax, printing and photocopy charges, messenger service charges, postage, express mail, lien, judgment and title searches, corporate registration/filing fees, surveys, certified and registered mail fees, delivery services, court and other government filing fees, travel expenses, and LEXIS and WESTLAW research charges. These charges will be consistent with such charges in the legal community.

Payment is expected within thirty (30) days. If both of you request or require any changes to the format of our billings, or if both of you have concerns about the accuracy or amount of any billings to both of you, both of you agree to notify us in writing within thirty (30) days of receipt of the billing to express any concern, request, requirement or objection.

2

JA-274

Mr. Leonard Levie
Mr. Jeff Sands
Kup Co.
April 23, 2021
Page 3

All of you are jointly and severally liable for the entire amount of the fees, regardless of any division between yourselves. Accordingly, should an action need be instituted to collect outstanding fees, the Firm can choose to pursue each of you or just one of you for all outstanding fees and expenses.

It will be our mutual responsibility to cooperate fully in meeting all of your expectations for work to be performed. To that end, all of you agree to provide us with all relevant information requested by us, known or available to you, which may aid us in representing all of you in this engagement.

The Firm recognizes that working with an attorney represents a significant investment. If at any time during this relationship both of you become dissatisfied with our work, I urge both of you to contact me to discuss a mutually satisfactory resolution of your concerns. In the unlikely event that a fee dispute arises in connection with this engagement, it is our desire to resolve it through amicable discussion.

**Termination of the Relationship.** You may terminate this engagement for any reason upon written notice to the Firm. Immediately after receiving such notice, the Firm will cease to render additional services and will cooperate with you in facilitating the orderly transfer of files and records to both of you or your new attorneys, subject to, if appropriate, resolution of any outstanding financial issues.

The Firm may withdraw from representation for good cause or with your consent. If both of you fail to meet your obligations with respect to this engagement and continue to fail to do so after receiving written notice of that failure from the Firm, the Firm shall have the right to end the relationship and this letter agreement. Termination of our engagement does not relieve the both of you of the obligation to pay all fees due for services rendered and disbursements incurred before termination and during an orderly transition of legal services.

Upon termination of our engagement, any and all documents that the both of you delivered to the Firm during the course of our representation will remain your property and will be either retained, destroyed or returned promptly upon your request. Any and all documents generated by our Firm during the course of our representation will remain the property of the Firm (e.g., our drafts, internal administrative documents, memoranda and our Firm's other work product). We will provide the both of you with copies of documents in our files. If you do not request the return of your property, we reserve the right to destroy within a reasonable time after the termination of the engagement and consistent with Firm policy, any and all laws, orders, and ethics rules any items described in this paragraph that are retained by us.

You also agree to waive the conflicts described in Exhibit 1 hereto relating to our joint representation of both of you on this matter.

\*    \*    \*    \*    \*

3

Mr. Leonard Levie
Mr. Jeff Sands
Kup Co.
April 23, 2021
Page 4

This letter constitutes the understanding entered into by all of you and the Firm with respect to legal representation and supersedes all prior understandings, written or oral. If you find this agreement to be acceptable, please sign the enclosed original of this agreement and return it to me along with the retainer check in the amount of $10,000.00 at your earliest convenience. Please contact me if you need any clarification of the foregoing provisions.

We appreciate the confidence you have shown in us by engaging us to represent the both of you.

Very truly yours,

Deborah DeHart Cannavino

Accepted and Agreed as to the Terms of Representation in Letter, including the Waiver of Conflicts of Interest and Additional Terms Disclosures and as to Joint Representation in Exhibit 1:

American Industrial Acquisition Corp

By:

Leonard Levie

Jeff Sands

By:

Kup Co.
L.M. LEVIE, DIRECTOR

4

Mr. Leonard Levie
Mr. Jeff Sands
Kup Co.
April 23, 2021
Page 5

### Exhibit 1

Additional Terms and Conditions of Joint Representation

Epstein Becker & Green ("EBG") has been asked to represent the interests of one corporate entity and two individuals (collectively, the "Clients") on this matter, all of whom appear (at this time) to have aligned interests.

The Clients jointly desire that EBG represent the Clients in accomplishing their joint desire and common purpose. To do so, we must disclose to you certain facts concerning the matter and the risks of joint representation, and obtain your informed written consent.

It is our understanding, confirmed by your signatures of the engagement letter to which this Exhibit is attached, that Clients wish to jointly obtain legal advice through joint representation rather than by separate counsel. You also acknowledge that in this letter you are being advised by EBG that (i) each Client could have its own counsel represent them in every aspect of this matter, and that (ii) each Client will have the opportunity to have any issue or document reviewed by counsel representing only such client respectively, and that EBG has told you that such review is advisable. Although there are benefits to being jointly represented, certain risks may also exist or develop. You should carefully consider potential risks before you agree to our joint representation.

I.    Conflicts of Interest in Joint Representation

When one law firm represents separate parties in the same matter, a possibility always exists that the interest of one do now, or could later, conflict with those of the other. The applicable Rules of Professional Conduct for Connecticut allow for joint representations to accomplish such common interests and purposes. (See RPC 1.7.)

Our initial investigation disclosed no facts demonstrating that Clients have different legal interests here. Accordingly, based upon our initial investigation, we do not believe there presently exists any conflict of interest which would preclude us from undertaking joint representation of Clients at this time.

We do not mean to suggest by the foregoing that we have any reason to believe a conflict will arise in this matter. However, it is not possible to describe all the ways in which conflicts may arise, and you should therefore carefully consider the risk of conflicts before agreeing to joint representation in this case.

II.    The Attorney-Client Privilege in Joint Representation

An important aspect of joint representation that you should consider is the attorney-client privilege. Communications between an attorney and client are confidential and not subject to disclosure to

5

JA-277

Mr. Leonard Levie
Mr. Jeff Sands
Kup Co.
April 23, 2021
Page 6

third parties. However, when an attorney represents multiple parties in the same matter, there is no privilege of confidentiality between those parties. Thus, for example, any information we receive from either of you concerning the transaction, any document or related items cannot be treated as confidential and privileged from disclosure to either Client, although it will be protected from disclosure to any third party. We cannot withhold information from one Client which we receive from another.

III.     Representation in the Event of a Conflict of Interest

Depending on the circumstances, a conflict which arises in the future may require us to cease representation of all the parties in conflict, or may mean that we may withdraw from representing one such party and continue representing other(s). Any party we could no longer represent would be required to engage new counsel.

If at any time our law firm determines that an actual conflict of interest precludes continued joint representation, we will promptly advise you of that conclusion. Similarly, if at any time you believe your interests would be better served by separate representation (in other words, that you have your own separate attorney), or you simply desire separate representation, you will promptly advise us.

IV.     Possession of the File

During the course of this matter, we will be maintaining a file that will contain original correspondence, and other documentation. In the event we are required to withdraw from representing all parties, we will retain the original file until we receive instructions from all parties to transmit the file somewhere else. At your request, we will provide you or your new counsel with a copy of the file. You agree to reimburse us for the cost of copying the file for you and of retaining a copy of the file for our records.

V.     Carefully Consider Joint Representation

We want to be certain that you are fully informed about these important issues concerning joint legal representation of two clients, and that you are comfortable proceeding with our joint representation of you. Please review this Exhibit (and the engagement letter) carefully and do not hesitate to speak to us about any of the issues we are raising. You should also discuss this Exhibit (and the engagement letter) and the issue of joint representation with your personal attorney.

### Rider to Legal Retainer

1. All fee disputes shall be resolved by discussion then fee arbitration.
2. The Law Firm's hours spent in explaining, analyzing, negotiating, or arbitrating the fees and expenses shall not be billable hours.
3. Lawyers shall not travel by train or air and shall not book hotels without client permission in advance.
4. Lawyers are encouraged to use phone, Skype or Zoom for meetings, depositions, and negotiations, instead of traveling to the meeting.
5. Hours spent en route to a meeting are not billable unless the Lawyer is actually working on the specific case during such travel.
6. Lawyers shall provide best estimate of the cost of phases of the case upon request by Client.
7. Lawyers shall provide fee and expenses invoice summary. Upon Client request, Lawyers shall provide detailed time sheets.
8. Staffing: one lawyer shall be used on each assignment unless specified.

Client Agreement and date:

By: _L.M. LEVIE, CHAIRMAN, American Industrial Acquisition Corp._

Law Firm Agreement and date:

Mr. Leonard Levie
Mr. Jeff Sands
Kup Co.
April 23, 2021
Page 4

This letter constitutes the understanding entered into by all of you and the Firm with respect to legal representation and supersedes all prior understandings, written or oral. If you find this agreement to be acceptable, please sign the enclosed original of this agreement and return it to me along with the retainer check in the amount of $10,000.00 at your earliest convenience. Please contact me if you need any clarification of the foregoing provisions.

We appreciate the confidence you have shown in us by engaging us to represent the both of you.

Very truly yours,

Deborah DeHart Cannavino

Accepted and Agreed as to the Terms of Representation in Letter, including the Waiver of Conflicts of Interest and Additional Terms Disclosures and as to Joint Representation in Exhibit 1:

Leonard Levie

Jeff Sands

Kup Co.

4

# S-4

**Terry Kirwan**

| | |
|---|---|
| From: | Cannavino, John W. <jcannavino@cl-law.com> |
| Sent: | Friday, February 24, 2023 12:36 PM |
| To: | Terry Kirwan; Jeff Sands; Joe Selinger |
| Cc: | Eric Swider; Leonard Levie |
| Subject: | RE: Retainer Agreements - Document Discovery KKB |

As we had a long term relationship with Leonard, we did no have a separate engagement letter for the Koffee Kup matter. All of my time was billed at the discounted rate of $500, except that my rate in the dissolution action was reduced to $375 per hour, to match Shap Smith's rate.

**John W. Cannavino, Esq.**
Principal, Litigation Group
Phone: 203.351.4447 | Cell: 203.561.6525
**CUMMINGS & LOCKWOOD** LLC

From: Terry Kirwan <tkirwan@kirwanlawpc.com>
Sent: Friday, February 24, 2023 12:25 PM
To: Jeff Sands <jeff@dorsetpartners.com>; Cannavino, John W. <jcannavino@cl-law.com>; Joe Selinger <jjselinger@tcors.com>
Cc: Eric Swider <es@renatusadvisors.com>; Leonard Levie <llevie@aiac.com>
Subject: RE: Retainer Agreements - Document Discovery KKB

**This message originated from outside your organization**

Thank you!

Terry

Terry J. Kirwan, Jr.
**KIRWAN LAW**
2401 Burnet Avenue
Syracuse, New York 13206
Direct: 315.452.2443
Cell:  315.439.3898
Fax:  315.671.1550
Email: tkirwan@kirwanlawpc.com
Website: www.kirwanlawnewyork.com

WE HAVE MOVED OUR OFFICE!
SEE OUR NEW ADDRESS ABOVE!

1



**Terry Kirwan**

| | |
|---|---|
| From: | Joseph J. Selinger <JJSelinger@tcors.com> |
| Sent: | Friday, February 24, 2023 1:22 PM |
| To: | Cannavino, John W.; Terry Kirwan; Jeff Sands |
| Cc: | Eric Swider; Leonard Levie |
| Subject: | RE: Retainer Agreements - Document Discovery KKB |

Similarly, because my firm's long prior relationship, we did not use an engagement letter. My time on the transaction and aftermath was billed at $395 an hour, my partner, Kristin Wainright, at $300 an hour, and paralegals between $60 and $25 an hour.

Joe Selinger

S-6



PRIMMER PIPER EGGLESTON & CRAMER PC

ALEXANDRA E. EDELMAN
ADMITTED IN VT, NY, NJ
*aedelman@primmer.com*

TEL: (802) 864-0880
FAX: (802) 864-0328

30 MAIN STREET, SUITE 500 | P.O. BOX 1489 | BURLINGTON, VT 05401

May 5, 2021

**VIA E-MAIL** - leonardlev@aol.com

KK Bakery Investment Company, LLC
c/o Leonard M. Levie
250 Park Avenue
New York, NY 10177

      RE:    Engagement of Primmer Piper Eggleston & Cramer PC

Dear Mr. Levie:

Thank you for retaining Primmer Piper Eggleston & Cramer PC. Please review this letter carefully, and advise us if there is anything you wish to have clarified or with which you do not agree.

      *1.*    *Scope of Representation.* Our present understanding of the scope of work to be performed is as follows: KK Bakery Investment Company, LLC is retaining us to represent Kup Co. and its wholly-owned subsidiaries, Koffee Kup Bakery, Inc., VBC, Inc. and Superior Bakery, Inc., in connection with an action filed by KeyBank, N.A. in Vermont Superior Court, Chittenden Unit, for the appointment of a receiver and to assist in procuring payment of wages owed to employees of the above-mentioned entities.

Please advise us if you would like to change the scope of our work. Please also keep us advised of any developments which may have a bearing on this matter or our representation of you.

The terms of this engagement letter will apply to any other engagement on your behalf that we may undertake, unless we enter into a separate engagement letter specific to such an engagement.

      *2.*    *Staffing.* I will personally coordinate our firm's work. From time to time other attorneys and legal assistants at the firm may work on this matter, depending upon their expertise and experience. My responsibilities include selecting personnel to provide legal services in a cost-effective manner.

      *3.*    *Fees and Expenses.* Our fees in this matter are determined by the actual time spent by our professional staff. My hourly rate is $350.00 per hour. Billing rates for associates range from $260.00 to $300.00, and paralegals from $150.00 to $190.00. These rates are adjusted periodically, and your bills will reflect such changes. We will bill monthly. Our bills will reflect a full description of all of the time spent on your behalf. In addition to our fees, our statements will include amounts for disbursements and other charges (such as photocopying costs, postage costs, filing fees, meals, lodging, mileage, and fees for Lexis and other fee-based information services). We will not charge

*4808761.1*

May 5, 2021
Page 2

you for domestic telephone calls or facsimiles. Ordinarily, we will ask that you directly pay larger expenses (greater than $50), such as fees and expenses charged by consultants, experts and court reporters.

We will send our bills to both of you via e-mail. Bills are due upon receipt. We reserve the right to assess a charge of 12% per annum (12% APR) on unpaid balances beginning 30 days after the invoice date. We also reserve the right to terminate our representation if our bills are not paid in a timely manner. Please feel free to call us at any time if you have questions about our bills or payment.

    *4.*    *Retainers.* Our representation of you will commence upon our receipt of a retainer in the amount of $10,000.00. The retainer will be applied to our invoices until exhausted at which time we reserve the right to demand that the retainer be replenished. In particular, should you decide to expand the scope of our services, we may require an additional retainer. Any retainer balance remaining after completion of our work and payment of a final invoice will be refunded to you. You may request to have interest accrue on the retainer amount. If a request is not made, the money will be deposited into the Firm's IOLTA account and will not accrue interest.

    *5.*    *Client Funds.* As we may hold your funds in trust, we would like to explain our practices in this area. Our standard Client Trust Account, which is used to hold client funds for short-term periods, generates interest which we cannot credit to you. In accordance with the rules of the Vermont/New Hampshire Supreme Court, interest on these funds is paid to an IOLTA (Interest On Lawyers Trust Accounts) program and used for charitable purposes in accordance with the Supreme Court rules. If you anticipate that the funds you wish to deposit to our Client Trust Account will generate substantial interest, you may request that we establish a Segregated Client Trust Account. We estimate that our fee for establishing a Segregated Client Trust Account for you will be $100. If we receive no request from you, your funds will be deposited in our standard Client Trust Account.

To ensure that we do not disburse funds before deposits clear, we will not disburse Client Trust Account funds sooner than 10 business days after the most recent deposit, unless: (a) the deposit was made by wire transfer, cash, or certified check (as distinguished from other forms of bank-issued checks such as a cashier's or treasurer's check); or (b) the bank where we maintain the Client Trust Account verifies that the deposit has already cleared and will not be charged back to the Client Trust Account.

We will acknowledge receipt of all your deposits to our Client Trust Account and advise you of any disbursements by sending you, after the close of any month when any transactions were posted to your account, a copy of a ledger page which will show such transactions during the previous month. Please advise us immediately if you will require more immediate acknowledgement of receipts or either advance or contemporaneous notice of disbursements.

    *6.*    *Conflicts of Interest.* As you are aware, this firm represents many other companies and individuals in a variety of legal matters. It is possible that another of our present or future clients will one day enter into a transaction with you, compete with you, or have a dispute with you. The fact that your personal or business interests may be adverse to or competitive with those of another of our clients may not create a legal conflict of interest for this firm. State rules of professional conduct applying to attorneys practicing in this firm define the various circumstances in which legal conflicts

*4808761.1*

May 5, 2021
Page 3

of interest arise and the manner in which each such conflict must be addressed. In the event that we are asked to engage in a representation in the future that would create a legal conflict of interest, as it is defined by the applicable rules of professional conduct, we will decline the new representation or, in certain circumstances, if permitted by the applicable rules of professional conduct, we may seek your permission to proceed with the new representation despite the conflict. Otherwise, this engagement will not disqualify us from representing existing or future clients whose interests may be adverse to or competitive with your own.

7.    *File Retention.* Unless you request otherwise in writing, we will retain your electronic file(s) electronically for seven years ("retention period") after our work on the matter has concluded. At the end of the retention period, we will dispose of the file(s) and its contents unless you have previously submitted a written request to have your file(s) returned to you.  By signing this letter, you consent to destruction of your file(s) unless you notify us in writing before the end of the retention period that you wish to take possession of the file(s).

8.    *Dispute Resolution.* Should questions or concerns arise concerning our representation of you or our statement for services, we encourage you to bring these to our attention immediately so we can attempt to address them. Often these issues can be resolved promptly and amicably. In the rare situation where we are unable to work out our differences, we would encourage you to consider resolving any dispute with us through nonbinding mediation, using the services of a mediator agreed to by you and this firm.

9.    *Your Responsibilities.* You agree to cooperate fully with us, to be completely truthful with us, and to provide promptly all information known or available to you relevant to our representation, and to pay our statements in accordance with paragraph 3, above.

Please note that our general practice is to send monthly invoices by email, unless you instruct us otherwise.  Also, we have provided wiring instructions for payment of the $10,000 retainer, but you are welcome to send us a check or pay by credit card to avoid the wiring fee.

If this letter satisfactorily sets forth the terms of our representation, kindly sign and return. If you have any questions about this letter, please feel free to give me a call. We look forward to working with you.

Very truly yours,

PRIMMER PIPER EGGLESTON & CRAMER PC

*Alexandra Edelman for Primmer Piper Eggleston & Cramer PC*

4808761.1

May 5, 2021
Page 4

**ACCEPTED AND AGREED:**

By: _____
       Leonard M. Levie
       Chairman and Managing Member of
       KK Bakery Investment Company, LLC

*4808761.1*

S-7

## LANGROCK SPERRY & WOOL, LLP
## TERMS OF HOURLY ENGAGEMENT

1.  **Scope of representation.** Langrock Sperry & Wool, LLP ("LS&W") will represent KK Bakery Investment Company LLC, KK Bakery Holding Acquisition Company and American Industrial Acquisition Corporation ("AIAC") and will render legal services to Koffee Kup in the matter described in the attached cover letter, subject to any limitations set forth therein.

2.  **Fees.**    AIAC will pay LS&W for its services on an hourly basis. LS&W will charge for all time spent on AIAC's behalf by attorneys, paralegals and legal assistants, including but not limited to office conferences, telephone conferences, drafting of documents, negotiating with opposing counsel, travel time and court time. LS&W will keep records of time spent to the nearest tenth of an hour, and will bill a minimum of one tenth of an hour for all activity, including each telephone conversation and all correspondence and e-mail. The current hourly billing rates are set forth in the attached cover letter, and these rates will be in effect through the end of the calendar year. Thereafter, all billing rates are subject to change.

3.  **Expenses.** AIAC will pay LS&W for expenses incurred on AIAC's behalf, including but not limited to long distance telephone charges, photocopies, facsimiles, computerized legal research fees, postage, travel expenses of attorneys, court fees, deposition fees, expert witness fees, and the cost of service of process.

4.  **Billing.**    LS&W will send bills on a monthly basis commencing the first full month after the date of this agreement. Payment is due within thirty days of the date of the bill. Interest may be charged on any unpaid balance delinquent for more than thirty days at the rate of 1% per month (12% per year).

5.  **Retainer.** AIAC will pay, upon execution of this agreement, a retainer in the amount of $5,000.00. LS&W's agreement to represent AIAC is contingent upon payment of this retainer. LS&W will bill its fees and expenses against this retainer until it is exhausted, at which time you will be expected to replenish the retainer in the same amount. The amount of the retainer is not a fixed fee or an estimate of the expected total fees, and additional fees and expenses may be incurred. LS&W reserves the right to require the AIAC to pay an additional retainer before any trial or other significant event in this matter.

6.  **Termination by LS&W.** If AIAC fails to pay any bill in full within thirty days, pays any additional retainer when requested, or if LS&W otherwise decides to terminate the attorney/client relationship within applicable ethical rules, then LS&W may terminate formally its representation of AIAC. In the event of such termination, LS&W will be entitled to be compensated for its services, on an hourly basis, and for any expenses incurred on AIAC's behalf, up to the date of termination.

7.  **Termination by AIAC.** AIAC has the right to terminate the attorney-client relationship and this agreement at any time, for any reason. In the event of such termination, LS&W will be entitled to be compensated for its services, on an hourly basis, and for any expenses incurred on AIAC's behalf, up to the date of termination.

## NOTICE TO CLIENTS REGARDING EMAIL COMMUNICATION

### IMPORTANT – PLEASE READ CAREFULLY

Often clients find it convenient to communicate with us via email. It is very important to remember, however, that email is not always a private, confidential way to communicate. For instance, if you are sending us an email from home, others may have access to your home computer.

It is also important to remember that if you are sending an email from work, or on a work computer, **your employer has access to those emails**. Many employers have a written policy that makes it clear to employees that all email traffic on the employer's system is **not private or confidential** and **may be accessed** by the employer at any time for any reason. Even if your employer does not have a written policy, you should assume that your employer is able to look at your emails sent and received at work or on a work computer. Please note that this can be true **even if you are sending/receiving those emails using your personal email address, rather than your work address**. If emails are sent on your employer's system, your employer may have access.

The rules of conduct governing lawyers require that we remind you that your communications with us may not be private if you send them via email. We are also required to caution you **not to do so** under circumstances where your communications with us might be seen by others.

If you have any questions, please let me know.

1300098.1



**MERITAS**®
LAW FIRMS WORLDWIDE

*Our firm is the Vermont member of Meritas Law Firms Worldwide, a network of nearly 200 independent law firms located throughout the United States and in many international locations. Through our membership, we are able to provide ready access to legal representation and advice in other jurisdictions, which has often served to benefit our clients.*
*If you are interested in more information concerning Meritas, please let me know.*

2:21-cv-00120-wks     Document 193-1     Filed 03/15/23     Page 48 of 67

Leonard M. Levie
August 13, 2021
Page 2

I, Leonard M. Levie, agree on behalf of client to the terms set forth above and in the enclosed documents, concerning Langrock Sperry & Wool's representation of KK Bakery Investment Company LLC, KK Bakery Holding Acquisition Company and American Industrial Acquisition Corporation in the above entitled matter.

Dated at *San Juan*, *Puerto Rico*, this *18* day of August, 2021.

Leonard M. Levie

### Rider to Legal Retainer

1. All fee disputes shall be resolved by discussion then fee arbitration.
2. The Law Firm's hours spent in explaining, analyzing, negotiating, or arbitrating the fees and expenses shall not be billable hours.
3. Lawyers shall not travel by train or air and shall not book hotels without client permission in advance.
4. Lawyers are encouraged to use phone, Skype or Zoom for meetings, depositions, and negotiations, instead of traveling to the meeting.
5. Hours spent en route to a meeting are not billable unless the Lawyer is actually working on the specific case during such travel.
6. Lawyers shall provide best estimate of the staffing, strategy, and cost of phases of the case upon request by Client.
7. Lawyers shall provide fee and expenses invoice summary. Upon Client request, Lawyers shall provide detailed time sheets.

Client Agreement and date:

8-18-21

Law Firm Agreement and date:

**ALLIANCE MANUFACTURING AND TRADING COMPANY LIMITED (AMTC)**

9a Burroughs Gardens, London, UK NW4 4AU

Mobile: +1 203 952 9212    EMAIL: Llevie@alacgroup.com

August 18, 2021

Mr. Frederic Dommart, CEO
UBP Investment Advisors
6 Place Camoletti, 2nd Fl
1207 Geneva, Switzerland
frederic.dommart@ubpias.com

Dear Mr. Dommart:

From the AMTC account, please wire $5,000 (five thousand dollars) to Langrock Perry & Wool, LLP. The wiring instructions for this firm are as follows:

This payment is in connection with an initial retainer for legal services related to AMTC's investment in KK Investment Company LLC. The retainer agreement invoice in support of this instruction is attached. Please call me to permit me to confirm this instruction.

Sincerely,

Leonard M. Levie
100% beneficial shareholder of AMTC

cc: JT, MC

*Incorporated and registered in England and Wales at Company Number 05127235 and whose registered office is at 9A Burroughs Gardens, London, UK NW4 4AU*



SINCE 1960

Langrock Sperry & Wool, LLP
ATTORNEYS AT LAW

August 13, 2021

**VIA EMAIL**

Leonard M. Levie (at leonardlev@aol.com and
llevie@aiac.com)

Re:    Matthew Chaney, et al. v. Vermont Bread Company, et al.
       U.S. District Court, District of Vermont Case No. 2:21-cv-00120 wks

Dear Mr. Levie:

As I discussed with John Carravino today, this Firm has agreed to represent KK Bakery
Investment Company LLC, KK Bakery Holding Acquisition Company and American Industrial
Acquisition Corporation as local counsel in the above-entitled action.

This letter will also serve to confirm the agreement we reached regarding our fees. I have agreed
to represent the above-mentioned entities on an hourly fee basis, at my current hourly rate of
$300.00. Work performed by other attorneys or legal assistants will be billed at their then-
prevailing hourly rates. The other terms of our agreement with you are enclosed. Please review
this letter and enclosures carefully and if you have any questions or concerns, please give me a
call to discuss them. Otherwise, please sign below and return this letter to me.

I also want to thank you for allowing Langrock Sperry & Wool, LLP the opportunity to represent
you in this matter.

Very truly yours,

Erin Miller Heins
eheins@langrock.com
EMH:sll
Enc.
c:  John W. Carravino

REPLY TO: Burlington Office • WEBSITE: www.langrock.com • EMAIL: attorneys@langrock.com

MIDDLEBURY: 111 S. Pleasant Street, P.O. Drawer 351, Middlebury, VT 05753-0351 • (802) 388-6356 • Fax (802) 388-6149
BURLINGTON: 210 College Street, P.O. Box 721, Burlington, VT 05402-0721 • (802) 864-0217 • Fax: (802) 864-0137

A Limited Liability Partnership Including a Professional Corporation

S-8

 **Dinse**    PO Box 988 | Burlington, VT | 05402 | 802.864.5751

Shapleigh Smith, Jr., Esq.
*E-mail*: ssmith@dinse.com

June 14, 2022

**Via Email: Leonardlev@aol.com; jeff@dorsetpartners.com**

Leonard Levie
**American Industrial Acquisition Corporation**
250 Park Avenue
New York, NY 10177

Jeff Sands
Dorset, Vermont

Re:    IN RE CORPORATE DISSOLUTION OF KOFFEE KUP BAKERY, INC.,, et al

Dear Mr. Levie:

This letter serves to confirm that you have retained Dinse P.C. to represent American Industrial Acquisition Corporation ("AIAC") in connection with the dissolution matter involving Koffee Kup Bakery, Inc., Vermont Bread Company, Inc. and Superior Bakery, Inc.

I will be the primary attorney who will be involved in this matter. My time is charged at the rate of $365 per hour. As needed, and to manage the file most efficiently, we may involve other attorneys at their usual rate. We will consult with you before taking such steps.

We will charge for actual time spent working on the matter, whether speaking on the telephone; preparing memoranda, pleadings, discovery responses, or other documents; appearing at or conducting depositions, court hearings, or mediation; or meeting with you or with witnesses. We also charge for travel time to the extent it might be necessary as well as mileage, meals, and other out-of-pocket expenses incurred in association with this matter. We would bill you monthly, unless you request, and we agree, to a different billing arrangement.

It is our customary practice to request a retainer for new projects. In this matter, we are requesting a retainer of $3,000 in advance. We will send you a monthly statement of our fees and expenses and you will remit payment within 30 days. The retainer will be applied to satisfy the final invoice and we will refund the

{B2536544.1 08098-0006}

LAW OFFICE OF
  DINSE P.C.

Leonard Levie
Jeff Sands
June 14, 2022
Page 2


balance of the retainer to you once the final bill has been satisfied.

We expect to have regular discussions with you on the current status of our engagement as well as strategic direction. We look forward to working together to bring this to a resolution that best serves AIAC.

If this letter comports with your understanding, please sign below and return it for my file. If there is anything that is not consistent with your understanding, or if you have questions of any kind, please do not hesitate to call.

I look forward to working with you on this matter.

Sincerely,

*Shapleigh Smith, Jr.*

Shapleigh Smith, Jr.


SS/pjg

{B2536544.1 08098-0006}

LAW OFFICE OF
  DINSE P.C.

Leonard Levie
Jeff Sands
June 14, 2022
Page 3

**AGREED AND ACCEPTED**

**American Industrial Acquisition Corporation**

Dated: 6-15-22

Authorized Representative
Name: LEONARD M. LEVIE

{B2536544.1 08098-0006}

### Rider to Legal Retainer

1. All fee disputes shall be resolved by discussion then fee arbitration.
2. The Law Firm's hours spent in explaining, analyzing, negotiating, or arbitrating the fees and expenses shall not be billable hours.
3. Lawyers shall not travel by train or air and shall not book hotels without client permission in advance.
4. Lawyers are encouraged to use phone, video (i.e. Zoom, Teams) for meetings, depositions, and negotiations, instead of traveling to the meeting.
5. Hours spent en route to a meeting are not billable unless the Lawyer is engaged in actual working on the specific case during such travel.
6. Lawyers shall provide best estimate of the cost of phases of the case upon request by Client prior to beginning work on each phase of the case.
7. Lawyers shall provide fee and expenses invoice summary. Upon Client request, Lawyers shall provide detailed time sheets.
8. Staffing: one lawyer shall be used on each assignment unless specified.
9. The lowest rate attorney or assistant shall be used on each task.
10. Partners will be used for overall strategy and final review. Associates and senior associates shall be used for routine tasks such as legal research, filling out forms, standard document review, evidence and exhibit preparation, etc.

Client Agreement and date:

_____    6-15-22

Law Firm and date:

_____

JA-302

S-9

# McCormick, Fitzpatrick,
# Kasper & Burchard, P.C.

David A. Berman
Daniel L. Burchard
Jason R. Ferreira
David A. Grebe
Eric A. Johnson
Craig S. Matanle
Krystn M. Perettine
Thomas P. Simon

**40 GEORGE STREET
P.O. BOX 638
BURLINGTON, VT
05402**

John C. Fitzpatrick
(1936-2009)
John P. Cain
(1950-2018)
Thomas E. McCormick
(Of Counsel)
Keith J. Kasper
(Of Counsel)

Telephone: (802) 863-3494
Telefax: (802) 865-9747
Email: [attorney's initials]@mc-fitz.com

January 13, 2023

*By email only (leonardlev@aol.com)*

Leonard M. Levie, Chairman
American Industrial Acquisition Corporation
250 Park Avenue
New York, NY. 10177

Re:  *Chaney et al. v. American Industrial Acquisition Corp. et al.*
U.S. Dist. Court for the Dist. of Vt., Dkt No. No. 2:21-cv-120-wks
and
*In re Corporate Dissolution of Koffee Kup Bakery, Inc., Vt. Bread Co., Inc., and Superior Bread Company, Inc.*
Vermont Superior Court, Chittenden Civil Unit, Dkt Nos. 21-CV-01917, 21-CV-01920 and 21-CV-01921

Dear Leonard:

I am writing to confirm the terms by which you have agreed to retain my services, and the services of my firm, to act as local counsel for your three corporate entities - American Industrial Acquisition Corp. ("AIAC"), KK Bakery Investment Company, LLC. ("KKBIC"); and KK Bakery Holding Acquisition Company ("KKBHAC") - in the above-captioned federal and state court action (collectively, the "Cases").

    1.  Represented Entities. I understand I am being retained (together with attorney Terry Kirwan) to take over from Atty. Kendall Hoescht the defense of AIAC, KKBIC and KKBHAC in the Cases.

    2.  Role as local counsel. I understand that my role in the Cases will be limited to acting as local counsel for AIAC, KKBIC and KKBHAC, and that Terry Kirwan has been retained to

act lead counsel in defense of those three corporate entities in the Cases. My notice of appearance will therefore reflect that I will be local counsel and that Terry will be lead counsel (since local rules require that information). I understand and you have agreed that Terry will be in charge of and responsible for all substantive aspects of the Cases, and that my role will be to review and sign off on court filings to ensure they comport with the requirements of the local rules of the Vermont federal district court and to attend all hearings (as that court's local rules require, unless excused by the court). I will also be available to advise Terry about local practice and trial strategy, though ultimately questions of strategy will be Terry's responsibility.

3. Rates. You have agreed to retain me to serve as local counsel at a rate of $300/hour. To the extent I need to involve my firm's associates or paralegals, my firm will bill associate time at $200/hour and paralegals at $100/hour. I understand you are agreeable to those rates.

4. Invoicing. We will invoice you on a monthly basis, and our invoices will reflect time spent on behalf of your three corporate entities in tenth-of-an-hour increments.

5. Retainer. My firm requires a $5,000.00 replenishable retainer, which will be applied against my firm's billings. By replenishable, I mean that whenever we have drawn the retainer down below $1,000.00, we will notify you and ask you to send us another check for $5,000.00 to apply against our billings. I understand that is agreeable as well.

If you wish, you may wire the retainer amount to my firm's client trust account. The wifing information is as follows:

Bank:
Routing No.:
Account No.:

6. Termination of Representation. If you decide to retain us, you will have the right to terminate our representation at any time, for any reason. My firm and I, in turn, must reserve the right to terminate this agreement if a conflict develops between us or if you insist on following a course of action which we believe to be improper. In the event of termination of this agreement, you agree to remit payment for the fees and expenses we incurred on behalf of AIAC, KKBIC and KKBHAC prior to termination.

If the foregoing terms of representation are acceptable to you and your three corporate entities, please confirm your agreement by printing, signing, scanning and returning a copy of this letter to me, for my files. If you have any questions or concerns about the foregoing terms of representation, please do not hesitate to contact me.

2

McCormick, Fitzpatrick, Kasper & Burchard, P.C., P.O. Box 638, Burlington, VT 05402

Sincerely,

McCORMICK, FITZPATRICK,
KASPER & BURCHARD, P.C.

Daniel L. Burchard

On behalf of American Industrial Acquisition Corp., KK Bakery Investment Company, LLC. and KK Bakery Holding Acquisition Company, and in my own right, I accept the terms of representation set forth in this letter.

1/16/23
Date

Leonard Levie, individually and as duly-authorized agent of American Industrial Acquisition Corp., KK Bakery Investment Company, LLC., and KK Bakery Holding Acquisition Company.

3

McCormick, Fitzpatrick, Kasper & Burchard, P.C., P.O. Box 638, Burlington, VT 05402

## Rider to Legal Retainer

1. All fee disputes shall be resolved by discussion, then fee mediation, then fee arbitration.
2. Upon termination, the Law Firm shall turn over all files to the Client.
3. The Law Firm's hours spent in explaining, analyzing, negotiating, or arbitrating the fees and expenses shall not be billable hours.
4. Lawyers shall not travel by train or air and shall not book hotels without client permission in advance.
5. Lawyers are encouraged to use phone, Skype or Zoom for meetings, depositions, and negotiations, instead of traveling to the meeting.
6. Hours spent en route to a meeting are not billable unless the Lawyer is actually working on the specific case during such travel.
7. Lawyers shall provide best estimate of the cost of phases of the case upon request by Client.
8. Lawyers shall provide fee and expenses invoice summary. Upon Client request, Lawyers shall provide detailed time sheets.
9. The budget, staffing, hourly fees and time frames shall be agreed upon in advance of each assignment.
10. The Law Firm shall inform the Client of the names of the specific attorneys and paralegals on each assignment.
11. The Law Firm shall employ a partner for strategic issues and an associate or paralegal for all drafting or document review.
12. The Law Firm shall disclose all conflicts in advance.
13. The Law Firm shall charge its standard rates, not a premium to such standard rates.

**Client Agreement and date:**

By: _____    Date: 1/16/23
L. M. Levie, Chairman

**Law Firm Agreement and date:**

By: _____    Date: 1/16/23
Daniel L. Burchard

S-10



**Kirwan Law**
ATTORNEYS AT LAW

*Sepr 21*
~~August 26~~, 2022

## ATTORNEY-CLIENT FEE AGREEMENT

*Via Email Transmission*
KK Bakery Investment Company, LLC
American Industrial Acquisition Corporation
Leonard Levie

Re:    **Socipar S.A.S., Bripan S.A.R.L. and 9249-9557 Quebec, Inc.
v. KK Bakery Investment Company, LLC, American Industrial Acquisition
Corporation, and Leonard Levie
American Arbitration Association
Case No. 01-21-0018-1379**

Dear Leonard:

Thank you for retaining Kirwan Law Firm, PC to represent you and the entities named in the above captioned arbitration case with respect to the above matter. Please review this "Fee Agreement" carefully since it sets forth the terms of our representation, along with our Standard Terms & Conditions provided herewith. If you have any questions, please feel free to contact me. This Attorney-Client Fee Agreement ("Agreement") is entered into by and between KK Bakery Investment Company, LLC, American Industrial Acquisition Corporation, and Leonard Levie (Collectively "Client") and Kirwan Law Firm, PC ("Kirwan Law") on the date listed herein.

    1.    **SERVICES PROVIDED.** Kirwan Law will provide legal services to you in connection with above referenced matter. "Legal services" as used in this agreement include consultation, advice, negotiations, correspondence, and litigation where appropriate. You authorize us to take any steps which, in our sole discretion, we deem necessary to properly protect your rights relative to the above matter, as more particularly described as follows:

    a)  Client hires Kirwan Law to provide legal services in connection with the above referenced matter.

    b)  Kirwan Law shall: provide those legal services reasonably required to represent Client; take reasonable steps to keep Client informed of progress; and respond promptly to Client's inquiries. Client shall: be truthful with Kirwan Law; cooperate with Kirwan Law, and to be present on reasonable notice for necessary appearances or depositions; keep Kirwan Law informed of developments; abide by this Agreement; and keep Kirwan Law advised of Client's residence, mailing and email addresses and telephone number.

c) Client authorizes Kirwan Law to fully investigate Client's claim, negotiate with insurance adjusters and, after discussion with Client, to file suit or commence other legal proceedings on Client's behalf. If, after reasonable investigation of such claim or claims, Kirwan Law determines that it is not feasible to prosecute such claim, upon notification to Client of such fact, Kirwan Law may withdraw from representation under this agreement.

d) It is understood and agreed that neither the Client nor Kirwan Law shall settle any claims arising out of this incident without first having obtained the consent thereto of the other.

e) It is further understood that this Agreement does not require Kirwan Law to provide any legal services relating to appeals, settlement or litigation of liens, creation and administration of supplemental needs trusts or guardianships, social security disability, Surrogate's Court proceedings, collection and enforcement of judgments and/or recovery of no-fault benefits. If arrangements are made (whether or not by Kirwan Law) for any legal services in this paragraph with outside counsel, then all attorneys' fees associated with these legal services shall be paid by the Client separately or from his, her or their recovery unless payment for said legal fees are mandated from some other source under the law. If Kirwan Law does agree to provide for any services in this paragraph, then Kirwan Law shall have the right to request and enter into a separate fee arrangement for said legal services in this paragraph.

f) Unless a separate agreement is entered into, Kirwan Law will not render any further services after a trial of the action or a dismissal of the action prior to trial, and further reserves the right to modify this Agreement as it pertains to a contingent fee, in the event any counter-claims are pleaded against the Client in the action. You may refuse to enter into any fee arrangement that you find unsatisfactory.

g) Kirwan Law makes no promises or guarantees about the outcome of Client's matter. Any oral or written comments about the outcome are expressions of opinion only. Kirwan Law warrants only that they will represent Client according to standards of professional competence and diligence.

2. **FEES AND COSTS.** You will pay us an advance payment retainer in the amount of $5,000.00. Thereafter, you agree to pay such fees for legal services as provided in this agreement. Wiring instructions are provided upon request. Terry J. Kirwan, Jr. will be the supervising attorney on your matter at a current hourly rate of $375.00. You understand that while one attorney will be primarily responsible for the conduct of your matter, we use a team approach. Associate time, if any, will be billed at $225.00 per hour. Law clerk time, if any, will be billed at $175.00 per hour. Paralegal time, if any, will be billed at $125.00 per hour. Other attorneys or paralegals may be given assignments relating to your matter when appropriate. You will be billed for our legal services in quarter hour increments, portal to portal. Expenses we incur in connection with your matter, including but not limited to long distance telephone, fax charges, travel expenses, photocopying, postage, computerized legal research and express delivery expenses, will be itemized and included on your billings. Vehicle mileage expenses will be billed at 55¢ per mile for any travel outside

2

Onondaga County. Certain additional expenses, such as filing fees, deposition fees, or retention of expert witnesses or consultants, will need to be advanced by you. **Client will restore the retainer balance to $5,000.00 after each bill. Payments are due upon receipt of the invoice, to the extent such amounts are not paid within fifteen (15) days of receipt of the bill, the unpaid amount shall bear interest at the rate of twelve percent (12%) per annum.**

3.    **BILLINGS.** We will send you monthly bills. All balances billed are due within 30 days of the date of the billing statement. In the event a bill remains unpaid beyond 30 days, you agree that we may, in our sole discretion, suspend or cease any work or services with respect to your matter until the balance is brought current. You agree that all invoices will be sent via electronic mail to: leonardlev@aol.com & jeff@dorsetpartners.com. In the event your email address changes, you agree to notify us and provide your new email address.

4.    **DISCHARGING US.** You may discharge us at any time by written notice effective when we receive it. Unless specifically agreed otherwise, we will provide no further services and advance no further costs on your behalf after receiving the notice. If we are your attorneys of record in any proceeding, we will send you a substitution of attorneys form which you agree to execute and return immediately. You will remain obligated to pay us at the agreed rates for all services provided up to the date of discharge, and to reimburse us for all costs advanced up to the date of discharge.

5.    **OUR WITHDRAWAL.** If we decide there has been an irretrievable breakdown in the attorney/client relationship or a material breach of this agreement or if a bill remains unpaid beyond 30 days, we may, if no lawsuit has yet been commenced on your behalf, withdraw from representation. If a lawsuit is pending, we may apply to the court to withdraw as your attorneys. If that happens, you will be provided with notice and an opportunity to be heard in court. If you owe any fees or expenses at the time of our withdrawal, we may, in addition to any other remedy, seek a lien on any money or property that is awarded to you in the action brought on your behalf.

6.    **FEE DISPUTES.** In the event of a dispute involving a fee, you may have the right to elect to resolve that dispute by arbitration in Onondaga County, under Part 137 of the Rules of the Chief Administrator of the Courts and the arbitration rules promulgated by the Onondaga County Bar Association.

7.    **EFFECTIVE DATE.** This Agreement will take effect when Client has performed the conditions stated in paragraph 1, but its effective date will be retroactive to the date Kirwan Law first provided services. The date at the beginning of this Agreement is for reference only. Even if this Agreement does not take effect, Client will be obligated to pay Kirwan Law the reasonable value of any services Kirwan Law may have performed for Client following the initial consultation of one-half hour.

8.    **ENTIRE AGREEMENT.** This Agreement constitutes the entire agreement between Kirwan Law and Client and may be changed only by written documents, signed by both parties.

9.    **ACKNOWLEDGMENT OF UNDERSTANDING.** This Agreement has been explained to Client by Terry J. Kirwan, Jr., of Kirwan Law and Client acknowledges that before signing this Agreement that Client has received and read it and understands each of the statements

3

made herein. Client has had an opportunity to ask questions, and all questions asked have been answered.

Kindly indicate your understanding and acceptance of the terms set forth in this Retainer Letter and Agreement by signing the enclosed copy and returning it to me via email. We will diligently and faithfully represent you in this matter. You understand, however, that the outcome of this matter cannot be guaranteed or even predicted with certainty.

Client acknowledges receipt of a copy of this Agreement for Client's home file. Once again, thank you for retaining Kirwan Law to represent you.

Thank you.

Very truly yours,

**KIRWAN LAW**

Terry J. Kirwan, Jr.
TJK/lk

I HAVE REVIEWED, UNDERSTAND AND ACCEPT THE TERMS OF THIS ATTORNEY-CLIENT FEE AGREEMENT.

**KK Bakery Investment Company, LLC**

DATED: August _SEPT 21_, 2022

By: Leonard Levie, Member

DATED: August _Sept 21_, 2022

**American Industrial Acquisition Corporation**

Leonard Levie, President

DATED: August _Sept 21_, 2022

Leonard Levie

4

## Rider to Legal Retainer

1. All fee disputes shall be resolved by discussion then fee arbitration.
2. The Law Firm's hours spent in explaining, analyzing, negotiating, or arbitrating the fees and expenses shall not be billable hours.
3. Lawyers shall not travel by train or air and shall not book hotels without client permission in advance.
4. Lawyers are encouraged to use phone, Skype or Zoom for meetings, depositions, and negotiations, instead of traveling to the meeting.
5. Hours spent en route to a meeting are not billable unless the Lawyer is actually working on the specific case during such travel.
6. Lawyers shall provide best estimate of the cost of phases of the case upon request by Client.
7. Lawyers shall provide fee and expenses invoice summary. Upon Client request, Lawyers shall provide detailed time sheets.
8. Staffing: one lawyer shall be used on each assignment unless specified.

Client Agreement and date:

By:

L. M. LEME, CHAIRMAN

Law Firm Agreement and date:

S-11

**Terry Kirwan**

| | |
|---|---|
| **From:** | Jeff Sands <jeff@dorsetpartners.com> |
| **Sent:** | Friday, February 24, 2023 12:48 PM |
| **To:** | Terry Kirwan; Eric Swider |
| **Subject:** | FW: Please print and Mail for us ASAP |

Terry, this is what I have from the mailing house for the WARN letters.   I don't have any record of invoice or payment.  Maybe I just connected him to Leonard?  <u>Not</u> on my credit card statements so I didn't pay for it.

**From:** Jeff Sands <jeff@dorsetpartners.com>
**Date:** Wednesday, April 28, 2021 at 11:32 AM
**To:** Vantage Press <file@vantagevermont.com>
**Subject:** Re: Please print and Mail for us ASAP

Wonderful, thanks

**From:** Vantage Press <file@vantagevermont.com>
**Date:** Wednesday, April 28, 2021 at 10:35 AM
**To:** Jeff Sands <jeff@dorsetpartners.com>
**Subject:** Re: Please print and Mail for us ASAP

Jeff,

The mail house has confirmed that your letters went out at the Essex USPS facility yesterday.

Thanks,
-Randall



115 North Street
Burlington, VT 05401
802-863-4998
M-F 830-430

Now offering full, in-house Bulk Mailing services and 36" Wide Format plot and poster printing!

On Apr 28, 2021, at 8:34 AM, Vantage Press <file@vantagevermont.com> wrote:

Jeff,

I will double confirm with the mail house and let you know. I'm expecting their invoice later this morning.

Thanks,

1

JA-315

-Randall
<Vantage_ns_logo_Small_email.jpg>

115 North Street
Burlington, VT 05401
802-863-4998
M-F 830-430

Now offering full, in-house Bulk Mailing services and 36" Wide Format plot and poster printing!

> On Apr 28, 2021, at 8:31 AM, Jeff Sands <jeff@dorsetpartners.com> wrote:
>
> Randall, can you please double-confirm that these were mailed?
>
> Thanks
> Jeff

> **From:** Jeff Sands <jeff@dorsetpartners.com>
> **Date:** Tuesday, April 27, 2021 at 9:25 PM
> **To:** Vantage Press <file@vantagevermont.com>
> **Cc:** Leonard Levie <llevie@aiacgroup.com>
> **Subject:** Re: Please print and Mail for us ASAP
>
> Awesome, thanks so much Randall.

> **From:** Vantage Press <file@vantagevermont.com>
> **Date:** Tuesday, April 27, 2021 at 4:45 PM
> **To:** Jeff Sands <jeff@dorsetpartners.com>
> **Subject:** Re: Please print and Mail for us ASAP
>
> Jeff,
>
> These just completed and are on their way to the USPS to mail! We'll have an invoice for you with postage in the morning.
>
> Thanks,
> -Randall
> <image001.jpg>
>
> 115 North Street
> Burlington, VT 05401
> 802-863-4998
> M-F 830-430
>
> Now offering full, in-house Bulk Mailing services and 36" Wide Format plot and poster printing!

2

On Apr 27, 2021, at 3:28 PM, Vantage Press <file@vantagevermont.com> wrote:

Jeff,

Got it, these are underway. I'll let you know costs as I move through the process, and once the mail house sends me processing and postage totals.

Thanks,
-Randall
<Vantage_ns_logo_Small_email.jpg>

115 North Street
Burlington, VT 05401
802-863-4998
M-F 830-430

Now offering full, in-house Bulk Mailing services and 36" Wide Format plot and poster printing!

On Apr 27, 2021, at 2:41 PM, Jeff Sands <jeff@dorsetpartners.com> wrote:


Envelope return address:
59 Rathe Rd.
Colchester, VT.  05446

Thanks
Jeff

---

**From:** Jeff Sands <jeff@dorsetpartners.com>
**Date:** Tuesday, April 27, 2021 at 2:15 PM
**To:** "file@vantagevermont.com" <file@vantagevermont.com>
**Subject:** Please print and Mail for us ASAP

Per federal regulations we have to mail these today.  We're willing to pay an expedite fee to help

Thank you

--
Jeff Sands, CTP
Dorset Partners LLC
+1 802-688-3419

3

JA-317

www.DorsetPartners.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

MATTHEW CHANEY, NADINE MILLER, AND ARTHUR GUSTAFSON,ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,

Plaintiffs

v.

VERMONT BREAD COMPANY, SUPERIOR BAKERY, INC., KOFFEE KUP BAKERY, INC., KOFFEE KUP DISTRIBUTION, LLC, KK BAKERY INVESTMENT COMPANY LLC, KK BAKERY HOLDING ACQUISITION COMPANY, AND AMERICAN INDUSTRIAL ACQUISITION CORPORATION,

Defendants

Defendants' Privilege Log

Docket No. 2:21-cv-120-wks

Name of Assigned Judge

_____

LINDA JOY SULLIVAN, IN HER) CAPACITY AS THE DISSOLUTION RECEIVER FOR KOFFEE KUP BAKERY, INC., VERMONT BREAD COMPANY, INC., AND SUPERIOR BAKERY, INC.,

Intervenor
Defendant
Crossclaimant

v.

KK BAKERY INVESTMENT COMPANY, LLC, KK BAKERY HOLDING ACQUISITION COMPANY AND AMERICAN INDUSTRIAL ACQUISITION CORPORATION,

Crossclaim

Defendants

PLEASE TAKE NOTICE that, pursuant to FRCP 26, Plaintiffs' Notice for Production of Documents, and Defendants' Response to that Notice, dated March 1st, 2023, Defendants are withholding the following documents for inspection

| NO. | DATE | TYPE | AUTHOR | SUBJECT | RECEIVER | GENERAL SUBJECT MATTER | PRIVILEGE |
|---|---|---|---|---|---|---|---|
| 1. | 06/21/2021 | Email | Marc A. Mandelman | Warn – Attorney Client Privilege | Sands, Levie, Selinger, Cannavino and Edelman | WARN | Attorney Client Privilege |
| 2. | 06/21/2021 | Email | Jeff Sands | Warn- Attorney Client Privilege | Mandelman, Levie, Selinger Cannavino & Edelman | | Attorney Client Privilege |
| 3. | 06/21/2021 | Email | Marc A. Mandelman | Question | Levie, Selinger Edelman & Sands | Question | Attorney Client Privilege |
| 4. | 06/21/2023 | Email | Leonard M. Levie | Question | Mandelman, Selinger, Cannavino, Edelman & Sands | | Attorney Client Privilege |
| 5. | 01/01/2022 | Statement | Epstein Becker & Green | Statement of Account | Deborah Cannavino | General Employment | Attorney Client Privilege |
| 6. | 04/23/2021 | Email | Leonard M. Levie | Epstein Becker Retainer | Cannavino, Sands & Selinger | Retainer Agreement | Attorney Client Privilege |
| 7. | 04/23/2021 | Email | Leonard M. Levie | Engagement Letter | Cannavino, Sands & Selinger | Wiring Instructions | Attorney Client Privilege |
| 8. | 04/23/2021 | Email | Rhonda Hollady | Revised WARN Letters | Levie, Cannavino, Selinger, Green, Mandelman & Sands | Letters | Attorney Client Privilege |
| 96. | 04/23/2021 | Email | Leonard M. Levie | Revised WARN Letters | Mandelman, Cannavino, Selinger, Burn Sands & Hollady | Letters | Attorney Client Privilege |
| 10. | 04/21/2021 | Email | Marc A. Mandelman | Revised WARN Letter | Levie, Cannavino, Selinger, Green, & Sands | Letter | Attorney Client Privilege |
| 11. | 04/23/2021 | Email | Leonard M. Levie | KK Warn Notice to Employee 4-23-21 | Cannavino, Selinger, Green, Mandelman, Sands & Hollady | Letter | Attorney Client Privilege |
| 12. | 04/23/2021 | Letter | Leonard M. Levie | Closure of Koffee Kup Bakery / Your Employment Status | Cannavino, Selinger, Green, Mandelman, Sands & Hollady | Letter | Attorney Client Privilege |
| 13. | 04/23/2021 | Email & Letter | Leonard M. Levie | KK Warn Notice to Employee 4/23/21 | Cannavino, Selinger, Green, Mandelman, Sands & Hollady | Revised Employee& Government WARN notice. | Attorney Client Privilege |
| 14. | 05/12/2021 | Letter | Epstein Becker & Green, PC. | Invoice | Kup Co., Levie & Sands | Invoice for Professional Services rendered dated, | Attorney Client Privilege |

JA-319

Case: 25-3017, 06/30/2026, DktEntry: 72.1, Page 144 of 224

JA-320

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | | | | 5/17/21, invoice dated 6/17/21, invoice dated 7/16/21, invoice dated 8/18/21, invoice dated 10/21/21, invoice dated 11/24/21, invoice dated 12/20/21 & invoice dated 10/26/22 | |
| 15. | 04/26/2021 | Email | Marc A. Mandelman | WARN Letter revision | Sands, Selinger, Cannavino, Hollady & Levie | Questions on letter | Attorney Client Privilege |
| 16. | 04/26/2021 | Email | Jeff Sands | WARN Letter revisions | Selinger Cannavino, Hollady, Mandelman & Levie | VEDA Notice of Default | Attorney Client Privilege |
| 17 | 04/26/2021 | Email | Joseph Selinger | WARN Letter revision | Sands, Cannavino, Hollady, Mandelman & Levie | Letter | Attorney Client Privilege |
| 18. | 04/26/2021 | Email | Jeff Sands | WARN Letter revision | Cannavino, Hollady, Selinger, Mandelman & Levie | Call from KeyBank – upset because the WARN letter puts the blame on them | Attorney Client Privilege |
| 19. | 04/26/2021 | Email | Deborah Cannavino | Last Pay Checks & PTO | Hollady, Selinger, Sands, Mandelman & Levie | Last Pay Checks | Attorney Client Privilege |
| 20. | 04/23/2021 | Email | Rhonda Hollady | Revised WARN letter | Selinger, Sands, Cannavino, Mandelman & Levie | Paycheck | Attorney Client Privilege |
| 21 | 04/23/2021 | Email | Joseph Selinger | Revised WARN Letters | Sands, Cannavino, Mandelman, Hollady ^& Levie | Payroll | Attorney Client Privilege |
| 22. | 04/23/2021 | Email | Jeff Sands | Revised WARN Letter | Cannavino, Selinger, Mandelman & Levie | Signing of the Letter | Attorney Client Privilege |
| 23. | 04/23/2021 | Email | Deborah Cannavino | Revised WARN Letter | Sands, Mandelman, Selinger, Levie, Green & Hollady | Refusal of Signing of the Letter | Attorney Client Privilege |
| 24. | 04/23/2021 | Email | Leonard M. Levie | Revised WARN Letter | Cannavino, Selinger, Green, Mandelman, Sands & Hollady | Revising Letter to help direct employees to government programs and agencies | Attorney Client Privilege |
| 25. | 04/26/2021 | Email | Marc A. Mandelman | WARN Letter revision | Levie, Sands, Cannavino, Hollady & Selinger | Proposed edits to the WARN letter | Attorney Client Privilege |
| 26 | 05/03/2021 | Email | Mark Coles | Continued Employment | Sands, Leonard, DeSerres, Langois, Reen, Hubert, Cannavino, Hollady, Teplitsky, Forman, Feiertag, | Payroll checks | Attorney Client Privilege |

Case: 25-3017, 06/30/2026, DktEntry: 72.1, Page 145 of 224

JA-321

| No. | Date | Type | From | Subject | To/CC | Description | Privilege |
|---|---|---|---|---|---|---|---|
| | | | | | Gustafson, Hanker, Pollack, Trinque, & Griswold | | |
| 27. | 05/19/2021 | Letter | Epstein Becker & Green, P.C./ Deborah Cannavino | Koffee Kup Bakery/Vermont Bread Co. in Brattleboro and Burlington VT | Dirk Anderson General Counsel – Commissioner of Labors' Office | Regarding Notice of closure | Attorney Client Privilege |
| 28. | 05/03/2021 | Email | Stephanie Hanker | Mark Coles & Susan Leonard | Final MA & NH PTO Sales Balance/ Vacation Payouts Non Sale – Final KKB Non MA NH PTO Sales | Final PTO Vacation Sheets | Attorney Client Privilege |
| 29 | | Email/ Payroll WE | Stephanie Hanker | Payroll WE | Herrera, Coles, Leonard & Trinque | Email & Spreadsheet with payroll information | Attorney Client Privilege |
| 30. | 05/14/2021 | Email | Deborah Cannavino | Koffee Kup Closure | Levie, Sands, Cannavino, Selinger & Mandelman | Draft response to the VT DOL regarding the WARN issue. | Attorney Client Privilege |
| 31. | 05/12/2021 | Email/Letter | Dirk Anderson | Koffee Kup Closure | Edelman & Heller & Sands | Regard Notice | Attorney Client Privilege |
| 32. | 04/28/2021 | Email | Jeff Sand | WARN Letter were mailed last night | Selinger, Cannavino, Levie & Mandelman | WARN Letter & DOL | Attorney Client Privilege |
| 33. | 04/28/2021 | Email & Agreement | Jeff Sands | Offer Letters | Selinger | Severance Agreement for KKB employees | Attorney Client Privilege |
| 34. | 04/27/2021 | Email | Jeff Sands | Ben Richards & Joe Meillo | Selinger, Cannavino & Levie | Employment issues or Creditor issues | Attorney Client Privilege |
| 35 | 04/22/2021 | Letter | Caroline S. Earle | Ben Richards: Separation of Employment | Jeff Sands | Resignation under terms | Attorney Client Privilege |
| 36. | 04/27/2021 | Email | Jeff Sands | Resignation | Selinger, Levie, Cannavino & Mandelman | Final wages | Attorney Client Privilege |
| 37. | 04/26/2021 | Email | Jeff Sands | Monday Plans | Leonard, Aubrey, Levie, Selinger, Cannavino, Hollady & Coles | Questions from Susan Leonard & Answers from Jeff Sands | Attorney Client Privilege |
| 38. | 04/26/2021 | Email | Jeff Sands | Last Pays & PTO | Selinger, Cannavino, Hollady, Mandelman & Levie | Appointing Receiver & meeting with KeyBank | Attorney Client Privilege |
| 39. | 04/23/2021 | Email | Jeff Sands | HR and business closure | Mandelman, Cannavino, Selinger & Levie | Thoughts on the closure | Attorney Client Privilege |
| 40. | 04/23/2021 | Email | Jeff Sands | KKB Employee Census | Mandelman, Cannavino & Selinger | EEO Report | Attorney Client Privilege |

| 41. | 04/23/2021 | Email | Jeff Sands | Koffee Kup Employee WARN Notice – unforeseen faltering | Selinger, Mandelman, Cannavino, Green, Levie & Hubert | WARN | Attorney Client Privilege |

Dated:          Syracuse, New York

                March 1st, 2023

**KIRWAN LAW**
*Attorneys for Defendants*

American Industrial Acquisition Corporation and
KK Bakery Investment Company, LLC

By: s/ Terry J. Kirwan Jr.
Terry J. Kirwan Jr.
Bar Roll #501821
2401 Burnet Avenue
Syracuse, New York 13206
Tel. No. (315) 452-2443
tkirwan@kirwanlawpc.com

JA-322

Case: 25-3017, 06/30/2026, DktEntry: 72.1, Page 146 of 224

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF VERMONT

MATTHEW CHANEY, NADINE )
MILLER and ARTHUR GUSTAFSON, )
on behalf of themselves and all others )
similarly situated, )
          Plaintiffs, )  Civil Action No. 2:21-cv-120-WKS
    v. )
 )
VERMONT BREAD COMPANY, SUPERIOR )
BAKERY, INC., KOFFEE KUP BAKERY, INC., )
KOFFEE KUP DISTRIBUTION, LLC, KK )
BAKERY INVESTMENT COMPANY LLC, )
KK BAKERY HOLDING ACQUISITION )
COMPANY and AMERICAN INDUSTRIAL )
ACQUISITION CORPORATION, )
          Defendants, )
 )
    and )
 ) **DISSOLUTION RECEIVER'S**
LINDA JOY SULLIVAN, in her capacity as the ) **MOTION FOR, AND**
Dissolution Receiver for Koffee Kup Bakery, Inc., ) **MEMORANDUM IN SUPPORT**
Vermont Bread Company, Inc. and Superior ) **OF, SUMMARY JUDGMENT**
Bakery, Inc., ) **DISMISSING THE**
 ) **FIRST AMENDED COMPLAINT**
        Intervenor-Defendant- ) **OR GRANTING**
        Crossclaimant, ) **ALTERNATIVE RELIEF**
    v. )
 )
KK BAKERY INVESTMENT COMPANY LLC, )
KK BAKERY HOLDING ACQUISITION )
COMPANY and AMERICAN INDUSTRIAL )
ACQUISITION CORPORATION, )
        Crossclaim-Defendants. )
 )

JA-324

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................... iv

MEMORANDUM ............................................................................................... 1

    Preliminary Statement .................................................................................... 1

    Standards of Review on Motions for Summary Judgment...................................... 2

ARGUMENT...................................................................................................... 3

    POINT I.    AS THE BUYER OF THE KOFFEE KUP ENTITIES, UNDER THE "SALE-OF-BUSINESS EXCLUSION" OF 29 U.S.C. § 2101(b)(1), AIAC/KKBIC ARE THE SOLE "EMPLOYER" LIABLE FOR FAILURE TO PROVIDE THE WARN ACT NOTICE .................................... 3

    POINT II.    AS THE DECISION-MAKERS EXERCISING *DE FACTO* CONTROL IN ORDERING THE APRIL 26, 2021 PLANT CLOSINGS AND EMPLOYEE TERMINATIONS, UNDER THE "SINGLE EMPLOYER" TEST, AIAC/KKBIC AND KUP CO ARE RESPONSIBLE FOR ANY WARN ACT LIABILITY...................................... 8

        A.    "Single Employer" Test ..................................................................... 8

            1.  Common Ownership ...................................................................... 11

            2.  Common Directors and/or Officers ............................................... 11

            3.  De Facto Control.......................................................................... 13

            4.  Unity of Personnel Policies.......................................................... 15

            5.  Dependency of Operations........................................................... 15

        B.    The Liability of Separate Related Entities .......................................... 16

    POINT III.  AIAC's KKBIC'S AND KUP CO'S SUDDEN ORDER TO TERMINATE ALL EMPLOYEES CONSTITUTED "UNFORESEEABLE BUSINESS CIRCUMSTANCES" UNDER 29 U.S.C § 2102(b)(2)(A) FOR THE KOFFEE KUP ENTITIES.......................... 18

        A.    The Plant Closings Were Sudden, Unexpected, and Caused the Terminations. ................................................................................. 18

        B.    AIAC/KKBIC/Kup Co's Decision to Close the Plants Caused the Terminations ................................................................................. 20

        C.    The Notice Given the Employees on the Second and Third Next Business Days (April 28th and 29th) Was "As Much Notice As Was Practicable" (29 U.S.C. § 2102(b)(3)) ............................................... 20

ii

POINT IV.  IF THE WARN ACT CLAIMS ARE NOT DISMISSED, THE COURT
SHOULD CAP THE KOFFEE KUP ENTITIES' POTENTIAL
LIABILITY AS MEASURED BY THE DELAY, AND ENTER
SUMMARY JUDGMENT FOR THAT AMOUNT AGAINST KKBIC
AND AIAC ON THE KOFFEE KUP ENTITIES' CROSSCLAIM ................. 21

CONCLUSION .......................................................................................................... 22

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re AE Liquidation, Inc.*,
　866 F.3d 515 (3d Cir. 2017)..................................................................................3, 18, 19, 20

*Anderson v. Liberty Lobby, Inc.*,
　477 U.S. 242, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)............................................................2

*In re APA Transp. Corp. Consol. Litig.*,
　541 F.3d 233 (3d Cir. 2008).................................................................................................10, 13

*Austen v. Catterton Partners V, LP*,
　709 F. Supp. 2d 168 (D. Conn. 2010)............................................................................13, 14, 16

*Bader v. N. Line Layers, Inc.*,
　503 F.3d 813 (9th Cir. 2007) .................................................................................................3

*Betz v. Highlands Fuel Deliv., LLC*,
　No. 5:10-cv-102, 2013 WL 392480 (D. Vt. Jan. 31, 2013) (Reiss, C.J.) ...............................22

*Borthwick v. First Georgetown Securities, Inc.*,
　892 F.2d 178 (2d Cir.1989).....................................................................................................2

*Chain v. North East Freightways, Inc.*,
　16 Civ. 3371, 2020 WL 7481142 (S.D.N.Y. Dec. 18, 2020), *adopted*, 2021
　WL 5051656 (S.D.N.Y. Nov. 1, 2021)......................................................................8, 9, 13, 15

*Day v. Celadon Trucking Servs., Inc.*,
　827 F.3d 817 – 28 (8th Cir. 2016) ...........................................................................................6, 7

*Dingle v. Union City Chair Co.*,
　134 F. Supp. 2d 441 (W.D. Pa. 2000)......................................................................................6

*Ellis v. DHL Exp. Inc. (USA)*,
　633 F.3d 522 (7th Cir. 2011) ...................................................................................................3

*Garner v. Behrman Bros. IV, LLC*,
　260 F. Supp. 3d 369 (S.D.N.Y. 2017).............................................................................. *passim*

*Gross v. Hale-Halsell Co.*,
　554 F.3d 870 (10th Cir. 2009) .................................................................................3, 18, 20

*Guippone v. BBH S & B Holdings LLC*,
　No. 09-civ-1029, 2010 WL 2077189 (S.D.N.Y. May 18, 2010), *aff'd in part
　and vacated in part,* 737 F.3d 221 (2d Cir. 2013) ...................................................................11

iv

*Guippone v. BH S & B Holdings LLC*,
   737 F.3d 221 (2d Cir. 2013).................................................................................. *passim*

*Headrick v. Rockwell International Corp.*,
   24 F.3d 1272 (10th Cir. 1994) ...............................................................................6

*Hiltz v. John Deere Indus. Equip. Co.*,
   146 Vt. 12, 497 A.2d 748 (1985) .........................................................................22

*Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Compania Mexicana*
   *de Aviacion, S.A. de C.V.*,
   199 F.3d 796 (5th Cir. 2000) ...............................................................................3

*Kennedy v. Roman Cath. Diocese of Burlington, Vermont, Inc.*,
   921 F. Supp. 231 (D. Vt. 1996)............................................................................2

*Kirby v. Cyprus Amax Minerals Co.*,
   No. 98-2341, 2000 WL 51799, 203 F.3d 835 (10th Cir. Jan. 24, 2000)...................6

*Law v. American Capital Strategies, Ltd.*,
   Civ. No. 3:05-0836, 2007 WL 221671 (M.D. Tenn. Jan. 26, 2007).......................16

*Leavitt v. Ethicon, Inc.*,
   524 F. Supp. 3d 360 (D. Vt. 2021).........................................................................2

*Local Joint Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
   244 F.3d 1152 (9th Cir. 2001) .............................................................................22

*Loli of Vermont, Inc. v. Stefandl*,
   968 F. Supp. 158 (D. Vt. 1997) (Sessions, J.)........................................................22

*Pearson v. Component Tech. Corp.*,
   247 F.3d 471 (3d Cir. 2001).................................................................................. *passim*

*Pennington v. Flour Corp.*,
   19 F.4th 589 - 601 (4th Cir. 2021)..........................................................2, 3, 19, 20

*Rodriguez v. Vill. Green Realty, Inc.*,
   788 F.3d 31 (2d Cir. 2015)....................................................................................2

*Roquet v. Arthur Andersen LLP*,
   398 F.3d 585 (7th Cir. 2005) ..........................................................................18, 20

*Saxion v. Titan-C-Mfg., Inc.*,
   86 F.3d 553 (6th Cir. 1996) ................................................................................22

*Siniscalchi v. Shop-Rite Supermarkets, Inc.*,
   903 F. Supp. 182 (D. Mass. 1995) .......................................................................22

*Smullin v. Mity Enter., Inc.*,
  420 F.3d 836 (8th Cir. 2005) ........................................................................................5, 6

*Thielman v. MF Global Holdings, Ltd.,(In re MF Global Holdings, Ltd.)*,
  No. 13 Civ. 07218, 2014 WL 4054281 (S.D.N.Y. Aug. 14, 2014) ..........................................9

*Viens v. Anthony Co.*,
  282 F. Supp. 983 (D. Vt. 1968)...............................................................................................22

*Vogt v. Greenmarine Holding, LLC*,
  318 F. Supp. 2d 136 (S.D.N.Y. 2004)..............................................................................15, 17

*Watson v. Michigan Indus. Holdings, Inc.*,
  311 F.3d 760 (6th Cir. 2002) .....................................................................................................3

*Wilkins v. Lamoille County Mental Health Servs., Inc.*,
  179 Vt. 107, 889 A.2d 245 (121 VT 2005)..............................................................................17

*Wilson v. Airtherm Products, Inc.*,
  436 F.3d 906 - 12 (8th Cir. 2005) ................................................................................. *passim*

**Rules**

20 C.F.R. § 639.3(a)(2).................................................................................................................8

20 C.F.R. § 639.4(c).................................................................................................................4, 7

20 C.F.R. § 639.9(b) ..................................................................................................................18

20 C.F.R. § 639.9(b)(1)..............................................................................................................19

**Statutes**

29 U.S.C. §§ 2101, *et seq.*..........................................................................................................1

29 U.S.C. § 2101(b)(1) ..................................................................................................... *passim*

29 U.S.C. § 2102(b)(2)(A)........................................................................................2, 18, 20, 21

29 U.S.C. § 2102(b)(3) .............................................................................................2, 18, 20, 21

29 U.S.C. § 2104(a)(1).................................................................................................................21

Intervenor-Defendant-Crossclaimant Linda Joy Sullivan, in her official capacity as the Dissolution Receiver (the "Dissolution Receiver") for Koffee Kup Bakery, Inc. ("KKB"), Vermont Bread Company, Inc. ("VBC") and Superior Bakery, Inc. ("SBI", and together with KKB and VBC, the "Koffee Kup Entities"), as appointed by the *Joint Order To Appoint A Receiver For The Corporate Dissolution Of Koffee Kup Bakery, Inc., Vermont Bread Company, Inc. And Superior Bakery, Inc.,* Docket No. 21-01917, entered July 22, 2021 (the "Appointment Order") by the Superior Court, Chittenden Unit, of the State of Vermont, hereby moves for summary judgment (the "Motion") (a) dismissing the First Amended Class Action Complaint, filed June 15, 2021 (ECF No. 10) (the "Complaint") as against the Koffee Kup Entities, or alternatively (b) limiting any potential damages award against the Dissolution Receiver and the Koffee Kup Entities, and granting full or partial summary judgment on the Dissolution Receiver's Crossclaim, dated September 20, 2022, for indemnification for any such award from Defendants and Crossclaim-Defendants KK Bakery Investment Company LLC ("KKBIC") and American Industrial Acquisition Corporation ("AIAC"), and in support thereof submits the below Memorandum together with the Dissolution Receiver's Statement Of Undisputed Material Facts (the "DRSUMF") and the Declaration of Peter D. Wolfson, dated March 31, 2023 including exhibits (the "Wolfson Declaration" or "Wolfson Dec."), and further states as follows:

## MEMORANDUM

### Preliminary Statement

This action was brought pursuant to the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101, *et seq.* (the "WARN Act"). The Dissolution Receiver and the Koffee Kup Entities are entitled to summary judgment dismissing the Complaint as against the Koffee Kup Entities, or alternatively limiting any damage award and granting indemnification for any such award, on four independent grounds under the WARN Act:

JA-330

First, under the "sale-of-business exclusion" of 29 U.S.C. § 2101(b)(1), as the buyer of the Koffee Kup Entities' business, AIAC and KKBIC are the only entities liable for any failure to provide notice to employees required under the WARN Act. *Wilson v. Airtherm Products, Inc.,* 436 F.3d 906, 909 - 12 (8th Cir. 2005);

Second, as the decision-makers exercising *de facto* control in ordering the April 26, 2021 plant closings and employment terminations (in addition to the other "single employer" factors), the parent companies AIAC, KKBIC and Kup Co. are solely responsible for any WARN Act liability. *Guippone v. BH S & B Holdings LLC,* 737 F.3d 221, 226 - 28 (2d Cir. 2013);

Third, AIAC's, KKBIC's and Kup Co.'s plant closings and termination of the Koffee Kup Entities' employees constituted "unforeseeable business circumstances" for the Koffee Kup Entities for which those Entities face no WARN Act liability. 29 U.S.C. § 2102(b)(2)(A). *Pennington v. Flour Corp.,* 19 F.4th 589, 600 - 601 (4th Cir. 2021);

Fourth, if the WARN Act claims are not dismissed in their entirety against the Koffee Kup Entities, the Court should limit any Koffee Kup Entities' liability to the few days' delay after the earliest any notice could possibly have been sent out (April 27, 2021) to the date the last of the notices were mailed (April 29, 2021), (29 U.S.C. §§ 2102(b)(2)(A), 2102(b)(3)) and 2104(a)(1)); and

Further, the Dissolution Receiver and the Koffee Kup Entities are entitled to summary judgment granting the Dissolution Receiver's crossclaim against AIAC and KKBIC for any WARN Act liability assessed against the Koffee Kup Entities, (Restatement (First) of Restitution, § 96).

### **Standards of Review on Motions for Summary Judgment**

The standards of review on summary judgment are well-settled:

> Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' ... if it 'might affect the outcome of the suit under the governing law.' " *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 39 (2d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)).

*Leavitt v. Ethicon, Inc.*, 524 F. Supp. 3d 360, 365 (D. Vt. 2021)

In *Kennedy v. Roman Cath. Diocese of Burlington, Vermont, Inc.*, 921 F. Supp. 231, 233

(D. Vt. 1996), the court further observed:

> Where, as here, a motion for summary judgment is supported by affidavits or other documentary evidence, the party opposing that motion must set forth specific facts which show there is a genuine,

2

material issue for trial. *See King Service, Inc. v. Gulf Oil Corp.*, 834 F.2d 290, 295 (2d Cir.1987). Accordingly, the plaintiff must come forward with enough evidence to support a verdict in her favor. She cannot defeat the defendant's motion merely by presenting a metaphysical doubt, conjecture or surmise concerning the facts. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Borthwick v. First Georgetown Securities, Inc.*, 892 F.2d 178, 181 (2d Cir.1989). Only disputes over facts which might affect the outcome of the suit under the governing law preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

986)).

WARN Act claims and defenses are often resolved on summary judgment. *See Pennington v. Fluor Corp.*, 19 F.4th 589, 601 (4th Cir. 2021); *In re AE Liquidation, Inc.*, 866 F.3d 515, 533–34 (3d Cir. 2017); *Ellis v. DHL Exp. Inc. (USA)*, 633 F.3d 522, 529 (7th Cir. 2011); *Gross v. Hale-Halsell Co.*, 554 F.3d 870, 878 (10th Cir. 2009); *Bader v. N. Line Layers, Inc.*, 503 F.3d 813, 815 (9th Cir. 2007); *Watson v. Michigan Indus. Holdings, Inc.*, 311 F.3d 760, 761 (6th Cir. 2002); *Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Compania Mexicana de Aviacion, S.A. de C.V.*, 199 F.3d 796, 799 (5th Cir. 2000).

## ARGUMENT

### POINT I.

### AS THE BUYER OF THE KOFFEE KUP ENTITIES, UNDER THE "SALE-OF-BUSINESS EXCLUSION" OF 29 U.S.C. § 2101(b)(1), AIAC/KKBIC ARE THE SOLE "EMPLOYER" LIABLE FOR FAILURE TO PROVIDE THE WARN ACT NOTICE

In general, the WARN Act "requires employers to give employees 60 calendar days' notice in advance of plant closings and mass layoffs," *Guippone v. BH S & B Holdings LLC,* 737 F.3d 221, 225 (2d Cir. 2013).

Further, in cases where there has been a sale of the business, 29 U.S.C. § 2101(b)(1) of the WARN Act provides in pertinent part:

3

> In the case of a sale of part or all of an employer's business, the seller shall be responsible for providing notice for any plant closing or mass layoff in accordance with section 2102 of this title, up to and including the effective date of the sale. **After the effective date of the sale of all or part of an employer's business, the purchaser shall be responsible for providing notice for any plant closing or mass layoff in accordance with section 2102 of this title.** (emphasis added).

This provision has been referred to as the "sale-of-business exclusion" in the WARN Act.

*Wilson v. Airtherm Prods., Inc.,* 436 F.3d 906, 909 (8th Cir. 2005).

The supporting regulations are similarly straightforward:

> In the case of the sale of part or all of a business, section 2101(b)(1) of WARN [29 U.S.C. §2101(b)(1)] defines who the 'employer' is. The seller is responsible for providing notice of any plant closing or mass layoff which takes place up to and including the effective date (time) of the sale, and *the buyer is responsible for providing notice of any plant closing or mass layoff that takes place thereafter.*

20 C.F.R. § 639.4(c)) (emphasis added).

The facts proving the above sale-of-business exclusion applies in this case are beyond dispute:

- AIAC, through its newly formed affiliate, KKBIC, entered into a Securities Purchase Agreement (the "SPA") to purchase 80% of the stock of Kup Co, which SPA closed on April 1, 2021 (DRSUMF ¶¶ 4 and 11).

- After the purchase, Levie gave Sands 15% ownership of KKBIC, and retained 85%. (DRSUMF ¶ 12).

- Kup Co owned 100% of the stock of KKB, which in turn owned 100% of the stock of both VBC and SBI (DRSUMF ¶¶ 1 – 2, 11).

- On April 1, 2021, pursuant to the SPA, through its newly formed affiliate KKBIC, AIAC purchased 80% of the stock of Kup Co, giving AIAC and KKBIC control of the Koffee Kup Entities (DRSUMF ¶¶ 4, 6, 11, 16).

4

- Effective April 1, 2021, Leonard Levie and Jeff Sands were AIAC/KKBIC's designees on the 3-person Kup Co Board (DRSUMF ¶ 18).

- Leonard Levie and Jeff Sands, as the AIAC/KKBIC directors on the Kup Co Board, decided no later than April 23, 2021, tentatively to shut down the Koffee Kup Entities, over the objection of the other Kup Co director, Hubert Aubery (DRSUMF ¶¶ 25, 27).

- Virtually all employees of the Koffee Kup Entities were terminated on April 26, 2021 (DRSUMF ¶ 32).

Thus, the threshold issue is whether the April 1, 2021 purchase of 80% of Kup Co and control of Kup Co and the Koffee Kup Entities constituted a "sale" within the meaning of 29 U.S.C. § 2101(b)(1). The courts are asked to take a "functional, common-sense approach" to this issue:

> [T]he sale-of-business exclusion "clearly connotes *any* transaction that transfers all or part of the employer's overall operations *as a going concern*" [quoting *Smullin v. Mity Enter., Inc.,* 420 F.3d 836, 839 (8th Cir. 2005)]. Expounding on "this functional, common sense approach," i.e., asking whether the sale of the business involves merely the sale of assets or whether it is a sale of a business as a going concern, the [*Smullin*] Court noted that this approach is "consistent with the purposes of the WARN Act because the buyer of a going concern is likely to retain a substantial proportion of the employees of the on-going business." *Id.* The Court further opined that "defining the exclusion in this generic fashion promotes compliance with the [WARN] Act because buyers and sellers know when a transaction is intended to transfer a going concern and can determine who must give the WARN Act notice if a covered employment loss is likely to occur." *Id.*"

*Wilson v. Airtherm Prods., Inc.,* 436 F.3d 906, 910 (8th Cir. 2005) (emphasis in original).

The *Smullin* court made it plain that Congress intended a stock sale, such as what happened here, to fall within Section 2101(b)(1)'s "sale of business" where, as here, it includes the "overall operations *as a going concern,*" *Smullin,* 420 F.3d at 839 (emphasis in original). Specifically,

5

> [i]n defining the universe of transactions for which the WARN Act deems the seller's employees to be employees of the buyer immediately after the sale, Congress did not use terms common to the tax-oriented world of corporate lawyers and investment bankers, such as "merger," "*sale of stock,*" "sale of assets," and so forth. Congress instead used a more generic term, "sale of business," which clearly connotes *any* transaction that transfers all or part of the employer's overall operations *as a going concern."*

420 F.3d at 839 (first emphasis added; second/third emphases in original).

Consequently, the courts have interpreted Congress' intent to cover "*any* transaction that transfers all or part of the employer's overall operations *as a going concern*," *Smullin,* 420 F.3d at 839; *see Headrick v. Rockwell International Corp.*, 24 F.3d 1272, 1280-81 (10th Cir. 1994) (upholding summary judgment that, *inter alia,* the transfer of management contract at a Department of Energy plant was a "sale" within 29 U.S.C. § 2101(b)(1)); *Day v. Celadon Trucking Servs., Inc.*, 827 F.3d 817, 827 – 28 (8th Cir. 2016) (sale of trucking business under asset purchase agreement was a "sale" with Section 2101(b)(1) where buyer intended to continue business); [1] *Kirby v. Cyprus Amax Minerals Co.,* No. 98-2341, 2000 WL 51799, 203 F.3d 835 (table) (10th Cir. Jan. 24, 2000) (unpub. opinion) (sale of stock was "sale" within § 2101(b)(1)); *Dingle v. Union City Chair Co.*, 134 F. Supp. 2d 441, 444-45 (W.D. Pa. 2000) (granting defendants' summary judgment on grounds, *inter alia*, that the sale-of-business exclusion applied to a parent corporation's sale of all its assets including wholly-owned employer subsidiary); *see also Smullin,* 420 F.3d at 839 ("Congress did not use terms common to the tax-oriented world of corporate lawyers and investment bankers, such as . . . 'sale of stock,' . . . . Congress instead used a more generic term, 'sale-of-business,' which clearly connotes *any* transaction that transfers all or part of

---

[1]   *See Day,* 827 F.3d at 827 – 28 ("Congress passed the WARN Act to protect employees; it is not a technical labyrinth that sophisticated corporate lawyers can navigate to the disadvantage of employees. . . . Rather Congress took a common-sense approach and 'used a more generic term, 'sale of business' which clearly connotes *any* transaction that transfers all or part of the employer's overall operations *as a going concern*,' "quoting *Smullin v. Mity Enters., Inc.,* 420 F.3d 836, 839 (8th Cir. 2005) (emphasis in original).

6

the employer's overall operations *as a going concern;"* emphasis in original). There is no genuine issue: on April 1, 2021 a "sale" occurred within the meaning of the WARN Act.

Having determined a "sale" occurred on April 1, 2021, the WARN Act expressly provides that it is the *buyer* alone who is the "employer" responsible for WARN Act notice. 29 U.S.C. § 2101(b)(1) ("After the effective date of the sale . . . , the purchaser shall be responsible for providing notice for any plant closing or mass layoff in accordance with section 2102 of this title"); 20 C.F.R. § 639.4(c) ("In the case of the sale of part or all of a business, section 2(b)(1) of WARN defines who the 'employer' is. . . . . [T]he buyer is responsible for providing notice of any plant closing or mass layoff that takes place [after the effective date of the sale];" *Wilson,* 436 F.3d at 909 ("[T]he WARN Act creates a system that allocates notice responsibility between the seller of the business and the buyer of the business, and *only the party actually causing employment loss due to a plant closing is required to provide WARN Act notice,*" (emphasis added).

The *Wilson* court recognized the common-sense presumption that, after a sale of the business as a going concern, only the buyer is the "employer" for WARN Act purposes:

> "When the sale of a business as a going concern is involved, the sale-of-business exclusion creates a presumption that the buyer is the employer for WARN Act purposes if the seller still employs its employees on the day of the sale. Unless something indicates otherwise, the sale of a business as a going concern typically will not involve a qualified plant closing with resultant employment loss unless and until the buyer makes such a decision." *Wilson,* 436 F.3d at 911.

*See Day,* 827 F.3d at 829 ("[T]hus, if the employment loss occurred '[a]fter the effective date of the sale . . . , the purchaser shall be responsible for providing notice.' *See* 29 U.S.C. § 2101(b)(1)").

The *Wilson* court continued, noting the logic and fairness of holding the buyer, and not the seller (or any other related entity), liable for any WARN Act notice failures when the seller (as in both *Wilson* and here) had no reason to believe the buyer would shut down the business:

7

"[Seller] had every reason to believe that the sale of its business would not result in a plant closing, as defined by the WARN Act, because [Buyer] gave every indication that it was buying [Seller] as a going concern. . . .

"In the face of [Buyer]'s assurances, why would [Seller] notify its employees of a plant closing? . . . Thus, the sale-of-business exclusion and our precedent dictate that [Buyer] became the employees' employer for WARN Act purposes once the sale of [Seller]'s business became final. Any WARN Act notice responsibilities fell on [Buyer], and not on [Seller].

*Wilson,* 436 F.3d at 911.

The buyer here was AIAC, through its affiliate, KKBIC. As the buyer of the Koffee Kup Entities as a going concern, AIAC and KKBIC were the only "employer" under the WARN Act, "so that any potential notice requirement fell on the buyer's shoulders," *Wilson,* 436 F.3d at 910. Consequently, the Complaint should be dismissed as against the Koffee Kup Entities.

## POINT II.

### AS THE DECISION-MAKERS EXERCISING *DE FACTO* CONTROL IN ORDERING THE APRIL 26, 2021 PLANT CLOSINGS AND EMPLOYEE TERMINATIONS, UNDER THE "SINGLE EMPLOYER" TEST, AIAC/KKBIC AND KUP CO ARE RESPONSIBLE FOR ANY WARN ACT LIABILITY

If for any reason summary judgment dismissing the Complaint against the Koffee Kup Entities is not awarded per the above sale-of-business exclusion, the Complaint should be so dismissed under the "single employer" test.

### A.   "Single Employer" Test

In *Guippone v. BH S & B Holdings LLC,* 737 F.3d 221, 226 (2d Cir. 2013), the Second Circuit adopted the Department of Labor's ("DOL's") 5-factor test (referred to as the "single employer" test) to determine whether the parent *or other related entities* can be considered the "employer" under WARN. *See* 20 C.F.R. § 639.3(a)(2). Following the guidance of *Guippone*, courts in this circuit have used the "single employer" test to determine whether related entities outside the parent-subsidiary context should face WARN Act liability, *see, e.g., Chain v. North*

8

*East Freightways, Inc.,* 16 Civ. 3371, 2020 WL 7481142,  at *10 (S.D.N.Y. Dec. 18, 2020) (Magistrate's opinion and Order, adopted 2021 WL 5051656 (S.D.N.Y. Nov. 1, 2021) (successor employer); *Garner v. Behrman Bros. IV, LLC,* 260 F. Supp. 3d 369 (S.D.N.Y. 2017) (grandparent and great-grandparent companies of direct employer); *Thielman v. MF Global Holdings, Ltd.,(In re MF Global Holdings, Ltd.)*, No. 13 Civ. 07218, 2014 WL 4054281, at *6 (S.D.N.Y. Aug. 14, 2014) (parent and affiliates of direct employer).

The five non-exclusive factors of the DOL test are:

1.    common ownership;

2.    common directors and/or officers;

3.    de facto exercise of control;

4.    unity of personnel policies emanating from a common source; and

5.    the dependency of operations.

*See Guippone,* 737 F.3d at 226.

As the *Guippone* court noted, these factors are sensibly applied to determine whether *any* entity, inside or outside the corporate organization chain, including equity investors, exercised control over the termination decision and thus faces WARN liability:

> These factors are useful for courts in determining "whether the nominally separate corporations actually functioned as a single entity with respect to policy." *Pearson v. Component Tech. Corp.,* 247 F.3d 471, 503-04 (3d Cir. 2001).  In a WARN case like this one, that policy is the decision to terminate the employment of a significant part of a company's work force.  These factors are also sensibly applied to determine whether WARN liability is to be imposed on an equity investor, who may similarly exercise control over the termination decision.

737 F.3d at 226.

The *Guippone* case, like this one, involved multiple levels of corporate parents and grandparents who were named as defendants, *see* 737 F.3d at 223.  The district court granted the corporate grandparent equity entities' motion to dismiss, finding the complaint failed to plead

9

adequate facts showing the investors were employers who violated the WARN Act (*i.e.,* exercised control over the termination decision),[2] but denied the other defendants' motions, 737 F.3d at 224. Following discovery, the corporate parent HoldCo and the plaintiffs cross-moved for summary judgment and the district court granted HoldCo's motion, 737 F.3d at 224 – 225.[3]  On appeal, the circuit court reversed that ruling, emphasizing HoldCo could be liable if it was "the decision-maker responsible for the employment practice giving rise to the litigation," 737 F.3d at 227.   The *Guippone* court stated:

> [T]he record evidence raises a question of fact whether [parent] HoldCo exercised de facto control over [the direct employer] Holdings. "The core of this factor is whether one company was the decision-maker responsible for the employment practice giving rise to the litigation." *In re APA Transp. Corp. Consol. Litig.,* 541 F.3d 233, 245 (3d Cir. 2008). The de facto control factor "is not intended to support liability based on a parent's exercise of control pursuant to the ordinary incidents of stock ownership . . . . The factor is appropriately utilized, however, if the parent . . . was the decision-maker responsible for the employment practice giving rise to the litigation." *Pearson,* 247 F.3d at 503 – 504. "Thus, the 'de facto exercise of control' prong allows the factfinder to consider whether the parent has specifically directed the allegedly illegal employment practice that forms the basis for the litigation." *Pearson*, 247 F.3d at 491.

*Guippone,* 737 F.3d at 227.

Here, there no dispute that the AIAC and KKBIC designees on the Kup Co Board exercised "de facto control" as "the decision-maker responsible for the employment practice giving rise to the litigation," 737 F.3d at 227; *see* DRSUMF ¶¶ 25 (Messrs. Levie and Sands "through the Kup Co Board which they controlled, made the tentative decision to shut down the Koffee Kup Entities' operations") and 32 (which decision was implemented with the shutdown and terminations on

---

[2]   The *Guippone* court observed that equity investors may be liable under the WARN Act if said investors, as happened here, "exercise control over the termination decision" 737 F. at 226.

[3]   The direct employer in the *Guippone* case, BH S & B Holdings LLC (defined therein as "Holdings"), and BHY S & B Intermediate HoldCo which replaced HoldCo as the sole member of Holdings, settled separately with the plaintiffs before the district court's decision on the cross-motions, 737 F.3d at 224 and n. 2.

April 26, 2021).  As shown below the other factors from the single-employer test are equally plain and undisputed.

### 1.      Common Ownership

As for the first factor, Common Ownership:[4] all the relevant companies were majority owned by Mr Levie.  Specifically,

- at all relevant times, VBC and SBI were each 100% owned by KKB (DRSUMF ¶¶ 1, 2 and 11);

- at all relevant times, KKB was 100% owned by Kup Co (DRSUMF ¶¶ 1, 2 and 11);

- after the 4/1/21 acquisition per the SPA, Kup Co was 80% owned by KKBIC (DRSUMF ¶¶11, 16 and 17);

- KKBIC was 85% owned by Mr. Levie, and 15% owned by Mr. Sands (DRSUMF ¶¶ 6 and 12); and

- AIAC was 100% owned by Mr. Levie.  [DRSUMF ¶ 6).

Thus, all the relevant companies at the time of the April 26, 2021 shutdown were majority owned by Mr. Levie.

### 2.      Common Directors and/or Officers

This factor looks to "whether some of the same individuals comprise (or, at some point, did comprise) the formal management team of each company," *Pearson v. Component Technology*

---

4    This factor asks, "whether a parent or related entity directly owns a separate corporate entity." *Garner v. Behrman Bros. IV, LLC*, 260 F. Supp. 3d 369, 376 - 77 (S.D.N.Y. 2017). This factor is of "limited significance . . . since . . . stock ownership alone is not grounds for holding a parent liable for its subsidiary's actions," *Garner,* 260 F. Supp. 3d at 377, quoting *Guippone v. BBH S & B Holdings LLC,* No. 09-civ-1029, 2010 WL 2077189 (S.D.N.Y. May 18, 2010), *aff'd in part and vacated in part,* 737 F.3d 221 (2d Cir. 2013).

11

*Corp.,* 247 F.3d 471, 498 (3d Cir. 2001).[5] This factor, like the first factor, is of limited importance. *Garner,* 260 F. Supp. 3d at 377.

The reality here, of course, is that the Koffee Kup Entities had **no directors at all** and virtually **no formal management** at the time of the plant closings. Specifically, all the Koffee Kup Entities' directors and all-but-one officer (CFO Mark Coles) resigned upon the closing of the APA. (DRSUMF ¶¶ 20 and 21).  As detailed below, on April 1, 2021, the date of the acquisition, the only member and manager of KKBIC was Mr. Levie, who thereafter gave a 15% interest in KKBIC to Mr. Sands;  the only relevant directors were those of Kup Co, which was controlled by the two KKBIC designees Messrs. Levie and Sands; and the only officer of any of the Koffee Kup Entities in late April, 2021 was the CFO of KKB, Mark Coles, who reported to Messrs. Levie and Sands. The undisputed facts are:

- at all relevant times Mr. Levie was the 100% owner of AIAC, and an 85% owner and sole manager of KKBIC (DRSUMF ¶¶ 4 - 6 and 12).

- all pre-April 1, 2021, directors of Kup Co, KKB, VBC and SBI – except Hubert Aubery as a director of Kup Co -- resigned as of April 1, 2021, per the SPA § 6.2(d) (DRSUMF ¶¶ 14 and 20);

- the replacement Kup Co directors, Messrs. Levie and Sands, were the designees of AIAC and KKBIC (DRSUMF ¶ 18);

- all pre-April 1, 2021, officers of Kup Co, KKB, VBC and SBC – except Mr. Morin as KKB's CEO and Mr. Coles as KKB's CFO -- resigned as of April 1, 2021, per the SPA § 6.2(d) (DRSUMF ¶¶ 14 and 20);

- Mr. Morin ceased being KKB's CEO no later than mid-April 2021 (DRSUMF ¶ 20);

- the only holdover director of Kup Co was Hubert Aubery (DRSUMF ¶ 20); and

- the only holdover officer was Mark Coles as KKB's CFO (DRSUMF ¶¶ 20 and 21).

---

[5]   *See also Garner*, 260 F. Supp. 3d at 377 (The common directors and officers factor "looks to whether two nominally separate corporations . . . (1) actually have the same people occupying officer or director positions in both companies; (2) repeatedly transfer management-level personnel between the companies; or (3) have officers and directors of one company occupying some sort of formal management position with respect to the second company").

In short, as of the decision to close down the Koffee Kup Entities, Mr. Levie was the sole owner of AIAC and the only manager of KKBIC: Messrs. Levie and Sands were sole members of KKBIC and the controlling directors of Kup Co; and the only officer remaining at any of the Koffee Kup Entities was Mark Coles, the CFO of KKB, who took instructions from Messrs. Levie and Sands. It cannot be disputed, "the same individuals [Messrs. Levie and Sands] comprise . . . the formal management at each company," *Pearson,* 247 F.3d at 498. Thus, this factor favors the "single employer" test.

### 3.   De Facto Control

This factor is addressed above, but additional aspects of de facto control require discussion. As noted above, the facts are not in dispute. AIAC and KKBIC designated Messrs. Levie and Sands to be KKBIC's directors on the Kup Co Board (DRSUMF ¶ 18). "Levie and Sands, acting through the Kup Co Board which they controlled, made the tentative decision to shut down the Koffee Kup Entities' operations" (DRSUMF ¶ 25). "Pursuant to [that] decision . . . , on Monday, April 26, 2021, the Koffee Kup Entities ceased operations and all Koffee Kup Entities' employees were terminated," (DRSUMF ¶ 32).

Indeed, there was no one else who could have participated in that decision. The only other director of Kup Co, Hubert Aubery, opposed the shutdown and terminations (DRSUMF ¶ 27). The only remaining officer at KKB, Mark Coles, also opposed the shutdown, and refused to allow his name to be used on the termination notices to the employees because he wanted nothing to do with the decision (DRSUMF ¶ 33). De facto control could not be any more plain and is conclusive proof of AIAC's, KKBIC's and Kup Co's liability. "De facto control is perhaps the most important prong of the DOL test." *Chain,* 2020 WL 7481142 at *14, quoting *Austen v. Catterton Partners V, LP,* 709 F. Supp. 2d 168, 177 (D. Conn. 2010); *Garner,* 260 F. Supp. 3d at 379 ("In *Guippone, . . .* the Second Circuit characterized the de facto control factor as key.") As noted above, "[t]he core of

13

this factor is whether one company was the decision-maker responsible for the employment practice giving rise to the litigation," *Guippone*, 737 F.3d at 227, quoting *In re APA Transp. Corp. Consol. Litig.,* 541 F.3d 233, 245 (3d Cir. 2008).  In such a circumstance, de facto control alone is sufficient to establish AIAC's, KKBIC's and Kup Co's WARN Act liability:

> "Because the balancing of the factors is not a mechanical exercise, if the de facto exercise of control was particularly striking – for instance, were it effectuated by disregarding the separate legal personality of the subsidiary [--] then liability might be warranted even in the absence of the other factors."

*Guippone,* 737 F.3d at 228 (quoting *Pearson,* 247 F.3d at 504).[6]

Allegations of conduct much less striking than that (proven here) by AIAC, KKBIC and Kup Co have been found to constitute the exercise of de facto control, and indeed to represent the very basis for the WARN Act claims.  *See Garner,* 260 F. Supp. 3d at 379 (de facto control shown in allegations corporate parent (a) decided the direct employer subsidiary should shut down and enter bankruptcy; (b) communicated that decision to the subsidiary's officer; (c) drafted a purported WARN notice; and (d) instructed the subsidiary's officer how to distribute the WARN notice after the shutdown); *Austen v. Catterton Partners V, LP,* 709 F. Supp. 2d 168, 177-78 (D. Conn. 2010) (de facto control shown in allegations corporate parent and management company of direct employer subsidiaries made the decisions (a) that the subsidiaries file for bankruptcy, (b) that the subsidiaries' plants be shut down, and (c) that the subsidiaries employees be terminated). Indeed, the *Austen* court noted "the decision to shut down the facilities, standing alone, might be sufficient to satisfy this [de facto control] factor," 709 F. Supp. 2d at 177.  Here, there is no doubt AIAC, KKBIC and Kup Co exercised de facto control in directing the closing of the plants and the

---

6   Furthermore, here where the KKBIC/Kup Co directors instructed the Koffee Kup Entities to shut down there was no regard for the corporate separateness of the Koffee Kup Entities whatsoever.

14

terminations of the employees of the Koffee Kup Entities.  Only they are liable as the single employer for any WARN Act liability.

### 4.    Unity of Personnel Policies

The fourth factor, the unity of personnel policies, may require a more complex analysis in other cases where there is a history of parent/subsidiary dealings.  Here, however, where Messrs. Levie and Sands were only in charge for a few weeks before shutting down the business, the analysis is straightforward.  AIAC and KKBIC through Kup Co made the critical decision to shut down the Koffee Kup Entities. (DRSUMF ¶¶ 19, 25 - 26 and 31). That satisfies this factor.  "[T]he decision to effect a mass layoff is the single most important personnel policy. . . . [and] in a sense [is] the *only* personnel policy that the statute is concerned with . . ." *Vogt v. Greenmarine Holding, LLC*, 318 F. Supp. 2d 136, 143 (S.D.N.Y. 2004) (emphasis in original).

### 5.    Dependency of Operations

"The dependency of operations factor asks whether the parent company 'controlled the day-to-day operations' of the subsidiary." *Chain v. North East Freightways, Inc.,* 16 Civ. 3371, 2020 WL 7481142 at *13 (S.D.N.Y. Dec. 18, 2020) (quoting *Vogt,* 318 F. Supp. 2d at 143).  Stated another way, "[t]o establish this factor, Plaintiff must prove that Defendants 'had the right to direct and control the manner in which [the subsidiary] undertook [its] duties." *Chain*, 2020 WL 7481142 at *13.  In the instant case, several facts prove this factor and favors AIAC's and KKBIC's liability.  First, as noted above, as of April 1, 2021, by virtue of the resignations of virtually all former officers and directors, the KKBIC-designated directors of Kup Co, Messrs. Levie and Sands, controlled all day-to-day operations of the Koffee Kup Entities. (DRSUMF ¶¶ 18 – 22, 25). Second, Messrs. Levie and Sands made the decision giving rise to this litigation:  to close the Koffee Kup Entities, over the objection of the sole remaining director on the Kup Co Board, Mr. Aubery, and despite the opposition of the sole remaining KKB officer, Mr. Coles

15

(DRSUMF ¶¶ 25 – 28, 30 – 33). There can be no question Messrs. Levie and Sands were in control of the Koffee Kup Entities.

Thus, as the "decision-maker responsible for the employment practice giving rise to the litigation," AIAC, KKBIC and Kup Co are the "employer" under the WARN Act responsible for violations of that Act. *Guippone,* 737 F.3d at 227; not the Koffee Kup Entities.

## B.    The Liability of Separate Related Entities

Moreover, consistent with the above principles from *Guippone* making the decision-maker liable, AIAC's, KKBIC's and Kup Co's WARN Act violations do not infect the downstream direct employer Koffee Kup Entities.  This is not a situation where one bad actor's misconduct spreads to every other party in the corporate chain.[7]  As the above entity-by-entity analysis in *Guippone* shows, a WARN Act analysis targets the decision-makers, and when those decision-makers are the corporate parent, innocent direct employers such as KKB, VBC and SBI here are absolved. Where parent companies made the decision to close the plants and terminate employees triggering WARN Act "single employer" liability, the direct employers are not automatically liable, and indeed are unnecessary to the litigation.  *Garner v. Behrman Brothers IV, LLC,* 260 F. Supp. 3d 369, 380 – 382 (S.D.N.Y. 2017) (in WARN Act "single employer" case against parent and grandparent companies that made the decision to close the plants and terminate all employees, direct employer was, at most, a theoretical joint tortfeasor and an unnecessary party); *Austen v. Catterton Partners V, LP,* 709 F. Supp. 2d 168, 173 - 178 (D. Conn. 2010) (where the parent and management companies made the decisions to have direct employer cookie bakery/distributors file for bankruptcy, close their plants and fire their employees, court denied dismissal motions because parent/management companies were allegedly "responsible for making and implementing the

---

[7]    Indeed, if an entire downstream corporate family was automatically liable, the *Guippone* analysis requiring the decision-maker be identified would be meaningless.

16

decisions that give rise to this litigation"); *Law v. American Capital Strategies, Ltd.,* Civ. No. 3:05-0836, 2007 WL 221671 at \*18 (M.D. Tenn. Jan. 26, 2007) (WARN Act "single employer" liability was properly assessed against company which invested in and gave consulting advice to direct employer which was an unnecessary party); *Vogt v. Greenmarine Holding, LLC*, 318 F. Supp. 2d 136 (S.D.N.Y. 2004) (three parent companies' motion to dismiss denied in a WARN Act "single employer" case where parent companies made the decisions to close the direct employer's plants; the direct employer was not a necessary party).

Indeed, even if deemed potential joint tortfeasors, the Koffee Kup Entities are entitled to dismissal because those Entities – to the minor extent any officers or directors remained -- **opposed** the shutdowns and **refused to be part** of that decision (DRSUMF ¶¶ 27 – 28, 33).  No act or omission of the Koffee Kup Entities caused or contributed to the WARN Act violations or plaintiffs' damages.  , 179 Vt. 107, 111-15, 889 A.2d 245, 249-51 (reaffirming the common-law and statutory principle in tort law generally that a plaintiff must prove the defendant's act or omission caused the plaintiff's injury).

As noted above, "the WARN Act takes a 'functional, common-sense approach,' attempting to determine who actually effects the plant closing."  *Wilson,* 436 F.3d at 912, quoting *Smullin,* 420 F.3d at 839.  Here, there is no dispute that the AIAC and KKBIC-designated directors of Kup Co, Messrs. Levie and Sands, "specifically directed the allegedly illegal employment practice that forms the basis for the litigation," (*Guippone,* 737 F.3d at 227 (quoting *Pearson,* 247 F.3d at 491)), and thus it is AIAC, KKBIC, and Kup Co that must face the WARN Act liability. Consequently, the Complaint should be dismissed as against the Koffee Kup Entities.

### POINT III.

### AIAC's KKBIC'S AND KUP CO'S SUDDEN ORDER TO TERMINATE ALL EMPLOYEES CONSTITUTED "UNFORESEEABLE BUSINESS CIRCUMSTANCES" UNDER 29 U.S.C § 2102(b)(2)(A) FOR THE KOFFEE KUP ENTITIES

If for any reason summary judgment is not awarded per the above Points I or II, the Complaint should be dismissed against the Koffee Kup Entities under the "unforeseeable business circumstances" defense.

29 U.S.C. § 2102(b)(2)(A) provides:

> "An employer may order a plant closing or mass layoff before the conclusion of the 60-day period if the closing or mass layoff is caused by business circumstances that were not reasonably foreseeable as of the time that notice would have been required."

*See also* 20 C.F.R. § 639.9(b).

This is the "unforeseeable business circumstances" defense to the WARN Act, requiring a defendant show: (1) the circumstance was unforeseeable, and (2) the terminations were caused by that circumstance. *Gross v. Hale-Halsell Co.,* 554 F.3d 870, 875 (10th Cir. 2009); *Roquet v. Arthur Andersen LLP,* 398 F.3d 585, 588 (7th Cir. 2005); *see also In re AE Liquidation, Inc.*, 866 F.3d 515, 523 (3d Cir. 2017). If the defendant shows the above two elements, the defendant must then show the employees were given "as much notice as is practicable" under 29 U.S.C. § 2102(b)(3), *AE Liquidation,* 866 F.3d at 523.

### A.   The Plant Closings Were Sudden, Unexpected, and Caused the Terminations.

There is no dispute the plant closings here were not reasonably foreseeable by the Koffee Kup Entities. Indeed, the closings were sudden and shocking to them. Specifically, following the April 1, 2021 acquisition, the personnel at the Koffee Kup Entities were expecting the capital investment and other improvements promised and the other representations made in the AIAC PowerPoint, the Offer Letter and the SPA (DRSUMF ¶¶ 7 – 11 and 23). The first notice to the

18

Koffee Kup Entities that the plants might be closed down came on Friday, April 23, 2021, three weeks after the SPA (DRSUMF ¶ 29).  This sudden news was analogous to the regulation's illustrative circumstance of a "client's sudden and unexpected termination of a major contract," 20 C.F.R. § 639.9(b)(1) ("An important indicator of a business circumstance that is not reasonably foreseeable is that the circumstance is caused by some sudden, dramatic, and unexpected action or condition outside the employer's control"); *see Pennington v. Fluor Corp.,* 19 F.4th 589, 600 (4th Cir. 2021) (client's sudden stoppage of construction of nuclear power plant was not reasonably foreseeable). The circumstance here was sudden, shocking, outside of the control of the Koffee Kup Entities, and easily qualifies as unforeseeable under the statute as it relates to the Koffee Kup Entities.  *In re AE Liquidation,* 866 F.3d at 533 (layoffs were not "probable," and no WARN notice was required, until the potential sale of the employer's assets fell through on the day of the sale's scheduled closing).  The Third Circuit in *AE Liquidation* stated:

> the WARN Act is triggered when a mass layoff becomes probable – that is, when the objective facts reflect that the layoff was more likely than not. . . .
>
> . . . If reasonable foreseeability meant something less than a probability, nearly every company in bankruptcy, or even considering bankruptcy, would be well advised to send a WARN notice, in view of the potential for liquidation of any insolvent entity.  And, . . . , there are significant costs and consequences to requiring these struggling companies to send notice to their employees informing them of every possible "what if" scenario and raising the specter that one such scenario is a doomsday. . . . When the possibility of a layoff – while present – is not the more likely outcome, such premature warning has the potential to accelerate a company's demise and necessitate layoffs that otherwise may have been avoided.

866 F.3d at 530 (citations omitted).

There can be no reasonable dispute that the AIAC/KKBIC/Kup Co decision to close the plants was a sudden, unforeseeable circumstance to everyone left at the Koffee Kup Entities.

19

**B.      AIAC/KKBIC/Kup Co's Decision to Close the Plants Caused the Terminations**

Although self-evident, the second element under 29 U.S.C. § 2102(b)(2)(A) – that the unforeseeable circumstance cause the terminations – is also clear because there can be no dispute that the AIAC/KKBIC/Kup Co decision to close the plants caused the terminations (DRSUMF ¶ 32).

Thus, the "unforeseeable business circumstances" exception to the WARN Act in 29 U.S.C. § 2102(b)(2)(A) as it relates to the Koffee Kup Entities is shown beyond any question.

**C.      The Notice Given the Employees on the Second and Third Next Business Days (April 28th and 29th) Was "As Much Notice As Was Practicable" (29 U.S.C. § 2102(b)(3))**

The next part of qualifying for the "unforeseeable business circumstances" exception requires the employer to show the employees were given "as much notice as is practicable" under 29 U.S.C. § 2102(b)(3), *AE Liquidation,* 866 F.3d at 523.  The record shows that, while about 60 employees were handed the WARN notice on April 27 – 29, 2021, all the employees were mailed notice by April 29, 2021, and from the standpoint of the Koffee Kup Entities, this was done as quickly as possible (DRSUMF ¶¶ 35 - 37).  The WARN Act precedent shows such notice amply satisfies 29 U.S.C. § 2102(b)(3).  *See Pennington v. Flour Corp.,* 19 F.4th 589, 600 - 601 (4th Cir. 2021) (after client ordered plant closure without notice to contractors, contractors' notice efforts beginning 6 days later were sufficient); *Gross v. Hale-Halsell Co.,* 554 F.3d 870, 878 (10th Cir. 2009) (summary judgment for defendant upheld where notice was sent 6 days after customers terminated key contracts); *Roquet v. Arthur Andersen LLP,* 398 F.3d 585, 590 (7th Cir. 2005) (25 – 45 day delay in giving employees WARN notice was reasonable).

Consequently, having shown "unforeseeable business circumstances" under 29 U.S.C. § 2102(b)(2)(A), and "as much notice as is practicable" under 29 U.S.C. § 2102(b)(3), the

20

Dissolution Receiver and the Koffee Kup Entities are entitled to summary judgment dismissing the Complaint as against the Koffee Kup Entities.

## POINT IV.

**IF THE WARN ACT CLAIMS ARE NOT DISMISSED, THE COURT SHOULD CAP THE KOFFEE KUP ENTITIES' POTENTIAL LIABILITY AS MEASURED BY THE DELAY, AND ENTER SUMMARY JUDGMENT FOR THAT AMOUNT AGAINST KKBIC AND AIAC ON THE KOFFEE KUP ENTITIES' CROSSCLAIM**

If the WARN Act claims are not dismissed in their entirety against the Koffee Kup Entities under the above Points I, II or III, the Court should limit any Koffee Kup Entities' liability to the maximum period of any conceivable delay:  the period from the earliest any notice could have been mailed (4/27/2021, the day after the Koffee Kup Entities learned of the final shutdown decision) to the date the last of the notices were mailed (4/29/2021) (DRSUMF ¶¶ 32 – 36).[8] The Dissolution Receiver also submits the Court should grant summary judgment on her crossclaim against AIAC and KKBIC for whatever that liability may be.

Thus, having established the "unforeseeable business circumstances" exception applies, to the extent the Koffee Kup Entities may be liable, if the Court finds fact issues with the Dissolution Receiver's arguments that the notice provided was all that was "practicable" under 29 U.S.C. § 2102(b)(3), under no circumstances could the damages under the WARN Act could be more than the days before notice was actually provided.[9]  29 U.S.C. § 2102(b)(2)(A) & § 2102(b)(3) (when faced with unforeseeable business consequences, employer only obligated to "give as much notice as is practicable"); and § 2104(a)(1) (any employer who violates the WARN Act is liable for "back pay for each day of violation . . . calculated for the period of the violation, up to a maximum of 60

---

[8]   The Koffee Kup Entities are entitled to this limited damage period regardless of whether AIAC and KKBIC are liable for the full WARN Act 60-day liability period for the reasons set forth in Points I and II, *supra*.

[9]   It should also be noted that, pursuant to both the WARN Act and the Dissolution Receiver's Appointment Order (§ 1), any calculation of any damages attributable to the Koffee Kup Entities must also be allocated among the three Koffee Kup Entities based on their respective former employees.

21

days"). *See Siniscalchi v. Shop-Rite Supermarkets, Inc.,* 903 F. Supp. 182, 192 (D. Mass. 1995)

(adopting recommendation of the magistrate judge; where employer gave notice 58 days before

terminations, WARN Act violation and liability was two days).[10]

The Court should also grant summary judgment in favor of the Dissolution Receiver and

the Koffee Kup Entities on their indemnification crossclaim against AIAC and KKBIC for any

damages.   Under Vermont law, absent a contract, the courts examine "the totality of

circumstances" to determine whether a party is entitled to indemnification, *Betz v. Highlands Fuel

Deliv., LLC,* No. 5:10-cv-102, 2013 WL 392480, at \*13 (D. Vt. Jan. 31, 2013) (Reiss, C.J.).

> A right of indemnity will be afforded a party who, without active fault,
> has been compelled, by reason of some legal obligation to pay damages
> caused by the negligence of another. [*Viens v. Anthony Co.,* 282 F. Supp.
> 983, 986 (D. Vt. 1968)] The relationship of the parties must be "such
> that the obligations of the alleged indemnitor extend not only to the
> injured person, but also to the indemnitee" quoting *Hiltz v. John Deere
> Indus. Equip. Co.*, 146 Vt. 12, 497 A.2d 748 (1985).

*Loli of Vermont, Inc. v. Stefandl,* 968 F. Supp. 158, 161 (D. Vt. 1997) (Sessions, J.);

Restatement (First) of Restitution, § 96 ("A person who, without personal fault, has become subject

to tort liability for the unauthorized or wrongful conduct of another, is entitled to indemnity from

the other for expenditures properly made in the discharge of such liability.")[11]

**CONCLUSION**

For all the foregoing reasons, the Dissolution Receiver respectfully submits this Court

should grant summary judgment dismissing the Complaint against the Koffee Kup Entities, or if

the Complaint is not dismissed, alternatively grant summary judgment (a) limiting the Koffee Kup

---

[10]   *Cf. Local Joint Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,* 244 F.3d 1152, 1156 (9th Cir. 2001) (casino operator, who gave employees 45 days' notice of closing casino, was liable for 15 days compensation under the WARN Act); *Saxion v. Titan-C-Mfg., Inc.,* 86 F.3d 553 (6th Cir. 1996) (employer, who gave employees notice 10 days before closing plant, liable for 50 days' pay).

[11]   Enforcing the crossclaim against AIAC and KKBIC for indemnification against any damages also avoids the plain injustice of burdening the Koffee Kup Entities' innocent unsecured creditors with liabilities caused solely by AIAC, KKBIC and affiliated decision-makers.

JA-351

Entities' liability to the few days period of any WARN Act violation and (b) granting summary

judgment on the Dissolution Receiver's and Koffee Kup Entities' Crossclaim against AIAC and

KKBIC for the amount of any WARN Act damages assessed against the Koffee Kup Entities and

all appropriate costs and expenses.

Dated: March 31, 2023                     **DENTONS US LLP**

                                   By:    */s/ Peter D. Wolfson*
                                          Peter D. Wolfson (admitted pro hac vice)
                                          Arthur H. Ruegger (admitted pro hac vice)
                                          1221 Avenue of the Americas
                                          New York, NY 10021
                                          Tel.: (212) 768-6700
                                          Email: peter.wolfson@dentons.com
                                                   arthur.ruegger@dentons.com

                                          **PHILLIPS, DUNN, SHRIVER & CARROLL, P.C.**
                                          David Dunn, Esq.
                                          147 Western Avenue
                                          Brattleboro, VT 05301
                                          Tel.: (802) 257-7244, ext. 112
                                          Email: ddunn@pdsclaw.com

                                          **SHEEHEY FURLONG & BEHM, P.C.**
                                          Ian P. Carleton, Esq.
                                          30 Main Street, 6th floor
                                          P.O. Box 66
                                          Burlington, VT 05402-0066
                                          Tel.: (802) 864-9891
                                          Email: icarleton@sheeheyvt.com

                                          *Counsel to Intervenor-Defendant-Crossclaimant*
                                          *Linda Joy Sullivan, Dissolution Receiver for*
                                          *Koffee Kup Bakery, Inc*
                                          *Vermont Bread Company and*
                                          *Superior Bakery, Inc.*

23

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT**

| | | |
|---|---|---|
| MATTHEW CHANEY, NADINE MILLER and ARTHUR GUSTAFSON, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) | Civil Action No. 2:21-cv-120-WKS |
| v. | ) ) | |
| VERMONT BREAD COMPANY, SUPERIOR BAKERY, INC., KOFFEE KUP BAKERY, INC., KOFFEE KUP DISTRIBUTION, LLC, KK BAKERY INVESTMENT COMPANY LLC, KK BAKERY HOLDING ACQUISITION COMPANY and AMERICAN INDUSTRIAL ACQUISITION CORPORATION, | ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| LINDA JOY SULLIVAN, in her capacity as the Dissolution Receiver for Koffee Kup Bakery, Inc., Vermont Bread Company, Inc., and Superior Bakery, Inc., | ) ) ) ) ) | **DISSOLUTION RECEIVER'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF HER MOTION** |
| Intervenor-Defendant-Crossclaimant, | ) ) ) | **FOR SUMMARY JUDGMENT DISMISSING THE FIRST AMENDED COMPLAINT** |
| v. | ) ) | **OR GRANTING ALTERNATIVE RELIEF** |
| KK BAKERY INVESTMENT COMPANY LLC, KK BAKERY HOLDING ACQUISITION COMPANY and AMERICAN INDUSTRIAL ACQUISITION CORPORATION, | ) ) ) ) | |
| Crossclaim-Defendants. | ) ) | |

Intervenor-Defendant-Crossclaimant Linda Joy Sullivan, in her official capacity as the

Dissolution Receiver (the "Dissolution Receiver") for Koffee Kup Bakery, Inc. ("KKB"), Vermont

Bread Company, Inc. ("VBC"), and Superior Bakery, Inc. ("SBI", and together with KKB and

VBC, the "Koffee Kup Entities"), as appointed by the *Joint Order To Appoint A Receiver For The*

*Corporate Dissolution Of Koffee Kup Bakery, Inc., Vermont Bread Company, Inc. And Superior*

*Bakery, Inc.*, Docket No. 21-01917, entered July 22, 2021 (the "Appointment Order") by the Superior Court, Chittenden Unit, of the State of Vermont, by and through her attorneys, Dentons US LLP, Phillips, Dunn, Shriver & Carroll, P.C. and Sheehey Furlong & Behm P.C., in support of her motion (the "Motion") pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rule 56 for summary judgment dismissing, as against the Koffee Kup Entities, the First Amended Class Action Complaint, filed June 15, 2021 (ECF No. 10) (the "Complaint"), or granting alternative relief, submits this Dissolution Receiver's Statement of Undisputed Material Facts In Support of Her Motion for Summary Judgment Dismissing the First Amended Complaint Or Granting Alternative Relief, together with the accompanying Declaration of Peter D. Wolfson, dated March 31, 2023 including exhibits (the "Wolfson Declaration" or the "Wolfson Dec.") and the Dissolution Receiver's Motion For, And Memorandum of  Law in Support of, Summary Judgment Dismissing the First Amended Complaint or Granting Alternative Relief, dated March 31, 2023, and further states as follows:

I.     **The Parties**

1.     Defendant Koffee Kup Bakery, Inc. (as previously defined, "KKB"), is a wholly-owned subsidiary of Kup Co. ("Kup Co") and is a Vermont corporation that began operating in Vermont over 40 years ago.  KKB acquired Defendant Vermont Bread Company, Inc. (as previously defined, "VBC") and Defendant Superior Bakery, Inc. (as previously defined, "SBI", and together with KKB and VBC, the "Koffee Kup Entities"), and before ceasing operations in 2021, the Koffee Kup Entities manufactured and sold bread, rolls and other baked goods primarily in Vermont and elsewhere in the Northeast.  (Dissolution Receiver's Objection To Claim And Complaint, dated July 6, 2022 (the "7/6/2022 DR State Complaint") filed in Case No. 21-CV-01917, Vermont Superior Court, Chittenden County) (the "KKB Dissolution Case") (Wolfson

2

Dec. **Exhibit 1**, ¶ 2);   Answer To Objection And Complaint, dated August 10, 2022 (the "8/10/2022 State Answer") (Wolfson Dec. **Exhibit 2, ¶ 2**), filed in the KKB Dissolution Case by Defendant and Crossclaim-Defendant American Industrial Acquisition Corporation ("AIAC"), Defendant and Crossclaim-Defendant KK Bakery Investment Company LLC ("KKBIC") and Non-defendants here Leonard Levie ("Levie") and Jeffrey Sands ("Sands", and together with AIAC, KKBIC and Levie, the "AIAC Group").[1]

2.    An organization chart reflecting the ownership of Kup Co and the Koffee Kup Entities as of June 1, 2020, is attached as Wolfson Dec. **Exhibit 3** (which as Exhibit 1 in the June 1, 2022, Deposition of Mark Coles in the KKB Dissolution Case ("6/01/2022 Coles Dep."; Wolfson Dec. **Exhibit 4**), was identified at tr. 9 – 10).

3.    KKB has ceased operations, but when operating, its principal place of business was in Burlington, Vermont. (7/6/2022 DR State Complaint ¶ 3; 8/10/2022 State Answer ¶ 3 (Wolfson Dec. Exhibits 1 and 2)).

4.    Defendant and Crossclaim-Defendant KK Bakery Investment Company LLC (as previously defined "KKBIC") is a limited liability company organized under the laws of Delaware and formed on or about March 27, 2021, by defendants AIAC and Levie to purchase 80% of the stock of Kup Co and to acquire subordinated notes and advances held by Kup Co shareholders (8/10/2022 State Answer ¶¶ 6 – 7, 11 (Wolfson Dec. Exhibit 2); KK Bakery Investment Company LLC Manager's Certificate As To Charter Documents, Authority And Incumbency, dated April 1, 2021 (the "4/1/2021 KKBIC Manager's Certificate") (Wolfson Dec. **Exhibit 5**); Written Consent

---

[1]  In the KKB Dissolution Case, the AIAC Group initially filed their joint Answer to the 7/6/2022 DR Complaint on 8/9/22.  The next day, on 8/10/22, the AIAC Group filed an amended Answer, but simply left the title "Answer". References herein to the "Answer" refer to the amended Answer filed on 8/10/2022 (Wolfson Dec. Exhibit 2).

In Lieu of Special Meeting of KKBIC (the "KKBIC Written Consent") (Wolfson Dec. **Exhibit 6**)).

5.      Defendant and Crossclaim-Defendant American Industrial Acquisition Corporation (as previously defined, "AIAC") is a corporation organized under the laws of Delaware. AIAC's sole shareholder and chairman is Mr. Levie (7/6/2022 DR State Complaint ¶¶ 6 and 8; 8/10/2022 State Answer ¶¶ 6 and 8 (Wolfson Dec. Exhibits 1 and 2)).

6.      At all relevant times, Leonard Levie was the sole shareholder of AIAC and 85% owner of KKBIC, which in turn on and after April 1, 2021, owned 80% of Kup Co (7/6/2022 DR State Complaint ¶¶ 7 - 8; 8/10/2022 State Answer ¶¶ 7 – 8, 27 (Wolfson Dec. Exhibits 1 and 2)).

**II.      The April 1, 2021 Sale to KKBIC**

7.      In early 2021, AIAC provided KKB, the then-shareholders of Kup Co (Socipar S.a.s., Bripan S.a.r.l. and 9249-9557 Québec, Inc. (collectively, the "Socipar Entities")), G2 Capital Advisors, LLC (KKB's financial advisor) and KeyBank N.A. (the Koffee Kup Entities' lender) with a PowerPoint presentation claiming to be the "The Best Future Owner of Koffee Kup Bakery," and a "long term holder" with turnaround, long term and investment plans for Koffee Kup, and the identification of the people to consist of "AIAC Leadership [and Additional Leadership] for Koffee Kup," including, among others, Jeff Sands. (*See* 7/6/2022 DR State Complaint ¶ 17; 8/10/2022 State Answer ¶ 17 (Wolfson Dec. Exhibits 1 and 2); *see also* AIAC PowerPoint Presentation (Wolfson Dec. **Exhibit 7**)).

8.      AIAC provided KKB with three letters of intent, or indicative offers, similar but with slightly changing terms: the first dated December 23, 2020, the second dated February 21, 2021, and the third dated March 4, 2021 (the "Offer Letter") (Wolfson Dec. **Exhibit 8**) (7/6/2022 DR State Complaint ¶ 18; 8/10/2022 State Answer ¶ 18 (Wolfson Dec. Exhibits 1 and 2)).

4

9.     AIAC's March 4, 2021, Offer Letter was to purchase a majority interest in the Koffee Kup Entities, through its "affiliate-in-formation KK Bakery Holding Company, Inc." (*See* 7/6/2022 DR State Complaint ¶ 19; 8/10/2022 State Answer ¶ 19 (Wolfson Dec. Exhibits 1, 2 and 8)).[2]  In this Offer Letter, AIAC detailed AIAC's financial and management strategies for the Koffee Kup Entities after the sale, including through the following representations:

- o "AIAC is in the best position to support management in the execution of their business plan: We have owned Champlain Cable in Colchester, VT for more than 20 years . . . We have owned Vermont Aerospace industries for 4 years. Each company involved a dramatic turnaround. Their strong, experienced, local management teams are available to support the Company as needed."

- o "Our senior Turnaround Advisor [Mr. Sands] resides in Vermont and has extensive food manufacturing experience."

10.     Similar to its PowerPoint presentation (Wolfson Dec. Exhibit 7), AIAC's Offer Letter also represented the manner in which AIAC would operate the Koffee Kup Entities, including financial and management strategies, provided an assurance that KKB would not be undercapitalized under AIAC's control and that Mr. Levie and Mr. Sands – as "Chairman AIAC" and "Senior Advisor AIAC," respectively – would be the "Ultimate Shareholders." (7/6/2022 DR State Complaint ¶ 20; 8/10/2022 State Answer ¶ 20 (Wolfson Dec. Exhibits 1, 2 and 8)). These representations included, for example, the following:

- o "[W]e currently work with the following assumptions about the strategy for the Company after closing . . . AIAC will oversee the business and provide strategic guidance and supervision to the Company."

- o "The business will have an appropriate level of working capital necessary to continue business operations following the Transaction."

- o "The "purchaser" would technically be KK Bakery Holding Company Inc., but the "Sponsor" was AIAC, and the "Ultimate Shareholders" were "L.M. Levie (Chairman AIAC) and Jeff Sands (Senior Advisor AIAC)."

---

[2]  Ultimately, the affiliate referenced in the Offer Letter that signed the SPA (defined below, Wolfson Dec. Ex. 9) was KKBIC, not KK Bakery Holding Company, Inc.

o "AIAC invests its own financial resources and does not require financing from third parties."

o "We have obtained all internal and external approval to execute the transaction."

o The only authorized contact persons for the transaction were Mr. Sands and Mr. Levie ("Llevie@aiacgroup.com").

o The offer was signed "Leonard M. Levie, Chairman." It then attached appendices providing additional information on AIAC's operations, including its "financial policy" and "management methods," which specified AIAC's management practices in global procurement, lean production, marketing and sales, internet, human resources, information technology, insurance, and accounting.

11.     KKBIC entered into a Securities Purchase Agreement (the "SPA," Wolfson Dec. **Exhibit 9**) to purchase, *inter alia*, 80% of the stock of Kup Co for one dollar ($1.00), which SPA closed on April 1, 2021.  (7/6/2022 DR State Complaint ¶ 25; 8/10/2022 State Answer ¶ 25).  Kup Co owned 100% of the stock of KKB, which in turn owned 100% of both VBC and SBI as wholly owned subsidiaries.  (7/6/2022 DR State Complaint ¶ 25; 8/10/2022 State Answer ¶ 25 (Wolfson Dec. Exhibits 1 and 2)).

12.     On the date of the SPA closing, Mr. Levie was the sole and controlling owner and manager of KKBIC (4/1/2021 KKBIC Manager's Certificate; KKBIC Written Consent (Wolfson Dec. Exhibits 5 and 6).  After the closing, Mr. Levie gave Mr. Sands 15% ownership of KKBIC, and Mr. Levie kept the remaining 85% (8/10/2022 State Answer ¶ 26) (Wolfson Dec. Exhibit 2).

13.     As part of the April 1, 2021, closing, Kup Co, KKBIC and the Kup Co shareholders entered the Kup Co. Shareholders Agreement, entered into as of April 1, 2021 (the "Kup Co Shareholders Agreement") (Wolfson Dec. **Exhibit 10**).

14.     Also, as part of the April 1, 2021 closing, the directors and officers of Kup Co and each of the Koffee Kup Entities, with the exceptions of Messrs. Morin and Coles, executed the

6

Resignation Of And Release By Existing Shareholders, Subordinated Debt Holders, Officers And Directors, dated as of April 1, 2021 (the "D&O Resignations") (Wolfson Dec. **Exhibit 11**).

15.    Also, as part of the April 1, 2021 closing, another AIAC and Levie affiliate, Alliance Manufacturing and Trading Co., Ltd. ("AMTC'), on behalf of KKBIC, paid the $1 million due by KKBIC at closing to acquire $14.314 million in purported subordinated debt.  (8/10/2022 State Answer ¶ 29 (Wolfson Dec. Exhibit 2); November 11, 2022, Deposition of KKBIC/J. Sands ("11/11/2022 KKBIC/Sands Dep.") (Wolfson Dec. **Exhibit 12**) tr. 49 – 51).

16.    Pursuant to the SPA, KKBIC acquired 80% of the equity in Kup Co for $1. (8/10/2022 State Answer ¶ 27; *see* SPA § 2.2(a) (Wolfson Dec. Exhibits 2 and 9); Ruling On Receiver's Motion Objecting To Claim Of Caren Turner And TGPA, Inc., entered January 9, 2023 (the "1/09/2023 Turner Ruling") in the KKB Dissolution Case (Wolfson Dec. **Exhibit 13**) p. 2). Thus, as of April 1, 2021, by purchasing majority control of the Koffee Kup Entities' corporate parent Kup Co, AIAC and Levie, through KKBIC, took control of the Koffee Kup Entities (*See* 8/10/2022 State Answer ¶ 29; 1/09/2023 Turner Ruling, p. 2 (Wolfson Dec. Exhibits 2 and 13)).

17.    An organization chart reflecting the ownership of KKBIC, Kup Co and the Koffee Kup Entities following the April 1, 2021 acquisition is attached as Wolfson Dec. **Exhibit 14**.

18.    Also, as part of the April 1, 2021 closing, pursuant to SPA § 5.5, the Kup Co Shareholders Agreement and the D&O Resignations (Wolfson Dec. Exhibits 9 - 11), the new board of directors of Kup Co consisted of (i) two KKBIC designees -- Levie and Sands -- and (ii) Hubert Aubery ("Aubery") as a representative of the sellers and the remaining 20% of Kup Co stock. (Affidavit of Hubert Aubery, dated January 4, 2023 ("1/04/2023 Aubery Aff.") (Wolfson Dec. **Exhibit 15** ¶ 5) (Exhibits 1 – 4 of the 1/04/2023 Aubery Affidavit are Wolfson Dec. **Exhibits 15-1 – 15-4**).

19.     Kup Co's board of directors, at all relevant times after the April 1, 2021 closing, consisted of Levie, Sands and Aubery (the "Kup Co Board") (1/04/2023 Aubery Aff. ¶ 5) (Wolfson Dec. Exhibit 15); (6/01/2022 Coles Dep. (Wolfson Dec. Exhibit 4) tr. 105, and Exhibit 21 of same deposition (3-page email thread starting with (the most-recent being) the 4/08/2021 Levie email) (Wolfson Dec. **Exhibit 16**) (identified at 6/01/2022 Coles Dep. tr. 103); 11/11/2022 KKBIC/Sands Dep. tr. 122 - 123 (Wolfson Dec. Exhibit 12)).

20.     Pursuant to SPA § 6.2(d) and the D&O Resignations (Wolfson Dec. Exhibits 9 and 11), all of the officers and directors of Kup Co, KKB, VBC and SBI resigned as of April 1, 2021, except **(a)** Aubery remained a director of Kup Co (1/04/2023 Aubery Aff. ¶ 5) (Wolfson Dec. Exhibit 15); **(b)** J.F. Morin temporarily remained in an unclear capacity but departed by mid-April 2021 (6/01/2022 Coles Dep. tr. 104 - 105) (Wolfson Dec. Exhibit 4); and **(c)** KKB CFO Mark Coles continued as CFO through April 2021 (August 29, 2022 M. Coles deposition in this case ("8/29/2022 Coles Dep.") (Wolfson Dec. **Exhibit 17**), tr. 237 - 239; 6/01/2022 Coles Dep. tr. 112 – 113 (Wolfson Dec. Exhibit 4)).

21.     Thus, by mid-April 2021, the Koffee Kup Entities had no directors and only one officer:  CFO Mark Coles (6/01/2022 Coles Dep. tr. 112 - 113) (Wolfson Dec. Exhibit 4).

22.     The Koffee Kup Entities had no relevant legal counsel after the April 1, 2021 SPA closing (6/01/2022 Coles Dep. tr. 108) (Wolfson Dec. Exhibit 4).

23.     The Koffee Kup Entities continued to operate over the weeks following the April 1, 2021 SPA closing (Mark Coles – Timeline of My Interactions with AIAC/Jeff Sands – March – April 2021, 6/01/2022 Coles Dep. Exhibit 25 (the "Coles Timeline") (Wolfson Dec. **Exhibit 18**, identified 6/01/2022 Coles Dep. tr. 109 - 111) (Wolfson Dec. Exhibit 4)).

8

### III.    The Shutdown

24.    In connection with a Kup Co Board meeting scheduled for April 21, 2021, counsel for Aubery circulated a proposed resolution calling for the continued funding of the Koffee Kup Entities pursuant to the terms of the SPA, but the other directors Levie and Sands refused to consider the resolution (1/04/2023 Aubery Aff. ¶ 6 and Exhibit 2 thereto) (Wolfson Dec. Exhibits 15 and 15-2).

25.    At some point prior to Friday April 23, 2021, Levie and Sands, acting through the Kup Co Board which they controlled, made the tentative decision to shut down the Koffee Kup Entities' operations (KKBIC's Reply In Support Of Its Motion For An Emergency Hearing To Review Attorneys' Fees And To Remove The Dissolution Receiver's Counsel, filed August 22, 2022, in the Koffee Kup Entities' dissolution proceedings, Case Nos. 21-CV-01917, -01929 and -1921 (Vermont Sup Ct., Chittenden County (the "8/22/2022 KKBIC State Reply") pp. 2 - 3) (Wolfson Dec. **Exhibit 19**).

26.    Through the domination and control of KKBIC and Kup Co by its representatives Levie and Sands, AIAC ordered the shutdown of the Koffee Kup Entities and the termination of those Entities' employees (*see* ¶¶ 4 – 12, 14 – 20 and 24 – 25, above).

27.    The only other director of Kup Co, Aubery, objected to the shutdown (1/04/2023 Aubery Aff. ¶ 6) (Wolfson Dec. Exhibit 15).

28.    The only remaining officer of any of the Koffee Kup Entities, CFO Mark Coles, was not involved in the decision to shut down the Koffee Kup Entities (8/29/2022 Coles Dep. tr. 214) (Wolfson Dec. Exhibit 17).

29.    The first time CFO Mark Coles or any other employee at the Koffee Kup Entities learned of the possible decision to shut down the Koffee Kup Entities was Friday, April 23, 2021

9

(8/29/2022 Coles Dep. tr. 116 - 118) (Wolfson Dec. Exhibit 17); (6/01/2022 Coles Dep. tr. 109 – 111) (Wolfson Dec. Exhibit 4); Coles Timeline (Wolfson Dec. Exhibit 18).

30.      After making the tentative decision to shut down the Koffee Kup Entities, on April 24, 2021, Levie hoped to sell the Koffee Kup Entities. That day, Levie sent an email to multiple recipients including an AIAC employee, Ms. Caren Turner, initiating a search for a "white knight" who "would see this as the bargain it is and would move fast." (1/09/2023 Turner Ruling p. 2) (Wolfson Dec. Exhibit 13).  Also, that day, Levie gave Ms. Turner an Executive Summary of the Koffee Kup Entities' status at that time for use as part of the sale effort (April 24, 2021 Executive Summary) (Wolfson Dec. **Exhibit 20**).  Turner filed a claim in the Dissolution Proceedings seeking a brokerage fee for her efforts to find a buyer for the Koffee Kup Entities, but her claim was disallowed in the 1/09/2023 Turner Ruling (Wolfson Dec. Exhibit 13).

31.      Koffee Kup Entities' personnel did not learn of the final decision to shut down the Koffee Kup Entities' operations until Monday, April 26, 2021 (August 29, 2022 Deposition of S. Hanker in this case ("8/29/2022 Hanker Dep.") tr. 52 – 54, 67 – 68) (Wolfson Dec. **Exhibit 21).**

32.      Pursuant to the decision of AIAC, KKBIC, Levie and Sands, purportedly acting through the Kup Co Board, on Monday, April 26, 2021, the Koffee Kup Entities ceased operations and all Koffee Kup Entities' employees were terminated. (8/29/2022 Hanker Dep. tr. 51 – 59 and 67 - 69) (Wolfson Dec. Exhibit 21); December 10, 2021 Deposition testimony of Jeff Sands ("12/10/2021 Sands Dep."), tr. 71, in *In re Koffee Kup Bakery, Inc.,* Involuntary Case No. 21-10168 (Bankr. D. Vt.) (Wolfson Dec. **Exhibit 22**); April 26, 2021 letters to Burlington, Brattleboro and CT officials; (Wolfson Dec. **Exhibits 23 A – C**), (identified 6/01/2022 Coles Dep. tr. 111 – 112) (Wolfson Dec. Exhibit 4))**.**

33.      The only remaining officer of any of the Koffee Kup Entities, CFO Mark Coles,

10

disagreed with the decision to shut down the Koffee Kup Entities, and refused to sign the proposed notice to employees (8/29/2022 Coles Dep. tr. 237 - 239, 252 – 253; 6/01/2022 Coles Dep. tr. 112 – 114)) (Wolfson Dec. Exhibits 4 and 17).

34.    The notice of termination to all employees was not available for distribution until late April 26, or early April 27, 2021 (8/29/2022 Hanker Dep. tr. 68, 78, 135) (Wolfson Dec. Exhibit 21).

35.    Notices of the employee terminations (Wolfson Dec. **Exhibit 24**) were handed out to approximately 60 KKB employees on April 27, 28 and 29, 2021, and mailed to all KKB and VBC employees on April 27, 28 and 29, 2021 (8/29/2022 Hanker Dep. Exhibit 3 and tr. 75 – 83) (Wolfson Dec. Exhibit 21).

36.    Notices of the employee terminations were mailed to all SBI employees on April 27, 28 and 29, 2021 (8/29/2022 Hanker Dep. tr. 83) (Wolfson Dec. Exhibit 21).

37.    The above mailings and in-person deliveries of the termination notice occurred as promptly as circumstances permitted (8/29/2022 Hanker Dep. tr. 134 – 135) (Wolfson Dec. Exhibit 21).

**IV.    Procedural History**

38.    Plaintiffs Chaney, Miller and Gustafson commenced this action with the filing of a class action complaint on April 29, 2021 (ECF No. 1).

39.    On May 3, 2021, Superior Court Judge Samuel Hoar, Jr. appointed Mr. Ronald Teplitsky as receiver for the Koffee Kup Entities (the "KeyBank Receiver").

40.    Following receipt of the April 26, 2021 letters to various Vermont governmental officials (Wolfson Dec. Exhibits 23 A - C), the Vermont Department of Labor (the "VTDOL") requested more detail as to the reasons notice was not given earlier.  On May 19, 2021, Deborah

11

Cannavino, Esq. of Epstein Becker Green, provided a response (Wolfson Dec. **Exhibit 25**). Following a 2022 inquiry to the VTDOL by the Dissolution Receiver as to the status of any action, the VTDOL responded by letter from its General Counsel Dirk Anderson, stating "the invocation of the two exemptions (Unforeseeable Business Circumstances and Faltering Company Exception) was sufficiently justified, and no further action was taken by the Department. Accordingly, I consider this matter closed." (Wolfson Dec. **Exhibit 26**).

41.     Plaintiffs filed their First Amended Complaint (as previously defined, the "Complaint") on June 15, 2021 (ECF No. 10).

42.     In early June 2021, the KeyBank Receiver sold the assets of the Koffee Kup Entities to an affiliate of Flowers Foods, Inc. ("Flowers") for approximately $16 million. Flowers did not re-open the business (7/6/2022 DR State Complaint ¶ 39; 8/10/2022 State Answer ¶ 39) Wolfson Dec. Exhibits 1 and 2).

43.     By the Appointment Order entered July 22, 2021, Judge Samuel Hoar, Jr. appointed Linda Joy Sullivan as the Dissolution Receiver for the Koffee Kup Entities.

44.     KKBIC filed its Answer to the Complaint on December 3, 2021 (ECF No. 35).

45.     The Order granting the Dissolution Receiver's Unopposed Motion to Intervene was entered March 30, 2022 (ECF No. 69).

46.     The Dissolution Receiver filed her Amended Answer and Crossclaim on May 6, 2022 (ECF No. 89).

47.     Answers to the Complaint and Crossclaim were filed by AIAC and KKBIC on June 15, 2022 (ECF Nos. 104 – 106).

48.     An Opinion and Order granting class certification was entered August 17, 2022 (ECF No. 129).

49.     The Dissolution Receiver filed her Second Amended Answer and Crossclaim on September 20, 2022 (ECF No. 137).

50.     AIAC, KKBIC and KK Bakery Holding Acquisition Company filed their Answer to the Dissolution Receiver's Second Amended Answer and Crossclaim on October 11, 2022 (ECF No. 145).

51.     Pursuant to the Stipulated Revised Discovery Schedule/Order entered October 5, 2022 (ECF No. 144) discovery was to be completed November 30, 2022, and dispositive motions were due January 3, 2023.  Pursuant to the Court's Order of December 21, 2022 (ECF No. 161) following a hearing that day, the deadline for dispositive motions was extended to February 28, 2023, and thereafter further extended to March 31, 2023.

Dated: March 31, 2023                    **DENTONS US LLP**


                                    By:   */s/ Peter D. Wolfson*
                                          Peter D. Wolfson (admitted pro hac vice)
                                          Arthur H. Ruegger (admitted pro hac vice)
                                          1221 Avenue of the Americas
                                          New York, NY 10021
                                          Tel.: (212) 768-6700
                                          Email: peter.wolfson@dentons.com
                                                 arthur.ruegger@dentons.com

                                    **PHILLIPS, DUNN, SHRIVER & CARROLL, P.C.**
                                    David Dunn, Esq.
                                    147 Western Avenue
                                    Brattleboro, VT 05301
                                    Tel.: (802) 257-7244, ext. 112
                                    Email: ddunn@pdsclaw.com

13

**SHEEHEY FURLONG & BEHM, P.C.**
Ian P. Carleton, Esq.
30 Main Street, 6th floor
P.O. Box 66
Burlington, VT 05402-0066
Tel.: (802) 864-9891
Email: icarleton@sheeheyvt.com

*Counsel to Intervenor-Defendant-Crossclaimant*
*Linda Joy Sullivan, Dissolution Receiver for*
*Koffee Kup Bakery, Inc*
*Vermont Bread Company and*
*Superior Bakery, Inc.*

14

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT

MATTHEW CHANEY, NADINE )
MILLER, AND ARTHUR GUSTAFSON, )
ON BEHALF OF THEMSELVES AND )
ALL OTHERS SIMILARLY SITUATED, )
        Plaintiffs, )
 )
     v. )
 )
VERMONT BREAD COMPANY, )
SUPERIOR BAKERY, INC., KOFFEE )
KUP BAKERY, INC., KOFFEE KUP )
DISTRIBUTION, LLC, KK BAKERY )
INVESTMENT COMPANY LLC, KK )
BAKERY HOLDING ACQUISITION )
COMPANY, AND AMERICAN )
INDUSTRIAL ACQUISITION )
CORPORATION, )
        Defendants. )
 )
_____ )    Docket No. 2:21-cv-120-wks
 )
LINDA JOY SULLIVAN, IN HER )
CAPACITY AS THE DISSOLUTION )
RECEIVER FOR KOFFEE KUP )
BAKERY, INC., VERMONT BREAD )
COMPANY, INC., AND SUPERIOR )
BAKERY, INC., )
        Intervenor- )
        Defendant- )
        Crossclaimant, )
 )
     v. )
 )
KK BAKERY INVESTMENT )
COMPANY, LLC, KK BAKERY )
HOLDING ACQUISITION COMPANY, )
AND AMERICAN INDUSTRIAL )
ACQUISITION CORPORATION, )
 )
        Crossclaim )
        Defendants. )

**DEFENDANTS KK BAKERY INVESTMENT COMPANY LLC'S & AMERICAN INDUSTRIAL ACQUISITION CORPORATION'S MOTION FOR SUMMARY JUDGMENT**

Defendants, KK Bakery Investment Company LLC ("KKBIC") & American Industrial Acquisition Corporation ("AIAC"), by and through counsel, move pursuant to Federal Rule of Civil Procedure 56 for Motion for Summary Judgment dismissing the First Amended Complaint or Granting Alternative Relief. Defendants' position is set forth in the affidavit of Jeff Sands, with exhibits, and the Memorandum of Law filed herewith and incorporated herein.

**CONCLUSION**

American Industrial Acquisition Corporation and KK Bakery Investment Company LLC request this Court to grant Summary Judgment dismissing the First Amended Complaint or Granting Alternative Relief.

Dated: March 31, 2023

**McCormick, Fitzpatrick, Kasper & Burchard P.C**
*Attorney for Defendants*
*American Industrial Acquisition Corporation*
*and KK Bakery Investment Company, LLC*

By: /s/ Daniel L. Burchard
Daniel L. Burchard, Esq.
40 George Street, P.O Box 638
Burlington, Vermont 05402-0638
(802) 863-3494 x127

2

**KIRWAN LAW**
*Attorney for Defendants*
*American Industrial Acquisition Corporation*
*and KK Bakery Investment Company, LLC*

By:/s/ Terry J. Kirwan, Jr.
Terry J. Kirwan, Jr.
Bar Roll #501821
2401 Burnet Avenue
Syracuse, New York 13206
(315) 452-2443
tkirwan@kirwanlawpc.com

3

JA-369

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF VERMONT

MATTHEW CHANEY, NADIE MILLER )
and ARTHUR GUSTAFSON on behalf of )
themselves and all others similarly )
situated, )
     Plaintiffs, )

    v. )

VERMONT BREAD COMPANY, )
SUPERIOR BAKERY, INC., KOFFEE )
KUP BAKERY, INC., KOFFEE KUP )
DISTRIBUTION, LLC, KK BAKERY )
INVESTMENT COMPANY LLC, KK )
BAKERY HOLDING ACQUISITION )
COMPANY, AND AMERICAN )
INDUSTRIAL ACQUISITION )
CORPORATION, )
     Defendants. ))

LINDA JOY SULLIVAN in her capacity )
as the dissolution receiver for Koffee Kup )
Bakery, Inc., Vermont Bread Company, )
Inc. and Superior Bakery, Inc., )

   Intervenor-Defendant )
   Cross-Claimant, )

    v. )

KK BAKERY INVESTMENT )
COMPANY, LLC KK BAKERY )
HOLDING ACQUISITION COMPANY, )
AND AMERICAN INDUSTRIAL )
ACQUISITION CORPORATION, )

   Crossclaim-Defendants. )

**MEMORANDUM OF LAW IN SUPPORT OF AMERICAN INDUSTRIAL AQUISITION CORPORATION'S AND KK BAKERY HOLDING ACQUISITION COMPANY'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO F.R.C.P. RULE 56**

Docket No. 2:21-cv-120-wks

1

JA-370

## TABLE OF CONTENTS

Table of Authorities ………………………………………………………… 3

Introduction ……………………………………………………………… 4

Factual Background ……………………………………………………… 4-11

    AIAC's Absence of Involvement …………………………………….. 5

    Hidden Financials and the Company's Insolvency ……………….. 5-6

    Realization of the Sellers' Fraud …………………………………….. 6-8

    Lender's Reaction …………………………………………………….... 8-9

    Anticipated Negative Effect of WARN Notice ………………………….. 9

    Attempt to Keep the Company Operational ……………………………. 9-11

Rule 56 Standard ………………………………………………………… 11-12

Closures Under the WARN Act ………………………………………….. 12-13

Argument ………………………………………………………………… 13

    Point I – The Company and KKBIC Are Not a Single Employer ……… 13-14

    Point II - KKBIC is Exempt from the WARN Act 60-Day
           Notice Requirement ………………………………………... 15-20

        A.    Business Circumstances …………………………………. 16-18

        B.    Faltering Company ……………………………………… 18-20

    Point III – The Failure to Name Kup Co. as a Defendant is Fatal
           to the Complaint ………………………………………… 21-22

Conclusion ……………………………………………………………….. 22

**TABLE OF AUTHORITIES**

**CASES**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ……………………………   11

Amore v. Novarro, 624 F.3d 522 (2d Cir. 2010) …………………………………..   11

Carpenters Dist. Council of New Orleans & Vicinity v.
        Dillard Dep't Stores, Inc., 15 F.3d 1275, 1286 (5th Cir. 1994) …………   15, 19

D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998) ………………..   12

Dister v. Cont'l Grp., Inc., 859 F.2d 1108, 1114 (2d Cir. 1988) …………………..   12

Freeman v. Nw. Acceptance Corp., 754 F.2d 553 (5th Cir. 1985) ………………..   21

In re AE Liquidation, Inc., 866 F.3d 515 (3d Cir. 2017) ………………………….   16

In re APA Transp. Corp. Consol. Litig., 541 F.3d 233 (3d Cir. 2008) …………..   13,14,18

James v. Fleet/Norstar Fin. Grp., Inc., 992 F.2d 463, 465 (2d Cir. 1993) ………   15

Jurcev v. Central Community Hospital, 7 F.3d 618 (7th Cir. 1993) ……………..   19

Loehrer v. McDonnell Douglas Corp., 98 F.3d 1056, 1061 (8th Cir. 1996) ……..   16

Grimmer v. Lord Day & Lord, 937 F. Supp. 255 (S.D.N.Y. 1996) ………………   18-19

Rubler v. Unum Provident Corp., 2007 WL 188024 (S.D.N.Y. Jan. 25, 2007) ….   21

Wagner v. Swarts, 827 F. Supp. 2d 85 (N.D.N.Y. 2011) ………………………….   12

In re Tweeter OPCO, LLC., 453 B.R. 534 (Bankr. D. Del. 2011) …………………   19

**STATUTES**

F.R.C.P Rule 56 ……………………………………………………………………..   11
29 U.S.C. § 2101(a) …………………………………………………………………   12
29 U.S.C. § 2102(b) ……………………………………………………………….....   16,18
29 U.S.C. § 2104(a) ……………………………………………………………….....   13
N.Y. Comp. Codes R. & Regs. tit. 12, § 921-6.2 ………………………………………   18-19

3

JA-372

## INTRODUCTION

Defendants, KK Bakery Investment Company, LLC ("KKBIC") and American Industrial Acquisition Corporation ("AIAC"), by and through their counsel, Kirwan Law, Terry J. Kirwan, Jr., of counsel, submits this Memorandum of Law in support of their motion for summary judgment pursuant to F.R.C.P Rule 56 with respect to both the main claim and the Intervenor's crossclaim.

## FACTUAL BACKGROUND

KKBIC entered into the Agreement ("Agreement") to invest in Kup Co. through a purchase of certain shares of stock in Kup Co. Kup Co. which owned Koffee Kup Bakery, Inc. ("KKB"), which owned VBC, Inc. ("VBC") and Superior Bakery, Inc. ("SBI") (for clarity, KKB, VBC are collectively defined as the "Company").

Pursuant to the Agreement, on April 1, 2021, KKBIC acquired 992 shares of Kup Co.'s common stock, comprising 80% of Kup Co's outstanding shares. KKBIC also purchased $14,314,000 of Kup Co.'s subordinated debt for $1,000,000 in cash and a $2,000,000 note.

The counterparties to the Agreement (collectively "Sellers") were Kup Co., its existing shareholders: Bripan SARL, Socipar SAS, and 9249-9557 Quebec Inc.; and the subordinated debt holders: Jose Aubery, Bertrand Aubery, and Hubert Aubery. The Sellers' broker was G2 Capital Advisors LLC ("G2 Capital Advisors").

4

**AIAC's Absence of Involvement**

AIAC owned absolutely no equity or debt in Kup Co. or in Kup Co.'s subsidiaries. AIAC did not provide or loan any funds to KKBIC for its investment in Kup Co.  AIAC was not involved in the ownership, management and/or operation of the Company.  As such, AIAC is not a proper party to this action.

**Hidden Financials and the Company's Insolvency**

Prior to funding the investment, pursuant to the Agreement ("Closing"), KKBIC's representative, Jeff Sands ("Sands"), requested financial information concerning the sales & earnings of the Company for the third financial period of 2021 ("P3"), which ended March 21, 2021. The purpose was to determine if the Company was achieving its projected sales and earnings before interest, taxes, depreciation, and amortization ("EBITDA").

On March 18, 2021, G2 Capital Advisors sent KKBIC copies of the 2021 budget, which still forecast that the Company would nearly break even for P3.  The next day, on March 19, 2021, G2 Capital Advisors declared an information "blackout period" and prohibited KKBIC from contacting Kup Co.'s management directly.  On March 20, 2021, Sands requested an indication of P3 performance from both G2 Capital Advisors and Mark Coles ("Coles"), Kup Co's CFO.  Such requests went unanswered.

On March 21, 2021, Kup Co. finished P3 and had most sales and cost information in hand. The following day, on March 22, 2021, Sands again requested an indication of P3 performance from both G2 Capital Advisors and Coles. As before, such requests went unanswered. Yet again, on March 25, 2021, Sands inquired about the P3 information from

5

both Coles and G2 Capital Advisors.  Coles and G2 Capital Advisors indicated that there was no material change in sales from the projections provided.

The following day, on March 26, 2021, Sands requested P3 results again, and G2 Capital Advisors again indicated that there was no material change.  However, Sellers and G2 Capital Advisors failed to provide the true information, which was that the Company was far from meeting such expectations. Instead, the Sellers and their agents, repeatedly represented to KKBIC that the Company was on target to nearly break even for P3, as budgeted.

**Realization of the Sellers' Fraud**

Three business days after the Closing, after finally gaining access to the Company's true financials, KKBIC first learned that the Company's P3 gross sales were $963,693 below budget and EBITDA was ($919,649), against a budget of ($39,192), a wholly unacceptable variance of 2,247%. KKBIC also learned that the Sellers had projected a 10% decline in revenue but failed to factor that information into their financial forecasts.  These changes were material adverse changes.

KKBIC has since realized that on March 30, 2021, nine days after P3 ended and two days before the scheduled sale, Kup Co.'s Controller, Luke Morris, prepared the P3 financials, which he emailed to Coles for review. Coles reviewed and approved the P3 financials that same day. Copies of the relevant emails are attached to the Sands Affidavit as Exhibit "C."

Later, that same day at 3:31 pm, Sands emailed Coles seeking Kup Co.'s latest balance sheet. Three minutes later at 3:34pm, Coles forwarded Sands' email to Patricia Reinhardt ("Reinhardt") and Michael Williams ("Williams") of G2 Capital Advisors.  In his forwarding email, Coles stated "FYI, I have not responded to him yet." At 4:00 pm, Reinhardt emailed Coles "Let's chat first" and requested that his colleagues schedule a call between G2 Capital Advisors and Coles to discuss the issue.  After several scheduling emails, G2 Capital Advisors and Coles agreed to talk at 5:15 pm.

At 5:32 pm, after his conference with Reinhardt and Williams, Coles responded to Sands' 3:31 pm email by lying, indicating that he did not yet have the P3 financials, which as set forth above he had reviewed and approved earlier that day. The following day, March 31, 2021, neither G2 Capital Advisors nor Coles indicated any material change in the P3 results. Thus, they continued their plan to deceive KKBIC.

Based upon representations made by Sellers, in good faith, on April 1, 2021, KKBIC closed on the Agreement to purchase the common stock in Kup Co., believing that the projections had held true.  On April 2, 2021, KKBIC representatives arrived on site for the first time since the "blackout period." This is when Coles first admitted that the Company's sales had fallen dramatically short of the false projections supplied to the KKBIC. The following workday, April 5, 2021, Coles finally shared the hidden and true P3 financial information with KKBIC.

After discovering that the Sellers had withheld material financial information, to induce KKBIC to finalize its investment, it prepared a revised forecast of EBITDA and cash flow, which projected multi-million-dollar losses and a negative cash balance by the

7

end of 2021. These hidden losses and negative cash flow issues revealed that the Company was deeply insolvent and unable to continue its operations without a massive infusion of external capital, far beyond what KKBIC had been led to believe a required investment would be to sustain the business.

In short, the new projections based on the actual P3 results showed that instead of $500,000.00 to $1,000,000.00 million in cash required to fix the business, the Company actually required at least $4,000,000.00 in new cash injections (4 times what KKBIC was led to believe).

As a brief summary of the Company finances, it averaged around $70,000,000.00 in annual revenues and lost $3,600,000.00 in 2020. KKBIC believed that progress and changes made by management of KupCo, in 2021 could improve profits by $5,000,000.00, netting the Company a slight profit. This is what induced KKBIC to make an investment to save the Company. After the true P3 results were revealed, it became obvious that the Company would lose millions more than the Sellers' false projections indicated. Moreover, keeping the Company operational required a profit improvement of nearly $10,000,000.00. This magnitude of profit improvement was not feasible.

**Lender's Reaction**

The following day, April 6, 2021, KKBIC informed Key Bank, KKB's senior secured lender, of both the Sellers' deception and the deeply insolvent state of the Company. In response to the newly revealed P3 financial information, on April 9, 2021, Key Bank issued a default notice to the Company and hired an outside advisor, Ron Teplitsky, who, ultimately, became the Key Bank Receiver. Key Bank also informed Kup Co. that it would

8

not extend its forbearance agreement and would not fund the Company's payroll unless the Company cooperated with the bank in the assignment of a Key Bank Receiver and the liquidation of the bank's collateral. To ensure that its employees would be paid, the shareholders of Kup Co. acquiesced.

**Anticipated Negative Effect of WARN Notice**

A WARN notice issued by Kup Co. would have absolutely prohibited an external investment and prevented a possible future sale of the Company as a going concern. Going concern status entailed maintaining the operating mode of the Company including the employment of its workforce.

Moreover, while customers were shielded from the upheaval, even the whispers of the potential of missing a day of deliveries would have cost the Company its valuable shelf space in its customers' stores.  The loss of such shelf space would have killed the Company's on-going-value and eliminated any chance to sell the Company to a qualified buyer and to keep operations intact.

**Attempt to Keep the Company Operational**

Upon finding itself deceived into investing in a shockingly insolvent business, unable to rescind its investment and without bank support, Kup Co. sought additional ways to solve its financial problems. Not being able to raise the necessary infusion of funds, the only feasible solution was to find a buyer with overlapping production, distribution and administrative costs.  Such a buyer could merge Kup Co. into its existing business, eliminating redundancies and achieving the necessary profit improvement.

JA-378

Issuing a WARN notice would have scared off the Company's employees and customers, killing the Company's going-concern-value. Without maintaining a going-concern-value, any potential buyers would lose interest in purchasing the Company, which Kup Co. was attempting to avoid.

In an attempt to save the Company, Kup Co. immediately reached out to two qualified buyers, Gold Coast Bakery ("Gold Coast") and SatisPie Bakery ("SatisPie"). During the week of April 12-16, 2021, Kup Co. presented the opportunity to purchase the Company to both Jeff Black ("Black"), the owner of Gold Coast, and Mike Pinkowski ("Pinkowski"), the owner of SatisPie, trying to sell the Company and maintain its going-concern-value.

While Kup Co. was happy to sell, both Black and Pinkowski knew they needed to negotiate directly with Key Bank on the defaulted debt.  Pinkowski promised to tour the facilities and meet with Sands on Saturday April 17, 2021, but he never showed up for the meeting. Thereafter, on April 19, 2021, Key Bank informed Sands that it no longer considered Pinkowski a credible buyer and would not support him in a purchase of the Company. This left Black as the only qualified buyer who could consummate a sale quickly enough to preserve the going-concern-value of the Company. However, Black never made an offer.

On April 20, 2021, Sands sent a memo titled "KKB Viability Assessment with Recommendation" to Kup Co.'s stakeholders including the Buyer, Seller and lenders Key Bank and Vermont Economic Development Agency, informing them that the Company was out of money and that "without a credible white knight buyer, the company is adrift

10

and on a "march to liquidation." A copy of such memo is attached to the Sands Affidavit as Exhibit "F." Sands pleaded for the stakeholders to "preserve going concern value and develop optionality" and suggested this would require an immediate cash infusion of $500,000.00 to "cover payroll and minimal supply needs."

Then, on Thursday April 22, 2021, Key Bank issued a formal notice of default, accelerated the amounts due under its Term Loan and Line of Credit, and communicated that it intended to exercise its rights under the loan agreements and foreclose. Immediately thereafter, the Company retained specialist labor attorneys to guide it through the layoff and WARN process. After a hurried initial attempt to deliver WARN notices on April 23, 2021, which was unsuccessful, the Company terminated its operations and employees, issuing a Worker Adjustment and Retraining Notification Act ("WARN Act") notice to its employees on Monday April 26, 2021.

### RULE 56 STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.C.P. Rule 56(a); see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.")(emphasis in original).

When weighing the material facts, "[t]he court construes all evidence in the light most favorable to the non-moving party, drawing all inferences and resolving all ambiguities in [its] favor." Amore v. Novarro, 624 F.3d 522, 529 (2d Cir. 2010). Thus, the

11

party seeking summary judgment "must demonstrate the absence of genuine issues of material fact, a burden it can [only] meet if it can point to an absence of evidence to support an essential element of the nonmoving party's claim." Wagner v. Swarts, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), aff'd sub nom (citations omitted).

"A genuine dispute over a material fact only arises if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." Dister v. Cont'l Grp., Inc., 859 F.2d 1108, 1114 (2d Cir. 1988)(citations omitted). However, "[t]he non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998).

In this case, as more fully provided herein, neither KKBIC nor AIAC is liable under the WARN Act and the Court should grant their motion for summary judgment pursuant to F.R.C.P. Rule 56, in its entirety.

## CLOSURES UNDER THE WARN ACT

The WARN Act defines a plant closing as the shutdown of a single site of employment that "results in an employment loss [] during any 30-day period for 50 or more employees excluding any part-time employees." 29 U.S.C. § 2101(a)(2).

A "mass layoff [] results in an employment loss at the single site of employment during any 30-day period for -- (i)(I) at least 33 percent of the employees (excluding any part-time employees); and (II) at least 50 employees (excluding any part-time employees); or (ii) at least 500 employees (excluding any part-time employees)." 29 U.S.C. § 2101(a)(3).

12

In this case, the dire financial circumstances of the Company, which the Sellers misrepresented and concealed from KKBIC, crippled the Company. Indeed, the Company was unable to continue operating, so enormous was the level of the losses. Thus, the Company was forced to lay off all its employees.

## ARGUMENT

## POINT I

## NEITHER KKBIC NOR AIAC IS A SINGLE EMPLOYER WITH THE COMPANY

The Second Circuit follows a simple balancing test to determine if related companies comprise a "single employer" for the purposes of the WARN Act. In re APA Transp. Corp. Consol. Litig., 541 F.3d 233, 243 (3d Cir. 2008), as amended (Oct. 27, 2008). Such balancing test involves the review of the following five factors: "(1) common ownership, (2) common directors and/or officers, (3) de facto exercise of control, (4) unity of personnel policies emanating from a common source, and (5) dependency of operations. Id. (citations omitted).

The APA Court further noted:

> the five-factor test [is] a balancing test in which a number of facts and circumstances may be relevant. However, the factors are not balanced equally: the first and second factors, common ownership and common directors and/or officers, are not sufficient to establish that two entities are a single employer. [O]wnership—and even ownership coupled with common management—is not a sufficient basis for liability.

Id. (citations omitted).

13

JA-382

In this case, as set forth in the accompanying Sands Affidavit:

- Neither AIAC nor KKBIC possessed de facto control over the Company's operations, which, prior to the Closing, was in a financial position under which it could no longer continue operating.

- The Company's personnel policies were established prior to the Closing, by the previous owners, and neither AIAC nor KKBIC changed such policies. Thus, the personnel policies of AIAC, KKBIC and the Company did not originate from a common source.

- AIAC, KKBIC and the Company each "possessed its own employees and its own policies regarding compensation, vacation and sick time; that the companies hired and fired employees on an individual basis; and that personnel files were maintained separately." See id. at 244.

- The Company was "autonomous in terms of finances because [it] had independent wage rates, pay scales, salaries and payrolls." Id. at 243.

- Neither AIAC nor KKBIC was involved with the operation of the Company, including the Company's employment actions (e.g. hiring, payroll, promotions, terminations, layoffs).

- All decisions were discussed and voted upon by the Board of Kup Co., not the KKBIC or AIAC.

See Sands Affidavit, ¶¶ 7, 47-57.

Thus, KKBIC and the Company are not a single employer, and KKBIC is not liable for the layoff of the Company's employees. Likewise, AIAC and the Company are not a single employer, and AIAC is not liable for the layoff of the Company's employees. See APA. As such the Court should grant AIAC's and KKBIC's motion for summary judgment pursuant to F.R.C.P. Rule 56, in its entirety.

JA-383

## POINT II

### KKBIC ARE EXEMPT FROM THE WARN ACT
### 60-DAY NOTICE REQUIREMENT

The WARN Act ("Act") requires employers to provide written notice to its employees 60 days before ordering a plant closing or a mass lay-off. 29 U.S.C. § 2102(a); James v. Fleet/Norstar Fin. Grp., Inc., 992 F.2d 463, 465 (2d Cir. 1993); Carpenters Dist. Council of New Orleans & Vicinity v. Dillard Dep't Stores, Inc., 15 F.3d 1275, 1286 (5th Cir. 1994). Employers that fail to provide the 60-day notice, absent one of the recognized exceptions, is liable to the affected employees for back pay and benefits for the extent of the violation. See 29 U.S.C. § 2104(a); Carpenters Dist. at 1286 ("[I]f an employee receives less than sixty days' notice, then the employee is entitled to back pay for each day of the violation period.")(citations omitted).

Sixty days prior to the liquidation, when the Company determined it was not prudent to issue the WARN Notice, under the exemptions listed below, KKBIC was not an investor in the Company, had never met with management of the Company, shared no common ownership, management, board members or officer positions.  Therefore, KKBIC could not have participated in the preparation of a WARN Notice in compliance with the WARN Act.

Once KKBIC invested in Kup Co., KKBIC and Kup Co. were not a single employer and therefore, since KKBIC was not an employer, KKBIC had no authority to make personnel decisions on behalf of Kup Co. even after making an investment into the

15

JA-384

Company.  Furthermore, as an investor in Kup Co., KKBIC is further exempted from the WARN Act provision.

### A.    Business Circumstances

Pursuant to the Act "[a]n employer may order a plant closing or mass layoff before the conclusion of the 60-day period if the closing or mass layoff is caused by **business circumstances** that were not reasonably foreseeable as of the time that notice would have been required." 29 U.S.C. § 2102(b)(2)(A)(emphasis added).

"To successfully invoke an unforeseeable business circumstances defense to liability under the Worker Adjustment and Retraining Notification Act (WARN Act), an employer must demonstrate (1) that the business circumstances that caused the layoff were not reasonably foreseeable, and (2) that those circumstances were the cause of the layoff." In re AE Liquidation, Inc., 866 F.3d 515 (3d Cir. 2017) (citations omitted). The Act allows flexibility based upon the business judgment rule. See Loehrer v. McDonnell Douglas Corp., 98 F.3d 1056, 1061 (8th Cir. 1996), noting:

> [t]he Act … necessarily recognize that even the most conscientious employers are not perfect, and they thus **allow needed flexibility for predictions about ultimate consequences** that, though objectively reasonable, proved wrong.  So long as it may still fairly be said that the eventual plant closing or mass layoff is caused by a sudden, dramatic, and unexpected event outside the employer's control, the exception applies.

Id. (citations omitted) (emphasis added).

In this case, the deep, intractable insolvency of the Company, particularly its wildly inaccurate budget, ongoing negative cash flow position and deep capital hole, was

16

an unforeseen business circumstance that KKBIC, as a new Shareholder, could not have realized prior to the Closing. Indeed, the Sellers', the Company's CFO, and the Company's investment banker all materially misrepresented the upcoming P3 income statement results to KKBIC. See Sands Affidavit, ¶¶ 8,9,11, 14, 16-20. Moreover, as detailed above, once learning the true extent of the Company's financial despair, KKBIC immediately attempted to remedy the situation by actively seeking capital and/or a suitable investor or purchaser to keep the Company operational. See Sands Affidavit, ¶¶ 30-32. However, such efforts failed (i.e. no investor that sought to maintain the Company as a going concern was approved by Key Bank) through no fault of KKBIC. See Sands Affidavit, ¶¶ 33-34.

Moreover, because of the hidden financial despair, the Company's key lender called its loan, accelerating the payment and forcing the Company to liquidate. This unexpected and unforeseen acceleration further diminished the Company's ability to continue its operations, forcing it to terminate its employees. See Sands Affidavit, ¶38.

KKBIC could not have expected that the Company was insolvent, based upon the operating budgets and cash projections presented to the Buyer prior to the Closing. Frankly, KKBIC would never have closed on the investment had it known the Company's true financial position and its inability to pay its debts, especially payroll. However, as detailed above, KKBIC used its best efforts to obtain financing and/or sell the Company to a qualified buyer or investor to avoid shutting down the Company's operations.

The undisputed facts show that stopping the Company's operations was due to business circumstances which were hidden and not at all foreseeable by KKBIC at the

17

time notice would have been required, February 26, 2021, which was prior to KKBIC purchasing the Company. As such, KKBIC qualifies for the business circumstances exception to the Act and the Court should grant its motion for summary judgment pursuant to F.R.C.P. Rule 56, in its entirety.   The State of Vermont's Labor Department reached such a decision concerning the applicability of the exception to the WARN Act. See Sands Affidavit, ¶43.

### B.   Faltering Company

Another exception to the Act's notice requirement is the faltering company exception. "In re APA Transp. Corp. Consol. Litig., 541 F.3d 233, 240 (3d Cir. 2008), as amended (Oct. 27, 2008).

Pursuant to the faltering company exception:

> [a]n employer may order the shutdown of a single site of employment before the conclusion of the 60-day period if as of the time that notice would have been required the employer was actively seeking capital or business which, if obtained, would have enabled the employer to avoid or postpone the shutdown and the employer reasonably and in good faith believed that giving the notice required would have precluded the employer from obtaining the needed capital or business.

29 U.S.C. § 2102(b)(1); see Grimmer v. Lord Day & Lord, 937 F. Supp. 255, 256 (S.D.N.Y. 1996)([T]he altering company exception[] permits an employer to order the shutdown of a site of employment less than sixty days after giving notice … .")(citations omitted); see also N.Y. Comp. Codes R. & Regs. tit. 12, § 921-6.2 ("[T]he employer shall establish that at the time notice of the plant closing, mass layoff, relocation, or covered reduction in work hours would have been required: (1) the employer was **actively seeking capital** or

18

JA-387

business and identifies the specific actions taken to obtain such capital or business. For example, the employer must demonstrate its efforts to obtain financing or refinancing through the arrangement of loans, the issuance of stocks, bonds, or other methods, or to obtain additional money, credit, or business through any other commercially reasonable method; and (2) there was a **realistic opportunity to obtain the capital** or business sought; and (3) the capital or business sought would have been **sufficient to enable the facility, operating unit, or site to avoid or postpone the plant closing**, mass layoff, relocation, or covered reduction in work hours; and (4) the employer reasonably and in good faith believed that giving notice would have precluded the ability to obtain the needed capital or business. The employer must be able to objectively demonstrate that a potential customer or financing source would have been unwilling to provide the new business or capital if notice were given.")(emphasis added).

The faltering business exception applies when a mass layoff or shutdown is caused by the employer's failure to obtain sufficient capital. Carpenters District Council of New Orleans v. Dillard Dept. Stores, 15 F.3d 1275, 1281 (5th Cir. 1994). The exception was created because it is not the purpose of the WARN Act to require an employer to continue in business to its detriment for 60 days simply because it is economically feasible or possible to do so. Jurcev v. Central Community Hospital, 7 F.3d 618 (7th Cir. 1993).

A "WARN Act employer must meet specific requirements to invoke the faltering company exception to liability under the WARN Act for failing to provide employees with 60-day notice of termination by (1) giving as much notice as is practicable, and (2)

setting forth specific facts in notice that explain reason for reducing notice period." In re Tweeter OPCO, LLC., 453 B.R. 534 (Bankr. D. Del. 2011)(citations omitted).

In this case, Kup Co. sought outside capital investment, and in fact, had induced KKBIC to invest in Kup Co. with the hopes of saving the operations.  Once it was determined that KKBIC received fraudulent information during its underwriting and due diligence, KKBIC realized the Company would require additional capital beyond its resources to sustain the operations.  KKBIC then worked with Kup Co. seeking external infusion of funds to raise the needed capital to continue the Company's operations. See Sands Affidavit, ¶30.

Having not been able to raise the necessary infusion of funds, KKBIC sought a true strategic buyer, another bakery with overlapping production, distribution and administration who could realize up to $10,000,000.00 in savings by eliminating redundancies.  See Sands Affidavit 27, 30-34.

Once such efforts failed, the Company provided the required notice as soon as possible.  See Sands Affidavit, ¶39.  This notice ("Notice") provided facts sufficient to explain the reduction in notice period. A copy of the Notice is attached to the Sands Affidavit as Exhibit "G."

As such, the Company qualifies for the faltering business exception to the Act and the Court should grant KKBIC's  and AIAC's motion for summary judgment pursuant to F.R.C.P. Rule 56, in its entirety.

20

POINT III

**THE FAILURE TO JOIN KUP CO. AS A DEFENDANT
IS FATAL TO PLAINTIFFS' CLAIMS**

Subsidiaries are necessary parties where the parent and subsidiary are separate legal entities and the parent's liability is based on the wrongdoing of the subsidiary. See Freeman v. Nw. Acceptance Corp., 754 F.2d 553, 555 (5th Cir. 1985) (finding the subsidiary a necessary party where, "[a]lthough [parent company] was the only named defendant, the conduct complained of was that of [the parent's] wholly-owned subsidiary"); Rubler v. Unum Provident Corp., 2007 WL 188024, at *3 (S.D.N.Y. Jan. 25, 2007) (finding the subsidiary necessary where it "is still a separate legal entity with separate rights and obligations from [the parent company], and it is [the subsidiary's] rights and obligations that are at the heart of this case").

In this case, it was the conduct of Kup Co., making the decision to implement the layoff of the employees of its subsidiaries, which is at the heart of the Plaintiffs' Complaint. Kup Co. had formal board of directors' meetings at which the wind down of the Company was discussed and voted upon. Kup Co. issued WARN Act letters to employees of the Kup Co. subsidiaries. Kup Co. hired labor law specialists to properly handle the WARN Act issues. Kup Co. and KKBIC are sperate legal entities and, as such, Kup Co's obligations are separate from KKBIC. The Defendants have supplied all such documents to the Plaintiffs. For reasons known only to the Plaintiffs, the Plaintiffs have

21

JA-390

willfully chosen to ignore the mountain of evidence that clearly demonstrate Kup Co.'s central role as the decision maker with regard to the implementation of the WARN Act and as the issuer of the WARN Act letters to employees.  As such, the Plaintiffs knowingly and willfully failed to name a proper and necessary party, Kup Co., and the Court should grant the Defendants' motion for summary judgment and dismiss the Complaint.

## CONCLUSION

For the foregoing reasons, the Court should grant AIAC's & KKBIC's motion for summary judgment pursuant to F.R.C.P Rule 56 and dismiss both the main claim and crossclaim against KKBIC and AIAC, in its entirety.

Dated:  March 31, 2023
       Syracuse, New York

Respectfully submitted,

**KIRWAN LAW**
*Attorneys for Defendants*
*American Industrial Acquisition Corporation and*
*KK Bakery Investment Company, LLC*

By: /s/ Terry J. Kirwan, Jr.
    Terry J. Kirwan, Jr.
    (Bar Roll #501821)
    2401 Burnet Avenue
    Syracuse, New York 13206
    Telephone: 315.452.2443
    tkirwan@kirwanlawpc.com

McCormick, Fitzpatrick, Kasper & Burchard P.C
*Attorney for Defendants*
*American Industrial Acquisition Corporation and*
*KK Bakery Investment Company, LLC*

By: /s/ Daniel L. Burchard
Daniel L. Burchard, Esq.
40 George Street, P.O Box 638
Burlington, Vermont 05402-0638
Telephone: (802) 863-3494 x127
dlb@mc-fitz.com

22

JA-391

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF VERMONT

MATTHEW CHANEY, NADIE MILLER and ARTHUR GUSTAFSON on behalf of themselves and all others similarly situated,

                    Plaintiffs,

       v.

VERMONT BREAD COMPANY, SUPERIOR BAKERY, INC., KOFFEE KUP BAKERY, INC., KOFFEE KUP DISTRIBUTION, LLC, KK BAKERY INVESTMENT COMPANY LLC, KK BAKERY HOLDING ACQUISITION COMPANY, AND AMERICAN INDUSTRIAL ACQUISITION CORPORATION,

                    Defendants.

_____

LINDA JOY SULLIVAN in her capacity as the dissolution receiver for Koffee Kup Bakery, Inc., Vermont Bread Company, Inc. and Superior Bakery, Inc.,

        Intervenor-Defendant
        Cross-Claimant,

       v.

KK BAKERY INVESTMENT COMPANY, LLC KK BAKERY HOLDING ACQUISITION COMPANY, AND AMERICAN INDUSTRIAL ACQUISITION CORPORATION,

        Crossclaim-Defendants.

**KK BAKERY INVESTMENT COMPANY LLC'S & AMERICAN ACQUISITION COMPANY'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

Docket No. 2:21-cv-120-wks

1

Defendants, KK Bakery Investment Company, LLC ("KKBIC") and American Industrial Acquisition Corporation ("AIAC"), by and through their counsels, Kirwan Law, Terry J. Kirwan, Jr., of counsel and McCormick, Fitzpatrick, Kasper & Burchard, P.C., Daniel L. Burchard, submits this Statement of Undisputed Material Facts in support of their motion for summary judgment pursuant to F.R.C.P Rule 56 with respect to both the main claim and the Intervenor's crossclaim.

1.    American Industrial Acquisition Corporation ("AIAC") and KK Bakery Investment Company LLC ("KKBIC") two of the defendants in the above-referenced action. See Complaint, generally.

3.    KKBIC entered into an agreement to invest in Kup. Co. through the purchase of certain shares of stock ("Agreement"). See Affidavit of Jeff Sands, sworn to on March 31, 2023 ("Sands Affidavit"), ¶3.

4.    The counterparties to the Agreement (collectively "Sellers") were Kup Co., its existing shareholders: Bripan SARL, Socipar SAS, and 9249-9557 Quebec Inc.; and the subordinated debt holders: Jose Aubery, Bertrand Aubery, and Hubert Aubery. See Sands Affidavit, ¶3.

5.    The Sellers' broker was G2 Capital Advisors LLC ("G2 Capital Advisors"). See Sands Affidavit, ¶4.

6.    Kup Co. owned Koffee Kup Bakery, Inc. ("KKB"), which owned VBC, Inc. and Superior Bakery, Inc. (collectively "Company").  See Sands Affidavit, ¶5.

7.    AIAC owned no equity or debt in KKBIC, Kup Co. or in Kup Co.'s subsidiaries.  See Sands Affidavit, ¶7.

2

JA-393

8. AIAC did not loan any funds to KKBIC for its investment in Kup Co. See Sands Affidavit, ¶7.

9. AIAC was not involved in the ownership, management and/or operation of the Company. See Sands Affidavit, ¶7.

10. AIAC had absolutely no interest in, or control of, KKBIC or the Company. See Sands Affidavit, ¶7.

11. Prior to the closing on the Agreement ("Closing"), as a representative of KKBIC, Sands requested financial information concerning the sales & earnings of the Company for the third financial period of 2021 ("P3"), which ended March 21, 2021. The purpose was to determine if the Company was achieving its projected sales and earnings before interest, taxes, depreciation, and amortization ("EBITDA"). See Sands Affidavit, ¶8.

12. On March 18, 2021, G2 Capital Advisors sent KKBIC copies of the 2021 budget, which still forecasted that the Company would nearly break even for P3. See Sands Affidavit, ¶9.

13. On March 19, 2021, G2 Capital Advisors declared an information "blackout period" and prohibited KKBIC from contacting Kup Co.'s management directly. See Sands Affidavit, ¶10.

14. On March 20, 2021, Sands requested an indication of the Company's P3 performance from both G2 Capital Advisors and Mark Coles ("Coles"), Kup Co.'s CFO. Such requests went unanswered. See Sands Affidavit, ¶11.

15.     On March 21, 2021, Kup Co. finished P3. See Sands Affidavit, ¶12.

16.     On March 22, 2021, Sands again requested an indication of the Company's P3 performance from both G2 Capital Advisors and Coles. Such requests went unanswered. See Sands Affidavit, ¶12.

17.     On March 25, 2021, Sands inquired about the Company's P3 information from both Coles and G2 Capital Advisors.  Coles indicated that sales were slightly off for the period while G2 Capital Advisors also indicated that there was no material change. See Sands Affidavit, ¶13.

18.     On March 26, 2021, Sands again requested the Company's P3 results and again G2 Capital Advisors indicated that there was no material change from the budgeted projections. See Sands Affidavit, ¶14.

19.     On April 5, 2021, after having access to the Company's true financials, KKBIC and Sands first learned that the Company's P3 gross sales were $963,693 below budget, and EBITDA was negative $919,649, against a budget of negative $39,192, a variance of 2,247%. See Sands Affidavit, ¶15.

20.     KKBIC and Sands also subsequently learned that the Sellers had projected a 10% decline in revenue but failed to factor that information into their financial forecasts. See Sands Affidavit, ¶16.

21.     The Sellers and their agents repeatedly represented to Sands and KKBIC that the Company was on target to nearly break even for P3, as budgeted.  See Sands Affidavit, ¶17.

22.     After P3 ended and two days before the scheduled Closing, Kup Co.'s Controller, Luke Morris, prepared the P3 financials, showing the deficits which he sent to Coles. See Sands Affidavit, ¶18.

23.     On March 30, 2021 at 5:32 pm, Coles responded to Sands by untruthfully indicating that he did not yet have the P3 financials.  See Sands Affidavit, ¶20.

24.     On March 31, 2021, neither G2 Capital Advisors nor Coles indicated any material change in the P3 results. See Sands Affidavit, ¶20.

25.     On April 1, 2021, KKBIC closed on the Agreement.  See Sands Affidavit, ¶21.

26.     On April 2, 2021, KKBIC Coles first admitted that the Company's sales had fallen dramatically short of the false projections supplied to KKBIC. See Sands Affidavit, ¶22.

27.     On April 5, 2021, Coles finally shared the hidden and true P3 financial information with KKBIC.  See Sands Affidavit, ¶22.

28.     A forecast based upon the true financials projected substantial, multi-million-dollar losses and a negative cash balance by the end of 2021. See Sands Affidavit, ¶23.

29.     At the time of the Closing, the Company was deeply insolvent and unable to continue its operations or employ a workforce without a massive infusion of external capital. See Sands Affidavit, ¶24.

30.     The new forecast, which was based on the actual P3 results, showed that instead of requiring around $1,000,000 in new cash to fix the Company, it required closer

5

to $4,000,000 in new cash injections. See Sands Affidavit, ¶25.

31.     On April 6, 2021, KKBIC informed Key Bank, KKB's senior secured lender, of both the Sellers' deception and the deeply insolvent state of the Company. See Sands Affidavit, ¶28.

32.     On April 9, 2021, Key Bank issued a default notice. See Sands Affidavit, ¶28.

33.     Key Bank also informed the Company that it would neither extend its forbearance agreement with the Company nor fund the Company's payroll unless the Company cooperated in the assignment of a Key Bank Receiver and the liquidation of the bank's collateral. See Sands Affidavit, ¶29.

34.     KKBIC attempted to secure external funding or a new investor to keep the Company operational.  See Sands Affidavit, ¶30.

35.     To save the Company, Sands, on behalf of Kup Co. reached out to two qualified investors, Gold Coast Bakery ("Gold Coast") and SatisPie Bakery ("SatisPie"). It was realistic to believe either Gold Coast or SatisPie would invest in the Company due to their existing bakery operations and that each had bid against KKBIC in the recent auction process.  See Sands Affidavit, ¶31

36.     If such a transaction occurred, the Company could have remained operational and maintained its going-concern-value.  See Sands Affidavit, ¶31.

37.     Neither Gold Coast nor SatisPie made an offer that was acceptable to Key Bank.  See Sands Affidavit, ¶¶ 33-34.

38.     On April 22, 2021, Key Bank issued a formal notice of default, accelerated the amounts due under its Term Loan and Line of Credit, and stated that it intended to

exercise its rights under the loan agreements and foreclose. See Sands Affidavit, ¶38.

39.     The Company due to the Company's insolvency was forced to terminate its operations and employees, issuing a Worker Adjustment and Retraining Notification Act ("WARN Act") notice to its employees, on April 26, 2021.  See Sands Affidavit, ¶39.

40.     The State of Vermont's Labor Department determined that the Company was exempt from the notice requirement of the WARN Act.  See Sands Affidavit, ¶44.

41.     Kup Co., the entity that made all decisions for the Company, maintained separate and distinct directors and officers from KKBIC.  See Sands Affidavit, ¶49.

42.     As noted above, AIAC was not involved with either KKBIC, Kup Co., or Kup Co's subsidiaries.  See Sands Affidavit, ¶49.

43.     Neither KKBIC nor the Company was dependent upon the other and each operated as a separate and distinct corporate identity.  See Sands Affidavit, ¶50.

44.     KKBIC exercised no control over the operations of the Company.    See Sands Affidavit, ¶51.

45.     KKBIC did not participate in the day-to-day operations of the Company nor did it direct any of the Company's corporate policies or practices.    See Sands Affidavit, ¶52.

46.     KKBIC and the Company did not share employees.  See Sands Affidavit, ¶54.

47.     The Company hired and fired their own employees and separately maintained the personnel files of their employees.  See Sands Affidavit, ¶58.

7

48.     The Company had independent wage rates, pay scales, salaries and payrolls.   See Sands Affidavit, ¶59.

49.     Neither AIAC nor KKBIC provided operational funding to the Company. See Sands Affidavit, ¶60.

50.     Neither AIAC nor KKBIC was involved with the operation of the Company. See Sands Affidavit, ¶61.

51.     All the decisions regarding the Company's operations, including the shutdown, were exclusively discussed and voted upon by the board of Kup Co. See Sands Affidavit, ¶62.

52.     The Dissolution Receiver's reports show that, prior to Closing, the Sellers of the Company secretly and improperly siphoned off millions of dollars from the Company.  See Sands Affidavit, ¶63.

Dated:  March 31, 2023
        Syracuse, New York                    Respectfully submitted,

                                              **KIRWAN LAW**
                                              *Attorneys for Defendants*
                                              *American Industrial Acquisition*
                                              *Corporation and KK Bakery Investment*
                                              *Company, LLC*

                                              By: /s/ Terry J. Kirwan, Jr.
                                                  Terry J. Kirwan, Jr.
                                                  (Bar Roll #501821)
                                                  2401 Burnet Avenue
                                                  Syracuse, New York 13206
                                                  Telephone: 315.452.2443
                                                  Email: tkirwan@kirwanlawpc.com

8

JA-399

**McCormick, Fitzpatrick, Kasper & Burchard P.C**
*Attorney for Defendants*
*American Industrial Acquisition Corporation*
*and KK Bakery Investment Company, LLC*

By: /s/ Daniel L. Burchard
Daniel L. Burchard, Esq.
40 George Street, P.O Box 638
Burlington, Vermont 05402-0638
Telephone: (802) 863-3494 x127
Email: dlb@mc-fitz.com

JA-400

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF VERMONT

| | | |
|---|---|---|
| MATTHEW CHANEY, NADINE MILLER and ARTHUR GUSTAFSON, on behalf of themselves and all others similarly situated,<br>　　　　　　Plaintiffs,<br>　　v.<br><br>VERMONT BREAD COMPANY, SUPERIOR BAKERY, INC., KOFFEE KUP BAKERY, INC., KOFFEE KUP DISTRIBUTION, LLC, KK BAKERY INVESTMENT COMPANY LLC, KK BAKERY HOLDING ACQUISITION COMPANY and AMERICAN INDUSTRIAL ACQUISITION CORPORATION,<br>　　　　　　Defendants,<br><br>　　and<br><br>LINDA JOY SULLIVAN, in her capacity as the Dissolution Receiver for Koffee Kup Bakery, Inc., Vermont Bread Company, Inc. and Superior Bakery, Inc.,<br>　　　　Intervenor-Defendant-<br>　　　　Crossclaimant,<br><br>　　v.<br><br>KK BAKERY INVESTMENT COMPANY LLC, KK BAKERY HOLDING ACQUISITION COMPANY and AMERICAN INDUSTRIAL ACQUISITION CORPORATION,<br>　　　　Crossclaim-Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. 2:21-cv-120-WKS<br><br><br><br><br><br><br><br><br><u>**CERTIFICATE OF SERVICE**</u> |

I hereby certify that on this 31st day of March 2023, I caused true and correct copies of the following documents:

- ***DEFENDANTS, AMERICAN INDUSTRIAL ACQUISITION CORPORATION ("AIAC") AND KK BAKERY INVESTMENT COMPANY, LLC ("KKBIC") MOTION FOR, AND MEMORANDUM IN SUPPORT OF, SUMMARY JUDGMENT DISMISSING THE FIRST AMENDED COMPLAINT OR GRANTING ALTERNATIVE RELIEF***;

- ***DEFENDANTS, AMERICAN INDUSTRIAL ACQUISITION CORPORATION ("AIAC") AND KK BAKERY INVESTMENT COMPANY, LLC ("KKBIC") STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT DISMISSING THE FIRST AMENDED COMPLAINT OR GRANTING ALTERNATIVE RELIEF***; and